UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

K.S. on Behalf of Herself and Her Minor Child, D.S.                    Docket No.: 1:21-CV-04649
                                                                       (PAC)


                                    Plaintiffs,


                                     -against-


THE CITY OF NEW YORK, ST. VINCENT'S SERVICES,
INC., HEARTSHARE HUMAN SERVICES OF NEW
YORK, HEARTSHARE ST. VINCENT'S SERVICES, THE
ADMINISTRATION FOR CHILDREN'S SERVICES,
COMMISSIONER DAVID HANSELL, In His Official
Capacity, ACS J. DOE 1, ACS J. DOE 2, JOHN OLUFEMI,
ST. VINCENT'S J DOE 1, ROSALYN CHERNOFSKY,
LYDIA KING, DAWN SAFFAYEH, NEW YORK CITY
DEPARTMENT OF EDUCATION; NEW YORK CITY
BOARD OF EDUCATION; CHANCELLOR MEISHA
PORTER, In Her Official Capacity,

                                    Defendants,
-------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**RUTHERFORD & CHRISTIE, LLP**
*Attorneys for Defendants*
ST. VINCENT'S SERVICES, INC,
HEARTSHARE HUMAN SERVICES OF
NEW YORK, HEARTSHARE ST.
VINCENT'S SERVICES, JOHN
OLUFEMI, ROSALYN CHERNOFSKY,
LYDIA KING and DAWN SAFFAYEH
Gianna Signorille, Esq.
David S. Rutherford, Esq.
800 Third Avenue, 9th Floor
New York, New York 10022
gcs@rutherfordchristie.com
(212) 599-5799 T
(212) 599-5162 F

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF FACTS ....................................................................1

ARGUMENT.................................................................................3

    I.    LEGAL STANDARD ON A MOTION TO DISMISS........................3

    II.   THE PLAINTIFFS HAVE NOT STATED ACTIONABLE CLAIMS
        AGAINST THE AGENCY DEFENDANTS UNDER SECTION 1983........4

        A. The Heartshare Dedendants are not State Actors.....................5

           1.  Plaintiffs Cannot Establish the Existence of State Action Under the
              "Joint Action" or "Compulsion"
              Tests....................................................................6

           2.  Plaintiffs Cannot Establish State Action Under the Second Circuit's
              Interpretation of the "Public Function"
              Test......................................................................8

    III.  PLAINTIFFS HAVE NOT STATED AN ACTIONABLE CLAIM UNDER
        THE ADOPTION ASSISTANCE AND CHILD WELFARE ACT OF
        1980.........................................................................11

        A. D.S. had a Written Case Plan Pursuant to 42 U.S.C. §§
           671(a)(16).................................................................12

        B. Heartshare Defendants did not Violate 42 U.S.C.
           §675(5)....................................................................13

    IV.  PLAINTIFFS HAVE NOT STATED AN ACTIONABLE CLAIM UNDER
        SECTION 504 OF THE REHABILIATION ACT............................14

    V.   PLAINTIFFS CANNOT MAINTAIN A CLAIM AGAINST HEARTSHARE
        DEFENDANTS PURSUANT TO THE INDIVIDUALS WITH
        DISABILITIES EDUCATION ACT ("IDEA")...............................16

    VI.  STATE LAW CLAIMS.......................................................17

        A. Plaintiffs Cannot Maintain a Fraud in the Inducement Claim Against
           Heartshare Defendants.....................................................17

i

B. **Plaintiffs Cannot Maintain a Breach of Contract Claim Against Heartshare Defendants.**……………………………………….……….19

C. **Plaintiffs have not Plead Claims under the New York State Constitution, New York State Education Law, and under the Regulations of the New York State Commissioner of Education..**……………………………………21

**CONCLUSION**………………………………………………………………………22

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases:</u>**

Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).................................................................................................................3

Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)…....................................................3

United States v. Yale New Haven Hosp., 727 F.Supp. 784, 786 (D. Conn. 1990).......................3

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)..................................................................3,16

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547, 556, 558 (2007)....................................3,4,16,21

Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) …………………………………………4

Wyatt v. Cole, 504 U.S. 158, 161 (1992)……………………………………………………4,5

Sybalski v. Indep. Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008).4,5,6,7,8

Lynch v. Southampton Animal Shelter Foundation, Inc., 971 F. Supp. 2d 340, 348 (E.D.N.Y. 2013)……………………………………………………………………………...4

Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998))……………………………4

United States v. Classic, 313 U.S. 299 (1941)……………………………………………………5

Omnipoint Commc'ns Inc. v. Comi, 233 F. Supp. 2d 388, 393 (N.D.N.Y. 2002)………………5

Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003)........................................5

Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)........................................................5

Russell v. Aid to Developmentally Disabled, Inc., No. 12 CV 389 (DRH) (AKT), 2013 WL 633573, at *54 (S.D.N.Y. Feb. 20, 2013)……………………………………………………6

Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350 (1974)........................................6,7,9

Blum v. Yaretsky, 457 U.S. 991 (1982)……………………………………………...7,8,9,10

Rendell-Baker v. Kohn, 457 U.S. 830, 841-42 (S.Ct. 1982)……………………………...7,8,9,10

Gilliard v. N.Y. Pub. Library Sys., 597 F. Supp. 1069, 1075 (S.D.N.Y. 1984)………………...7,9

Phelan v. Torres, 843 F. Supp. 2d 259 at 273 (S.D.N.Y. 2011)...................................8,9

Alcena v. Raine, 692 F.Supp. 261, 266 (S.D.N.Y. 1998)…………………………………………...9

Grant v. Abbott House, 2016 WL 796864 (S.D.N.Y. 2016)…………………………………………...9

C.B. v. St. Vincent's Services, 2018 US Dist LEXIS 45847 (S.D.N.Y March 19, 2018)….9,10,11

Perez v. Sugarman, 499 F.2d 761 (2d Cir. 1974)…………………………………………...9,10

Duchesne v. Sugarman, 566 F.2d 817 (2d Cir. 1977)…………………………………………9,10

Lynn ex rel. Julie B. v. St. Anne Inst., 2006 U.S. Dist. LEXIS 18786 (N.D.N.Y. Mar. 2, 2006).10

Rayburn v Hogue, 241 F.3d 1341 (11th Cir 2001)...........................................................10

Milburn v. Anne Arundel County Dep't of Social Serv., 871 F.2d 474, 477-79 (4th Cir. 1989) .10

Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir. 1986) ...............................................10

(Phelan ex rel. Phelan v. Mullane, 512 F. App'x 88 (2d Cir. 2013) …………………………………10

Maine v. Thiboutot, 448 U.S. 1 (1980)…………………………………………………………11

Blessing v. Freestone, 520 U.S. 329, 340 (1997)…………………………………………....11,12,13

Walker v. Eggleston, 2005 WL 639584, at 3 (S.D.N.Y. Mar. 21 2005)………....…………12

Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002)…………………………………………......12

Elisa W. v. City of New York, 2016 WL 4750178 (S.D.N.Y Sep. 12, 2016, No. 15 CV 5273-LTS-HBP)....................................................................................................................12,14

Doe v. New York University, 666 F.2d 761 (2d Cir. 1981)…………………………………………14

Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982) .......................................................15

P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990)..........................................................15

B.D. v. DeBuono, 130 F. Supp. 2d 401, 439 (S.D.N.Y. 2000).....................................................15

iii

Cushing v. Moore, 970 F.2d 1103, 1110 (2d Cir. 1992)...................................................17

Rivera v. City of Yonkers, 470 F.Supp.2d 402 (S.D.N.Y. 2007).....................................17
Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008).............17

Genger v. Genger, 144 A.D.3d 581, 583 (1st Dept. 2016)..............................................18

 Mariah Re Ltd. v. American Family Mut. Ins. Co., 52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014)...19

Hekmat v. U.S. Transp. Sec. Admin., 247 F. Supp. 3d 427, 433 (S.D.N.Y. 2017).........20

Kraft v. Yeshiva Univ., No. 00-CV-4899 (RCO), 2001 WL 1191003, at *4 (S.D.N.Y. Oct. 5, 2001)...........................................................................................................................20

Seaver v. Ransom, 224 N.Y. 233, 237 (N.Y. 1918).......................................................20

Lawrence v. Fox, 20 N.Y. 268 (1859)..........................................................................20

Port Chester Elec. Constr. Corp. v. Atlas, 40 N.Y.2d 652, 655 (1976)..........................20

Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir. 1991)......................20

Richards v. City of New York, 433 F. Supp. 2d 404 (S.D.N.Y 2006).............................20

**Statutes, Rules and Regulations**

Federal Rules of Civil Procedure Rule 12(b)(6)……………………….....................1,3,4

42 U.S.C.§ 1983………………………………………......……………1,4,5,6,9

29 U.S.C.S. § 794……………………………………………......…………3,14,17

Adoption Assistance and Child Welfare Act of 1980……………….....…………………11,12

42 U.S.C. § 671(a)(16) ……………………………………………………………13

42 U.S.C. §675(5) …………………………………………………………....13

20 U.S.C. § 1400……………………………………………………………...16

20 U.S.C. § 1415(a)……………………………………………………...16,17

28 U.S.C. § 1367[c]…………………………………………………………...17

iv

N.Y. C.L.S. Educ. § 3202............................………………...................…………21,22

N.Y. C.L.C. Educ.§ 3203...........................................……………...........................21, 22

N.Y. C.L.S. Educ. §4401.............................……………...................…………21,22

N.Y. C.L.S. Educ. §4404...........................……………...........................21,22

N.Y. C.L.S. Educ. §4410.............................……………...........................21,22

8 N.Y.C.R.R. § 200……...............................................…………21,22

v

## PRELIMINARY STATEMENT

Defendants Heartshare St. Vincent's Services, Heartshare Human Services of New York, and the individually named employees of the aforementioned defendants, John Olefemi, Rosalyn Chernofsky, Lydia King and Dawn Saffayeh (hereinafter collectively "Heartshare Defendants" by their attorneys, Rutherford & Christie, LLP, respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss, with prejudice, Plaintiffs' Complaint for failing to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for such other and further relief as this Court deems appropriate.

As is set forth below, the Plaintiffs' Second Amended Complaint merits dismissal for the Plaintiffs' failure for his failure to state a claim under § 1983 (Counts I, II, III, IV, VII and XI of the Plaintiffs' Second Amended Complaint) and Section 504 of the Rehabilitation Act (Count IX of the Second Amended Complaint) as and for the failure of the Plaintiffs to raise the remaining claims in the proper Court of law.

## STATEMENT OF FACTS

For the purpose of this motion, the following facts alleged in the Plaintiffs' Complaint are assumed to be true. Incorporation of the facts alleged in the Plaintiffs' Complaint is not an indication that the Heartshare Defendants accept the alleged facts as true. References to material or facts outside of the pleadings are made only to the extent that they are "integral" to the Plaintiffs' allegations and causes of action.

The Plaintiffs filed the instant Second Amended Complaint on January 10, 2023. [1]According to the Second Amended Complaint, the infant Plaintiff, D.S. was in foster care from April 2009, when he was two years old, through May 2018, at the age of eleven years old, when

---

[1] A copy of Plaintiffs' Second Amended Complaint is attached to attorney Signorille's Declaration in Support as "Exhibit A."

1

he was adopted by his mother K.S. ¶ 1. D.S. has a number of disabilities including: neonatal hypoglycemia, necrotizing enterocolitis (NEC), and periventricular leukomalacia, seizures, asthma, Autism Spectrum Disorder, hearing impairment, gross and fine motor delays, speech and language impairments, disruptive behavior disorder, conduct disorder, disruptive mood dysregulation disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), Post Traumatic Stress Disorder ("PTSD"), borderline intellectual functioning, Enuresis Encopresis, myopia and a strabismus. ¶ 165. Plaintiffs allege that while D.S. was in foster care, he was physically abused, sexually abused and was the victim of gross negligence. ¶ 5, 10. During his time in foster care, D.S. was moved to at least four foster homes. ¶ 11. Plaintiffs allege that D.S.'s foster parents, L.M. and O.M. were not screened properly before D.S.'s placement in that home. ¶ 6-8. They also allege that the Heartshare Defendants and the City ignored indicated reports of abuse and neglect while D.S. was at the home of L.M. and O.M. ¶ 9.

Furthermore, Plaintiffs allege that in 2017, the Heartshare Defendants and ACS representatives intentionally misrepresented and concealed D.S.'s medical and psychiatric history, his history of sexual abuse, the level of care that D.S. required, his sexualized behavior, such as defecating and urinating on the floor and in cups, and his sexualized behavior towards other children. Plaintiffs allege that, as a result of the alleged misrepresentation and concealment, K.S. was fraudulently induced to agree to become D.S.'s pre-adoptive foster parent when she did not have the resources to support D.S. ¶ 18, 27. Plaintiffs allege that K.S. will need to incur significant expenses and has experienced, and will continue to experience, significant stress, anxiety, and emotional distress in her effort to care for D.S., whose condition is worsening. ¶ 29. D.S. was allegedly moved from educational setting to educational setting without appropriate interventions to address the abuse and trauma he experienced as well as his PTSD and underlying medical

conditions. ¶ 35. The Second Amended Complaint asserts causes of action under 42 U.S.C. § 1983, § 504 of the Rehabilitation Act, violation of the Individuals with Disabilities Education Act, violation of his rights under New York State Social Services Laws and Education Laws, breach of contract, fraud in the inducement, and violation of rights under the New York State Constitution.

## ARGUMENT

### I.   LEGAL STANDARD ON A MOTION TO DISMISS

A motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure challenges the feasibility of the claims asserted in Plaintiffs' Second Amended Complaint.  See Fed. R. Civ. P. 12(b); Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Ryder Energy, 748 F.2d 774, 779, *quoting* Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F.Supp. 784, 786 (D. Conn. 1990).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; Twombly, 550 U.S. 544, 556.  "While a complaint attached by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [his] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Twombly, 550 U.S. 544, 555.  Rather, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Id. at 557.

As such, dismissal of a complaint is warranted where the allegations of a complaint "do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. 662, 679.  On a motion to dismiss, legal and other conclusions are not entitled to the presumption of truth typically afforded a plaintiff's factual allegations.  Id.; Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).  Thus, unless a plaintiff's well-pleaded allegations have "nudged claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Id. at 570; Iqbal, 556 U.S. 662, 678-79.

## II.    THE PLAINTIFFS HAVE NOT STATED ACTIONABLE CLAIMS AGAINST THE AGENCY DEFENDANTS UNDER SECTION 1983.

The Plaintiffs' § 1983 claims cannot be sustained against the Heartshare Defendants because the Plaintiffs' have failed to establish the existence of any state action in connection with the alleged deprivation of rights. "The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992).  A plaintiff asserting violation(s) of her Constitutional rights under §1983 must show state action. Sybalski v. Indep. Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir 2008). A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of her rights or privileges secured by the Constitution or federal laws." Lynch v. Southampton Animal Shelter Foundation, Inc., 971 F. Supp. 2d 340, 348 (E.D.N.Y. 2013) (quoting Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998)). A party acts under the color of state law when he or she exercises power "possessed

4

by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299 (1941). Accordingly, private actors are not liable under § 1983 unless "the conduct allegedly causing the deprivation of a federal right can be attributable to the State." Omnipoint Commc'ns Inc. v. Comi, 233 F. Supp. 2d 388, 393 (N.D.N.Y. 2002).

A.      **The Heartshare Defendants Are Not State Actors.**

Plaintiff's Section 1983 claims should be dismissed with regard to the Heartshare Defendants because the agency and its employees are not state actors. "The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). A plaintiff asserting violation of her Constitutional rights under §1983 must show state action. Sybalski v. Indep. Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008); Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003).

It is undisputed that Heartshare Human Services and Heartshare St. Vincent's Services were and are a private not-for-profit corporation, and, to the extent they existed, were during the relevant time periods. Second Amended Complaint ¶¶ 57-58. Thus, they are not state actors and not subject to liability under Section 1983. Additionally, private actors are not liable under Section 1983 unless "the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Accordingly, to avoid dismissal of their Section 1983 claims, Plaintiffs must allege sufficient facts to demonstrate that the purported conduct by the admittedly private Heartshare Defendants should be attributable to the state. The Heartshare Defendants submit that, even if accepted as true, the Second Amended Complaint does not set forth a basis to treat the Heartshare Defendants as state

5

actors for the purposes of a Section 1983 claim; the Complaint does not contain allegations sufficient to allege that the Heartshare Defendants were being coerced or controlled by the state, or that they were acting jointly with the state.

The Supreme Court has articulated three tests to determine whether private conduct represents state action for the purposes of Section 1983: (1) whether there is a sufficiently close nexus between the state and the challenged conduct of the regulated entity so that those actions may fairly be treated as that of the state itself (the "joint action" or "close nexus" test); (2) whether the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state (the "compulsion test"); or (3) the private entity has exercised powers that traditionally are the exclusive prerogative of the state (the "public function" test). See Sybalski, 546 F.3d 255, 257-58; Russell v. Aid to Developmentally Disabled, Inc., No. 12 CV 389 (DRH) (AKT), 2013 WL 633573, at *54 (S.D.N.Y. Feb. 20, 2013). "It is not enough, however, for a plaintiff to plead state involvement in '*some activity* of the institution alleged to have inflicted injury upon a plaintiff; rather, the plaintiff must allege that the state was involved 'with the *activity that caused the injury* 'giving rise to the action." Sybalski, 546 F.3d 255, 258 (citations omitted). The allegations in Plaintiffs' Second Amended Complaint fail each of these tests.

1.     **Plaintiffs Cannot Establish the Existence of State Action Under the "Joint Action" or "Compulsion" Tests.**

The Plaintiffs' Complaint fails to demonstrate the required showing of "state action" by the Heartshare Defendants. The mere fact that a private business is subject to governmental regulation does not convert its action into that of the State under Section 1983. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350 (1974). See Blum v. Yaretsky, 457 U.S. 991, 1004 (1982); Rendell-

Baker v. Kohn, 457 U.S. 830, 841-42 (S.Ct. 1982); Gilliard v. N.Y. Pub. Library Sys., 597 F. Supp. 1069, 1075 (S.D.N.Y. 1984).  There are simply no allegations sufficient to allege that Heartshare was being coerced or controlled by the State, or that it was acting jointly with the State.

For a private entity to be deemed a state actor, the "state compulsion" test must be applied. This test requires that a state "exercis[e] coercive power or ... provid[e] such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). As with the mental institutions in Sybalski v Indep. Group Home Living Program, Inc., 546 F.3d 255 (2d Cir. 2008), New York State did not become involved with the oversight of foster homes until after private charitable organizations, such as the New York Children's Aid Society, founded in 1853, began locating and subsidizing foster homes for children in need. The Second Circuit Court specifically considered the historical record of the service and found that "[b]ased on this historical record, we cannot conclude that care of the mentally ill, much less the mentally disabled, was a function "traditionally" and "exclusively" reserved by the state. Sybalski  546 F.3d at 260, *citing* Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974).

Moreover, Sybalski also makes clear that the proposition that private child-caring institutions may be state actors by virtue of their contractual relationship with the State is likewise no longer a valid basis for finding state action. The fact that the state may contract with a private entities to perform a function does not transform the private entity into a state actor unless the function is traditionally exclusively a state function. Although the state and private entities might, by virtue of a contractual relationship, be engaged jointly in the mission of caring for abandoned

children, only the *joint acts* of the private entity and the state are subject to challenge as state action. Phelan ex rel. Phelan v. Torres, 843 F. Supp. 2d 259 at 273 (S.D.N.Y. 2011).

### 2.    Plaintiffs Cannot Establish State Action Under the Second Circuit's Interpretation Of The "Public Function" Test.

The Plaintiffs' Second Amend Complaint makes no allegation that the Heartshare Defendants are state actors, stating only that "when the City chooses a foster care agency to provide care for a foster child, the foster care agency cannot reject the child, as long as the agency has a foster home available to care for the child," noting "contracts with foster care agencies, including the Foster Care Agencies, are based on a model contract issued by the Office of Children and Family Services ("OCFS"). Furthermore, the Plaintiffs note that "according to the language of the foster care contract itself, the fundamental purpose of the contract between each foster care agency and the City of New York is to provide the best available services to children whom the City entrusts to the contract agency/foster care agency and to ensure that the health, welfare, and fundamental rights of the children in foster care shall be the guiding principle for all decisions which affect the foster children's lives." Plaintiffs' Second Amended Complaint ¶ 115, 119-120.

For the Heartshare Defendants' actions to be state actions under the "public function" test, their care of minors in foster homes must be functions traditionally and exclusively reserved to the state. Rendell-Baker, 457 U.S. 830, 842 (*citing* Jackson, 419 U.S. 345, 353 and Blum, 457 U.S. at 1011). The Plaintiffs cannot satisfy this requirement. Courts have refused to acknowledge a public function in situations which are subject to more regulation, licensing and oversight compared to Heartshare and/or similar to Heartshare's care of minors in foster homes. See e.g. Sybalski, 546 F.3d 255, 256-58 (affirming motion to dismiss Plaintiff's Section 1983 claims because care for the mentally disabled is not a function traditionally and exclusively reserved to the State); Phelan, 843

F. Supp. 2d 259 (discussing the public function test and concluding it was not established against

a foster care agency).  Neither state regulation of certain operations of the Heartshare Defendants,

nor any receipt by the Heartshare Defendants of public funding, are adequate to impute state action

to the Heartshare Agency. Alcena v. Raine, 692 F.Supp. 261, 266 (S.D.N.Y. 1998).  The mere fact

that a private business is subject to governmental regulation does not convert its action into that of

the State under §1983. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350 (1974).  See Blum

v. Yaretsky, 457 U.S. 991, 1004 (1982); Rendell-Baker, 457 U.S. 830, 841-42; Gilliard v. N.Y.

Pub. Library Sys., 597 F. Supp. 1069, 1075 (S.D.N.Y. 1984).  Because the Plaintiffs cannot

establish that Heartshare provides public functions as defined by the controlling case law in this

Circuit, the Second Amended Complaint must be dismissed.

This Court has dismissed §1983 claims against foster care agencies. In Grant v. Abbott

House, 2016 WL 796864 (S.D.N.Y. 2016), Judge Nelson S. Román, citing Rendell-Baker and

Phelan, *supra*, held that case law suggests that any allegations that the care of minors in private

child-caring institutions is a function traditionally and exclusively performed by the state would

not meet the requisite standard for finding state action.  Judge Román dismissed the plaintiff's

§1983 claims for failure to demonstrate state action on the part of Abbott House.

More recently, in C.B. v. St. Vincent's Services[2], 2018 WL 1737701 (S.D.N.Y March 19,

2018), Judge Richard Berman of the Southern District Court of New York reasoned that "the view

enunciated by the Supreme Court has substantially replaced the approach relied upon in Perez v.

Sugarman, 499 F.2d 761 (2d Cir. 1974) and Duchesne v. Sugarman, 566 F.2d 817 (2d Cir. 1977)."

C.B. 2018 WL 1737701 at *4. Prior to the C.B. decision, other District Courts in New York had

---

[2] Notably, St. Vincent's Services is now Heartshare St. Vincent's Services, the Heartshare Defendants in the instant case.

discussed whether Perez and Duchesne were good law in cases similar to claims brought against child welfare entities. Id at 12. For instance, United States District Judges Thomas McAvoy (Northern District of New York) and Edward Korman (Eastern District of New York) have each determined that the bases for the Perez and Duchesne holdings have been undermined by intervening Supreme Court decisions which render those cases unreliable. *See* Lynn ex rel. Julie B. v. St. Anne Inst., 2006 U.S. Dist. LEXIS 18786 (N.D.N.Y. Mar. 2, 2006) (McAvoy, J.); Phelan ex rel. Phelan v. Torres, 843 F. Supp. 2d 259 (E.D.N.Y. 2011) (Phelan ex rel. Phelan v. Mullane, 512 F. App'x 88 (2d Cir. 2013).[3]

The Supreme Court decisions referenced are again the aforementioned Rendell-Baker v. Kohn, 457 U.S.830 (1982) and Blum v. Yaretsky, 457 U.S. 991 (1982). In Rendell-Baker, the Supreme Court upheld the lower courts 'rulings, stating the Supreme Court has "held that the question is whether the function performed has been 'traditionally the exclusive prerogative of the State. Blum v. Yaretsky, 457 U.S., at 1011. "There can be no doubt that the education of maladjusted high school students is a public function, but that is only the beginning of the inquiry. Chapter 766 of the Massachusetts Acts of 1972 demonstrates that the State intends to provide services for such students at public expense. That legislative policy choice in no way makes these services the exclusive province of the State." Rendell-Baker 457 U.S. at 842. In Blum, the Supreme

---

[3] In concluding that the foster care agency in Lynn ex rel. Julie B. v. St. Anne Inst. was not a state actor for purposes of 1983 claims, the Court examined precedent in other Circuit Courts that have held that organizations similar to Heartshare Defendants are not state actors for 1983 purposes. 2006 U.S. Dist. LEXIS 18786, 58 (N.D.N.Y. Mar. 2, 2006). *Citing* Rayburn v Hogue, 241 F.3d 1341 (11th Cir 2001) (holding that foster parents of children who were alleged to have been sexually abused while within the custody of the foster parents were not state actors). See Milburn v. Anne Arundel County Dep't of Social Serv., 871 F.2d 474, 477-79 (4th Cir. 1989) (in action against foster parents alleging abuse and failure to report abuse, the court held that foster parents were not automatically state actors where "the State [had not] so far insinuated itself into a position of interdependence with the [foster parents] that it must be recognized as a joint participant in the challenged activity"); Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir. 1986) (*per curiam*) (holding that a private organization that provided foster homes for state agencies was not a state actor, where at "no time did [the private organization] assume the state's mantle of authority").

Court reversed the Second Circuit and concluded that "although it is apparent that nursing homes in New York are extensively regulated, the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." Blum 475 at 1004.

The Court in C.B. concluded that the Defendant foster care agency and its employees "are not state actors under current Supreme Court precedent. Plaintiff does not allege that the Defendants were performing an activity which was historically, traditionally and exclusively governmental. It is beyond peradventure that caring for abandoned children is a function that has traditionally been performed by private parties in New York. And, while New York certainly has a statutory scheme to regulate the care and welfare of foster children, mere state regulation of private conduct, even if extensive, is insufficient to support a finding of state action. Accordingly, the Section 1983 claims asserted against the [foster agency] Defendants must be dismissed." C.B. 2018 WL 1737701 at 8-9 (citations and internal quotation marks omitted).

III.    **PLAINTIFFS HAVE NOT STATED AN ACTIONABLE CLAIM UNDER THE ADOPTION ASSISTANCE AND CHILD WELFARE ACT OF 1980**

In their Eleventh Cause of Action, Plaintiffs assert numerous claims that are rooted in Sections 671(a)(16), 671(a)(20), 675(5)(A), and 675(5)(D) of the Adoption Assistance and Child Welfare Act of 1980 ("AACWA"). As conceded by the Plaintiffs in the Second Amended Complaint, any monetary recovery pursuant to these statutes would be enforceable only pursuant to 42 U.S.C. §1983. *See* Plaintiffs' Second Amended Complaint ¶ 914. Therefore, for the reasons set forth supra, the Plaintiffs' Eleventh Cause of Action must be dismissed as to Heartshare Defendants who do not fulfill the prerequisite of being a state actor.  However, should the Court disagree, and find that Heartshare Defendants are state actors, this Cause of Action should still be dismissed pursuant to Rule12(b)(6). Notably, none of the provisions cited to by Plaintiffs create an explicit private right of action.

11

In Maine v. Thiboutot, 448 U.S. 1 (1980), the Supreme Court held that Section 1983 protects certain rights that are conferred by federal statutes. See Blessing v. Freestone, 520 U.S. 329, 340 (1997). A plaintiff asserting a statute-based Section 1983 claim "must assert the violation of a federal right, not merely a violation of federal law." Id. "To determine whether a federal statute creates a privately enforceable right, courts must consider three factors: (1) 'Congress must have intended that the provision in question benefit the plaintiff'; (2) 'the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence'; and (3) 'the statute must unambiguously impose a binding obligation on the States.' Walker v. Eggleston, 2005 WL 639584, at 3 (S.D.N.Y. Mar. 21 2005) *(quoting* Blessing, 520 U.S. at 340-41); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) ("A court's role in discerning whether personal rights exist in the § 1983 context ... require[s] a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries.").

A.    **D.S. had a Written Case Plan Pursuant to 42 U.S.C. § 671(a)(16).**

Section 671(a) of the AACWA requires that, "[i]order for a State to be eligible for [federal foster care and adoption payments] . . ., it shall have a plan approved by the Secretary" that has specified features. "The subdivision goes on to require the State to apply the referenced standards to foster family homes and childcare institutions receiving funding, and that the standards include certain caregiver liability provisions. It also includes limitations on waivers of the standards." Elisa W. v. City of New York, 2016 WL 4750178 (S.D.N.Y Sep. 12, 2016, No. 15 CV 5273-LTS-HBP).

Paragraphs 909 through 912 of the Second Amended Complaint seek enforcement of the rights derived from subdivision (a)(16) of Section 671. Section 671(a)(16) requires that the

mandated State plan: provide for the development of a case plan (as defined in section 671(a) of this title . . .) for each child receiving foster care maintenance payments under the State plan and provide for a case review system which meets the requirements described in sections 675(5) and 675(A) of this title with respect to each child." 42 U.S.C.S. § 671(a)(16). The Court in Elisa W. v. City of New York declined to find a private right of action with respect to The Elisa Court held that even though children are unquestionably the intended beneficiaries of the case plan requirement and that the right "is not so 'vague and amorphous' that its enforcement would strain judicial competence, The AACWA contains no express preclusion of the Section 1983 remedy. Nor is it implicitly foreclosed. There is no comprehensive scheme that would be incompatible with individual enforcement under Section 1983. Id at 17. Therefore, the third prong of the Blessings test is not met and there is no private right of action with respect to the Plaintiffs' claims under the AACWA. Furthermore, Plaintiffs do not allege that D.S. did not have a case plan all together as the statute requires. But rather, they allege a violation of the statute by the implementation of the case plan. ¶ 915. Notably, a right relating to the implementation of the case plan is not mentioned in Section 671 whatsoever.

**B.    Heartshare Defendants did not violate 42 U.S.C. § 675(5).**

In Plaintiffs' Second Amended Complaint ¶ 910-910, the Plaintiffs also allege a violation of 42 U.S.C. § 675(5) outlines and defines the structure of a "case review system" for reviewing the written case plan of a child in foster care. Pursuant to § 675(5)(a), the case review system is "a procedure for assuring that...each child has a case plan designed to achieve placement in a safe setting that is the least restrictive (most family like) and most appropriate setting available." Section 675(5)(b) states that "the status of each child is reviewed periodically but no less frequently than once every six months by either a court or by administrative review...in order to determine

the safety of the child, the continuing necessity for and appropriateness of the placement, the extent of compliance with the case plan, and the ex- tent of progress which has been made toward alleviating or mitigating the causes necessitating placement in foster care."

As with the right to a written case plan discussed above, Congress has not expressly foreclosed private enforcement under Section 1983 of the right to a system and procedures that assure each child have a case plan that is periodically reviewed by the courts or another administrative body. While it is, of course, to be expected that a plan will be implemented, nothing in the statutory language specifically requires implementation or achievement of all of the particulars of the plan, much less successful achievement of outcomes. Rather, the plan principally serves notice and accountability functions in aid of reviews of goals, services and outcomes. Elisa W. v. City of New York, 2016 WL 4750178, 19 (S.D.N.Y Sep. 12, 2016, No. 15 CV 5273-LTS-HBP). Therefore, the Plaintiffs claims of individually enforceable substantive rights to implementation of a particular plan provisions and particular outcomes of such plans are not supported by the language of the cited statutory provisions and thus, fail to state claims upon which relief may be granted. Id at 20.

## IV.    PLAINTIFFS HAVE NOT STATED AN ACTIONABLE CLAIM UNDER SECTION 504 OF THE REHABILIATION ACT

Count Nine of the Plaintiffs' Second Amended Complaint, alleges that Heartshare Defendants violated § 504 of the Rehabilitation Act. As an initial matter, Plaintiffs are attempting to conflate Section 504 of the Rehabilitation Act with 42 U.S.C. § 1983 by titling Count Nine as "Section 504 and Section 504/42 U.S.C. § 1983." The regulations implementing § 504 of the Rehabilitation Act of 1973, are set forth in 29 U.S.C. § 794. § 794 provides, in pertinent part: "No otherwise qualified handicapped individual . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to

14

discrimination under any program or activity receiving Federal financial assistance…" In Doe v. New York University, 666 F.2d 761 (2d Cir. 1981), The Second Circuit determined that a prima facie violation of the Rehabilitation Act requires proof that: (1) the plaintiffs are "handicapped persons" under the Rehabilitation Act;  (2) they are "otherwise qualified" for the program; (3) they are excluded from benefits "solely" because of their handicaps; and (4) that the program or special service receives federal funding. Id. at 774-75. The Court must make an inquiry as to whether plaintiffs were denied benefits "solely" by reason of their handicap. Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982) (holding that "the reference in the Rehabilitation Act to 'discrimination' must require, we think, something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist. Experts often disagree on what the special needs of a handicapped child are, and the educational placement of such children is often necessarily an arguable matter." Id at Notably, the Second Circuit has stated, § 504 "does not clearly establish an obligation to meet a disabled person's particular needs vis-a-vis the needs of other handicapped individuals, but mandate[s] only that services . . . not be denied [to a disabled person] because he is handicapped." P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990); This Court has also analyzed Section 504 claims in conjunction with IDEA claims in B.D. v. DeBuono, 130 F. Supp. 2d 401, 439 (S.D.N.Y. 2000). In B.D. v. DeBuono, the Court held that plaintiffs can only rely on Section 504 to claim that they are denied access to a free appropriate education, as compared to the free appropriate education non-disabled students receive, if they can show that defendants acted with bad faith or gross misjudgment in the administration of disability services. Id.

Here, even if D.S. is a qualified individual under § 504 of the Rehabilitation Act, Plaintiffs have failed to establish a claim under the Act. Instead, Plaintiffs broadly claim that

"Defendants discriminated against D.S. under Section 504 by, *inter alia*, denying him reasonable accommodations, adopting systemic policies, procedures and practices that violate D.S.'s rights under the IDEA and New York State law, and engaging in widespread and pervasive violations of the IDEA and New York State Education law. Second Amended Complaint ¶ 897. The Plaintiffs have not pled that D.S. was denied any benefit solely due to his disability or that as compared to the free appropriate education non-disabled students receive, that the Heartshare Defendants acted with bad faith or gross misjudgment in the administration of disability services. Plaintiffs even concede that there had been no denial of benefits as Heartshare Defendants were responsible for securing educational placements for D.S. while he was in Heartshare Defendants care. ¶ 899. By failing to plead that D.S. was denied benefits solely due to his disability, Plaintiffs fail to properly plead a claim under the Act. Therefore, Count Nine should be dismissed.

## V.    PLAINTIFFS CANNOT MAINTAIN A CLAIM AGAINST HEARTSHARE DEFENDANTS PURSUANT TO THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT ("IDEA").

Plaintiffs claims under the Individuals with Disabilities Education Act ("IDEA") (20 U.S.C. § 1400) should be dismissed against Heartshare Defendants. § 1415(a) of the IDEA (which sets forth the grievance procedures pursuant to the statute) provides that the IDEA applies to any State educational agency, State agency, or local educational agency that receives assistance [under the IDEA]. 20 U.S.C. § 1415(a). Notably, Heartshare Defendants are not an educational agency for purposes of the IDEA. Therefore, the claim brought by the Plaintiffs against the Heartshare under the IDEA should be dismissed.

Even if this Court were to consider the IDEA claims asserted against the Heartshare Defendants, Plaintiffs have failed to sufficiently plead a claim under the IDEA against the

Heartshare Defendants to survive dismissal. It is well settled that at the pleading stage, Plaintiffs must provide sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Here, Plaintiffs do not state with any specificity as to why the Heartshare Defendants should be liable for alleged violations of the IDEA rather than the City, ACS, and the DOE. Instead, they make conclusory statements to support their claim under the IDEA and therefore, dismissal is warranted.

## VI.    STATE LAW CLAIMS

In addition to the three causes of action that rely on federal statute, the Plaintiffs' additionally brings multiple causes of action pursuant to State law. As stated above, Plaintiffs' federal claims pursuant to 42 U.S.C.S. § 1983, § 504 of the Rehabilitation Act, and the IDEA (20 U.S.C.S. § 1400) warrant dismissal. The Court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." Cushing v. Moore, 970 F.2d 1103, 1110 (2d Cir. 1992), citing, 28 U.S.C. § 1367[c]; Rivera v. City of Yonkers, 470 F.Supp.2d 402 (S.D.N.Y. 2007). As the Second Circuit held in Cave, when the federal claims are dismissed before trial, the state law claims should be dismissed as well because the New York State Courts are in the best position to determine state law claims and interpret newly amended state laws. Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008). Thus, should the Court choose to exercise supplemental jurisdiction and entertain the state law claims asserted, they too should be dismissed.

## A.    Plaintiffs Cannot Maintain a Fraud in the Inducement Claim Against Heartshare Defendants.

Plaintiffs' Sixth Cause of Action seeks to recover for fraud in the inducement. Specifically, Plaintiffs allege that the Heartshare Defendants made "omissions, representations and

misrepresentations…that were intended to deceive K.S.; she believed them, justifiably relied upon them, and was induced by them to accept D.S. as a pre-adoptive foster child and then to adopt him. As a result, K.S. sustained and will continue to sustain pecuniary loss due to D.S.'s extensive and intensive needs." ¶ 869. This claim is contradictory based on the allegations in the Second Amended Complaint.

In New York, for a claim for fraud in the inducement to succeed, there must be a knowing misrepresentation of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury. A claim of fraud in the inducement requires proof of actual pecuniary loss. *See* Genger v. Genger, 144 A.D.3d 581, 583 (1st Dept. 2016). Here, there is nothing plead in the Second Amended Complaint that K.S. was actually deceived by the Heartshare Defendants whatsoever. Plaintiffs allege that in 2017, K.S. decided that she wanted to adopt another child, participated in a foster parent training program, and was certified as a foster parent.  ¶ 599. Then, in May of 2017 K.S. communicated with the Heartshare Defendants about her availability as a pre-adoptive parent and the Heartshare Defendants informed her about D.S. through multiple communications with Heartshare employees. ¶ 604-605. On June 15, 2017, D.S. was taken to  Brookdale Hospital Medical Center ("Brookdale") due to acting out, threatening and destroying property, and unable to be verbally directed. D.S. was admitted to Brookdale Hospital for five days. ¶ 525. While D.S. was at Brookdale, K.S. visited D.S. "to try to build trust and a relationship." ¶ 609. On June 20, 2017, D.S. was discharged from Brookdale to the home of K.S. for a respite stay. ¶ 610. D.S.'s discharge diagnoses included ADHD, Combined Type; Disruptive Mood Dysregulation Disorder, and history of encephalopathy, asthma. ¶ 526.

After the respite stay, D.S. very briefly returned to the home of a previous foster mother, but was then placed with K.S. as a pre-adoptive foster parent on June 30, 2017. ¶ 611.  K.S. alleges

that at the time she agreed to be D.S.'s foster parent, she did not know D.S. had a history of sex abuse, extreme behaviors, and psychiatric hospitalizations. ¶ 612. However, despite having numerous communications with Heartshare Defendants numerous times regarding the care of D.S and having D.S. reside in K.S.'s home for a period of four months where D.S. was taking nine (9) different psychiatric medications on a daily basis, K.S. expressed to the Heartshare Defendants her intention on adopting D.S. ¶ 619, 628. D.S.'s behavior continued to deteriorate in school and on several occasions, he would come home injured. ¶ 651. On January 23, 2018, K.S. brought D.S. to Interfaith Medical Center after he "physically acted out." ¶ 664. After living with K.S. for eleven months, his adoption was finalized in Queens County Family Court in May 22, 2018. ¶ 700. The fraud in the inducement claim against Heartshare Defendants should be dismissed as it is clear that K.S. had known the extent of D.S.'s psychological and behavior issues prior to his adoption as evidenced by D.S. residing with K.S. for a period of eleven months prior to his adoption becoming final.

**B.**    **Plaintiffs Cannot Maintain a Breach of Contract Claim.**

In the Seventh Cause of Action, the Plaintiffs seek to recover on a claim of breach of contract as a third-party beneficiary to the service contract between the City of New York and contract agency Heartshare Human Services. The breach of contract claim should be dismissed. In the Second Amended Complaint, Plaintiffs allege that Heartshare breached its contact with the City, including violating the provisions that the Heartshare Defendants were required to provide safe, competent, and professional supervision of children in foster care and to protect children in their care from abuse and maltreatment. Second Amended Complaint ¶ 874. They also broadly allege violations of visitation provisions as well as medical services, requirements pursuant to the Interstate Compact on the Placement of Children ("ICPC"), certification requirements and

19

approval requirements for foster parents and adoptive parents. Second Amended Complaint ¶ 875-878.

To state a claim for breach of contract under New York law, 'a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach,'" Mariah Re Ltd. v. American Family Mut. Ins. Co., 52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014) (internal citation omitted). "Plaintiff must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." Hekmat v. U.S. Transp. Sec. Admin., 247 F. Supp. 3d 427, 433 (S.D.N.Y. 2017) (internal citation and quotation omitted). Here, Plaintiffs fail to point to a provision that was not adhered to in this case. In other words, the Plaintiffs have not alleged that pursuant to the terms of the contract, Plaintiffs were entitled to a different outcome. Kraft v. Yeshiva Univ., No. 00-CV-4899 (RCO), 2001 WL 1191003, at *4 (S.D.N.Y. Oct. 5, 2001) ("[A] bare declaration of misconduct lacking the identification of a definite breached promise or obligation does not satisfy the burden of specificity in pleadings.") (internal citation omitted).

Plaintiffs assert a claim of breach of contract stating that D.S. was a third-party beneficiary of a contract between the Heartshare Defendants and the City. The third-party beneficiary concept arises from the notion that "it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay" or perform. Seaver v. Ransom, 224 N.Y. 233, 237 (N.Y. 1918); see also, Lawrence v. Fox, 20 N.Y. 268 (1859). The intent to benefit test has, however, been difficult to apply, see Port Chester Elec. Constr. Corp. v. Atlas, 40 N.Y.2d 652, 655 (1976), and a "prolific source of judicial and academic discussion" Seaver v. Ransom 224 N.Y. at 236. Children, however, are the third-party beneficiaries between the agency and ACS. Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir. 1991).

The breach of contract claim discussed above should be dismissed because it is improperly plead and because the claim is repetitive of the other claims against the Heartshare Defendants. *See* Richards v. City of New York, 433 F. Supp. 2d 404 (S.D.N.Y 2006). In the Richards case, two children and their mother sued the City of New York, ACS, a City foster care agency and certain case workers and case supervisors. Id at 408. The plaintiffs brought a breach of contract claim against the City foster care agency alleging that the foster care agency breached its contract with ACS "to protect children in its care from abuse, maltreatment, and neglect, thereby injuring the [plaintiffs]." Id at 430. The Court acknowledged that the mere presence of a contract which provides for children to receive foster care services does not increase liability of the foster care agency. Id. Similarly to the Richards case, Plaintiffs proffer no evidence that Heartshare Defendants owes ACS any duty under the contract that is not the subject of a corresponding duty Heartshare Defendants owes to the children. They also do not proffer any evidence that that Heartshare Defendants undertook a higher duty of care than the City had to the children under the contract. Id at 69-70. Thus, Plaintiffs' breach of contract claim is repetitive of their other claims against ACS and the Heartshare Defendants and requires dismissal. Id.

**C.**    **Plaintiffs have not Plead Claims under the New York State Constitution, New York State Education Law, and under the Regulations of the New York State Commissioner of Education.**

Count Ten of the Plaintiffs' Second Amended Complaint should be dismissed against Heartshare Defendants. In Count Ten, Plaintiffs state that "Foster Care Defendants and DOE Defendants have violated Plaintiffs' rights under the New York Constitution, § 3203, 4401, 4404 and 4410 and the Regulations of the New York State Commissioner of Education, 8 N.Y.C.R.R. § 200, *et seq*." Plaintiff's Second Amended Complaint ¶ 907. Plaintiffs fail to point to a single provision of the New York State Constitution in its Second Amended Complaint to support their

claim that Plaintiffs' rights have been violated. Plaintiffs' naked assertions of violation of law are insufficient under well- established precedent and therefore, should be dismissed. Bell Atl. Corp. v. Twombly, 550 U.S. 558 (2007).

Additionally, the claim against the Heartshare Defendants pursuant to the New York State Education Law §§ 3202, 3203, 4401, 4404 and 4410 and the Regulations of the New York State Commissioner of Education, 8 N.Y.C.R.R. § 200 should be dismissed as each of those statutes apply to the New York State Department of Education and do not apply to private not-for-profit corporation foster care agencies such as the Heartshare Defendants who contract with the City to provide foster care services.

## CONCLUSION

For the reasons stated herein, Defendants Heartshare St. Vincent's Services, Heartshare Human Services of New York, Heartshare Human Services of New York, and the individually named employees of the aforementioned Defendants, John Olefemi, Rosalyn Chernofsky, Lydia King and Dawn Saffayeh respectfully request that this Complaint be dismissed in its entirety, and for such other and further relief as the Court deems just and proper.

Dated:  New York, New York
         February 9, 2023


                              Respectfully submitted,

                              **RUTHERFORD & CHRISTIE, LLP**


                              By:    *Gianna Signorille*
                                     Gianna Signorille, Esq.
                                     David S. Rutherford, Esq.
                                     Attorneys for Defendants
                                     Heartshare St. Vincent's Services,
                                     Heartshare Human Services of New York,

22

Heartshare Human Services of New York, John
Olefemi, Rosalyn Chernofsky, Lydia King and
Dawn Saffayeh 800 Third Avenue, 9th Floor
New York, New York 10022
(212) 599-5799 T
(212) 599-5162 F
dsr@rutherfordchristie.com
acg@rutherfordchristie.com
Our File No.:215.795

TO:

The Law Office of Elisa Hyman, P.C.
Attn: Elisa F. Hyman, Esq.
Attorneys for Plaintiffs
16 Madison Square Park West
a/k/a 1115 Broadway
Suite - 12th Floor
New York, New York 10010
(646) 572-9064 T
(646) 572-9065 F
elisahyman@gmail.com


New York City Law Department
General Litigation Division
Attorneys for Co-Defendants
100 Church Street
New York, New York 10007
(212) 356-1000 T
(212) 356-2649 T

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing **NOTICE OF MOTION, DECLARATION IN SUPPORT (w/supporting Exhibit "A") and MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** was furnished via email transmission at the electronic address designated by counsel for Plaintiffs to:

> The Law Office of Elisa Hyman, P.C.
> Attn: Elisa F. Hyman, Esq.
> Attorneys for Plaintiffs
> 16 Madison Square Park West
> a/k/a 1115 Broadway
> Suite - 12th Floor
> New York, New York 10010
> (646) 572-9064 T
> (646) 572-9065 F
> <u>elisahyman@gmail.com</u>

> New York City Law Department
> General Litigation Division
> Attorneys for Co-Defendants
> 100 Church Street
> New York, New York 10007
> (212) 356-1000 T
> (212) 356-2649 T

on this 9th day of February 2023

> <u>*Gianna Signorille*</u>
> Gianna Signorille, Esq.