Index No. 21-cv-04649

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

K.S. on behalf of herself and her Minor Child, D.S.,

Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO PARTIALLY DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**_HON. SYLVIA O. HINDS-RADIX_**
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsels: Jay Cullen & Jacquelyn Dainow*
*Tel:  (212) 356-2079; (212) 356-0896*
*Matter #:  2021-011665*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ...................................................................................... 1

LEGAL STANDARD .............................................................................................. 4

ARGUMENT

    POINT I

        PLAINTIFF FAILS TO ALLEGE FRANKEL AND
        SMITH'S PERSONAL INVOLVEMENT, AND
        REGARDLESS, THEY ARE ENTITLED TO
        QUALIFIED IMMUNITY ........................................................................ 5

        A.  Plaintiff fails to allege Frankel and Smith's
            personal involvement ............................................................... 5

        B.  Frankel and Smith are entitled to Qualified
            Immunity ................................................................................... 6

    POINT II

        COUNT VI OF THE SAC SHOULD BE
        DISMISSED AS PLAINTIFF DID NOT FILE A
        NOTICE OF CLAIM AND THE ALLEGATIONS
        ARE MERELY CONCLUSORY IN
        CONTRAVENTION OF THE FRCP ...................................................... 8

        A.  Plaintiff failed to file a Notice of Claim ............................... 8

        B.  Plaintiff's allegations are not sufficiently
            specific to sustain a claim of fraud as they apply
            to City Defendants. ................................................................ 10

    POINT III

        COUNT VII OF THE SAC SHOULD BE
        DISMISSED AGAINST CITY DEFENDANTS AS
        IT DOES NOT SPECIFICALLY CLAIM A
        BREACH BY CITY DEFENDANTS ...................................................... 14

**Page**

POINT IV

      COUNT IX OF THE SAC SHOULD BE
DISMISSED BECAUSE IT DOES NOT
DEMONSTRATE THAT D.S. WAS
DISCRIMINATED AGAINST SOLELY BASED
ON HIS DISABILITY ............................................................................ 16

POINT V

      COUNT X OF THE SAC SHOULD BE
DISMISSED AS AGAINST DOE BECAUSE
PLAINTIFF FAILED TO FILE A NOTICE OF
CLAIM AS REQUIRED PURSUANT TO
EDUCATION LAW § 3813 .................................................................... 21

CONCLUSION ..................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**                                                                         **Pages**

*Acito v. IMCERA Grp.*,
    47 F.3d 47 (2d Cir. 1995)................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................4, 5

*C.L. v. Scarsdale Union Free Sch. Dist.*,
    744 F.3d 826 (2d Cir. 2014)................................................................17, 20

*Cummings v. Premier Rehab Keller, PLLC*,
    142 S. Ct. 1562 (2022)................................................................................16

*Delee v. Hannigan*,
    729 F. App'x 25 (2d Cir. 2018) ................................................................5, 6

*Doniger v. Niehoff*,
    642 F.3d 334 (2d Cir. 2011)................................................................................7

*Fouche v. Schneiderman*,
    2015 U.S. Dist. LEXIS 32909
    (E.D.N.Y. Feb. 2, 2015)................................................................................8

*Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*,
    280 F.3d 98 (2d Cir. 2001)................................................................................16

*Geisler v. Petrocelli*,
    616 F.2d 636 (2d Cir. 1980)................................................................................4

*Gottlieb v. County of Orange*,
    84 F.3d 511 (2d Cir. 1996)................................................................................7

*Hardy v. New York City Health & Hosps. Corp.*,
    164 F.3d 789 (2d Cir. 1999)................................................................................9

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)................................................................................6

*Johnson v. Nextel Communs., Inc.*,
    660 F.3d 131 (2d Cir. 2011)................................................................................14

**Cases**                                                                                   **Pages**

*Estate of Keenan v. Hoffman-Rosenfeld*,
    2019 U.S. Dist. LEXIS 126330
    (E.D.N.Y. July 29, 2019) ....................................................................8

*L.V. v. New York City Dep't of Educ.*,
    2020 U.S. Dist. LEXIS 128723
    (S.D.N.Y. July 17, 2020) ..................................................................16

*Loeffler v. Staten Island Univ. Hosp.*,
    582 F.3d 268 (2d Cir. 2009) ...........................................................16

*Malley v. Briggs*,
    475 U.S. 335 (1986) ............................................................................7

*Martinez v. Browne*,
    2023 U.S. Dist. LEXIS 53350
    (E.D.N.Y. Mar. 28, 2023) ...................................................................6

*McElwee v. County of Orange*,
    700 F.3d 635 (2d Cir. 2012) ...........................................................18

*O'Brien v. City of Syracuse*,
    54 N.Y.2d 353 (1981) ......................................................................8, 9

*Polardo v. Adelberg*,
    2023 U.S. Dist. LEXIS 53219
    (S.D.N.Y. Mar. 28, 2023) ...................................................................6

*Rutherford v. Florida Union Free Sch. Dist.*,
    16-CV-9778 (KMK), 2019 U.S. Dist. LEXIS 55971
    (S.D.N.Y. Mar. 29, 2019) .................................................................22

*Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*,
    748 F.2d 774 (2d Cir. 1984) .............................................................4

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
    84 F.3d 629 (2d Cir. 1996) .............................................................11

*Savino v. City of New York*,
    331 F.3d 71 (2d Cir. 2003) ................................................................7

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ............................................................................4

*Schlaifer Nance & Co. v. Estate of Warhol*,
    119 F.3d 91 (2d Cir. 1997) .............................................................10

**Cases**                                                                                                    **Pages**

*Schlenger v. Fid. Emplr. Servs. Co., LLC,*
    785 F. Supp. 2d 317
    (S.D.N.Y. 2011) ...................................................................................................13

*Sharbat v. Iovance Biotherapeutics, Inc.,*
    2022 U.S. Dist. LEXIS 2328
    (S.D.N.Y. Jan. 5, 2022) ................................................................................. 12-13

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994) ........................................................................11, 12

*Tangreti v. Bachmann,*
    983 F.3d 609 (2d Cir. 2020) ................................................................................5

*Taravella v. Town of Walcott,*
    599 F.3d 129 (2d Cir. 2010) ................................................................................7

*Tylicki v. St. Onge,*
    297 F. App'x 65 (2d Cir. 2008) .........................................................................17

*Tyson v. City of New York,*
    2019 U.S. Dist. LEXIS 195386
    (S.D.N.Y. Nov. 8, 2019) .....................................................................................7

*V.S. v. Muhammad,*
    595 F.3d 426 (2d Cir. 2010) ................................................................................7

*Vasquez v. New York City Dep't of Educ.,*
    2023 U.S. Dist. LEXIS 26873
    (S.D.N.Y. Feb. 15, 2023) ......................................................................16, 18, 19

*Veleron Holding, B.V. v. Morgan Stanley,*
    694 F. App'x 858 (2d Cir. 2017) ......................................................................14

*Walczyk v. Rio,*
    496 F.3d 139 (2d Cir. 2007) ................................................................................7

*Wright v. Smith,*
    21 F.3d 496 (2d Cir. 1994) ..................................................................................5

*Zellner v. Summerlin,*
    494 F.3d 344 (2d Cir. 2007) ................................................................................6

*Zito v. New York City Off. of Payroll Admin.,*
    130 A.D.3d 1326 (3d Dep't 2015) ................................................................. 8-9, 9

**Statutes**                                                                                              **Pages**

8 N.Y.C.R.R. § 200, *et seq.*..............................................................................22

42 U.S.C. § 1983 ..............................................................................................4, 5

C.P.L.R. § 214-g ..........................................................................................4, 9, 21

C.P.L.R. § 3016(b) ............................................................................................10

Fed. R. Civ. P. 9(b) ......................................................................................10, 11

Fed. R. Civ. P. 12 ...............................................................................................4

Fed. R. Civ. P. 12(b) ..........................................................................................4

Fed. R. Civ. P. 12(b)(6) ...................................................................................1, 5

N.Y. Educ. Law § 3202 ......................................................................................22

N.Y. Educ. Law § 3203 ......................................................................................22

N.Y. Educ. Law § 3813 ..................................................................................21, 22

N.Y. Educ. Law § 4401 ......................................................................................22

N.Y. Educ. Law § 4404 ......................................................................................22

N.Y. Educ. Law § 4410 ......................................................................................22

N.Y. Gen. Mun. Law § 50-i(1) ..........................................................................8, 9

N.Y. Gen. Mun. Law § 50-e ...............................................................................10

N.Y. Gen. Mun. Law § 50-e(1)(a) ....................................................................9, 10

N.Y. Gen. Mun. Law § 50-e(8).....................................................................4, 9, 10, 21

N.Y. Penal Law § 255.25 ..................................................................................9, 10

N.Y. Penal Law § 255.26 ..................................................................................9, 10

N.Y. Penal Law § 255.27 ..................................................................................9, 10

N.Y. Penal Law § 263.05 ..................................................................................9, 10

Rehabilitation Act § 504 ........................................................3, 4, 16, 17, 18, 19, 20, 21

## PRELIMINARY STATEMENT

Defendants City of New York, the New York City Administration for Children's Services ("ACS"), ACS Commissioner David Hansell, the New York City Department of Education ("DOE"), the New York City Board of Education ("BOE"), DOE Chancellor Meisha Porter, Paul Frankel, and Tyanda Smith (together, "City Defendants" or "the City") respectfully submit this memorandum of law in support of their motion to partially dismiss Plaintiff's Second Amended Complaint ("SAC") (ECF No. 64).  As discussed more fully below, dismissal of the SAC is warranted as against Paul Frankel and Tyanda Smith as these Defendants have qualified immunity and because the SAC fails to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6).  Further, Counts VI, VII, IX, and X of the SAC should be dismissed due to various fatal deficiencies in how these Counts were pled, as will be described in further detail below.

## STATEMENT OF FACTS

For the purpose of this motion, the following facts alleged in the SAC are assumed to be true.  Incorporation of these facts, however, is not an indication that City Defendants accept the allegations as true.  References to material or facts outside of the pleadings are made only to the extent that they are "integral" to Plaintiff's allegations and causes of action.

Plaintiff filed the SAC on January 10, 2023.  ECF No. 64.  As alleged therein, Plaintiff D.S. was in foster care from April 2009, when he was two years old, through May 2018, at the age of eleven years old, when he was adopted by his mother, Plaintiff K.S.  *Id.* ¶ 1.  Plaintiff alleges that D.S. has a number of disabilities including: neonatal hypoglycemia, necrotizing enterocolitis ("NEC"), and periventricular leukomalacia, seizures, asthma, Autism Spectrum Disorder, hearing impairment, gross and fine motor delays, speech and language impairments, disruptive behavior disorder, conduct disorder, disruptive mood dysregulation disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), Post Traumatic Stress Disorder ("PTSD"), borderline

intellectual functioning, Enuresis Encopresis, myopia and a strabismus. *Id.* ¶ 165. Plaintiff alleges that while D.S. was in foster care, he was physically abused, sexually abused and was the victim of gross negligence. *Id.* ¶ 5, 10. Plaintiff alleges that during his time in foster care, D.S. was moved to at least four foster homes. *Id.* ¶ 11. Plaintiff further alleges that D.S.'s foster parents, L.M. and O.M., were not screened properly before D.S.'s placement in that home. *Id.* ¶¶ 6–8. Plaintiff also alleges that the Heartshare St. Vincent's Services ("HSVS") Defendants and the City ignored indicated reports of abuse and neglect while D.S. was at the home of L.M. and O.M. *Id.* ¶ 9.

Plaintiff K.S. alleges that she "communicated during the foster care certification process that she was not able to foster and/or adopt a child who had either a history of sexual abuse and/or significant physical or psychological disabilities and psychiatric needs." *Id.* ¶ 600. Plaintiff further alleges that the "ACS foster care application that K.S. submitted in April 2007 checked off 'No' in the portion of the application inquiring if the applicant was interested in the placement of a special needs child." *Id.* ¶ 601. Plaintiff additionally alleges that in 2017, Heartshare Defendants and ACS representatives intentionally misrepresented and concealed D.S.'s medical and psychiatric history, his history of sexual abuse, the level of care that D.S. required, his sexualized behavior, such as defecating and urinating on the floor and in cups, and his sexualized behavior towards other children. Plaintiff alleges that, as a result of the alleged misrepresentation and concealment, K.S. was fraudulently induced to agree to become D.S.'s pre-adoptive foster parent "when she did not have the resources to support and assist" D.S. *Id.* ¶¶ 18, 27. D.S. was allegedly moved from educational setting to educational setting without appropriate interventions to address the abuse and trauma he experienced, as well as his PTSD and underlying medical conditions. *Id.* ¶ 35. Plaintiff alleges that K.S. will need to incur significant expenses and has experienced, and

will continue to experience, significant stress, anxiety, and emotional distress in her effort to care for D.S., whose condition is worsening. *Id.* ¶ 29.

Plaintiff further alleges that the City and HeartShare Human Services of New York, HeartShare St. Vincent's Services, and HSVS were parties to a contract for which the Plaintiff was a third-party beneficiary. *Id.* ¶¶ 63, 879. Plaintiff claims that under this contract, Foster Care Agency Defendants agreed to provide foster care to children who were placed with the City, and the City agreed to compensate them for same. *Id.* ¶¶ 872–73. Plaintiff contends that Foster Care Agency Defendants breached this contract and that, as a result, "D.S. suffered extraordinary physical and mental injuries, loss of funds, pain and suffering, anguish, terror, confusion, and helplessness." *Id.* ¶¶ 880–81.

Plaintiff next alleges that "Defendants discriminated against D.S. under Section 504 [of the Rehabilitation Act] by . . . denying him reasonable accommodations, adopting systemic policies, procedures and practices that violate D.S.'s rights under the [Individuals with Disabilities Education Act ("IDEA")] and New York State law, and engaging in widespread and pervasive violations of the IDEA and New York State Education law." *Id.* ¶ 897. Yet, Plaintiff does not allege that this discrimination was due to D.S.'s disability. *Id.* ¶¶ 896–905.

Plaintiff continues by alleging that Defendants Tyanda Smith and Paul Frankel were the ACS case managers assigned to D.S.'s case during a part of D.S.'s time in foster care, and that they were responsible for tasks including the approval of Family Assessment and Service Plans ("FASPs"). *Id.* ¶ 68, 364. Specifically, Plaintiff alleges that Defendant Frankel was charged with approving the April 2014 and October 2014 FASPs, which stated that there were no safety concerns in the foster home of L.M., that D.S. would like to have sibling visits but that visits were

3

not occurring, and that "D.S.'s educational, emotional, and medical needs were being met in the home of L.M. and O.M." *Id.* ¶¶ 375, 389, 390.

Lastly, Plaintiff claims she is not required to file Notice of Claim, pursuant to N.Y. C.P.L.R. § 214-g and N.Y. Gen. Mun. L. § 50-e(8). *Id.* ¶ 802.

The SAC asserts causes of action under 42 U.S.C. § 1983, § 504 of the Rehabilitation Act, the Adoption Assistance and Child Welfare Act, New York State Social Services Laws and Education Laws, and asserts causes of actions for violations of the IDEA, New York State and U.S. Constitutions, breach of contract, fraud in the inducement, denial of records, and common law negligence and supervision.

## <u>LEGAL STANDARD</u>

A motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure challenges the feasibility of the claims asserted in Plaintiff's Second Amended Complaint. *See* Fed. R. Civ. P. 12(b); *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir. 1984). "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Ryder Energy*, 748 F.2d 774, 779 (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *Twombly*, 550

U.S. at 556.  "While a complaint attached by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [his] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Rather, the factual allegations must "possess enough heft to show that the pleader is entitled to relief."  *Id.* at 557.  As such, dismissal of a complaint is warranted where the allegations of a complaint "do not permit the court to infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. 662, 679.  On a motion to dismiss, legal and other conclusions are not entitled to the presumption of truth typically afforded a plaintiff's factual allegations.  *Id.*  Therefore, unless a plaintiff's well-pleaded allegations have "nudged claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed."  *Twombley*, 550 U.S. at 570.

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO ALLEGE FRANKEL AND SMITH'S PERSONAL INVOLVEMENT, AND REGARDLESS, THEY ARE ENTITLED TO QUALIFIED IMMUNITY

**A.      Plaintiff fails to allege Frankel and Smith's personal involvement**

Plaintiff has simply failed to state a claim against the individual ACS Defendants Frankel and Smith.  "'It is well settled in this circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite' to a section 1983 claim."  *Delee v. Hannigan*, 729 Fed. App'x 25, 31 (2d Cir. 2018) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). A "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

However, Frankel and Smith are barely mentioned in the SAC – in four total paragraphs – out of the SAC's 933 paragraphs.  *See* SAC ¶¶ 68, 364, 375, 390.  Plaintiff merely pleads that Frankel approved the FASPs (and pleads nothing whatsoever regarding Smith).  *See id.*  However, Plaintiff does not plead any specifics about Frankel's personal involvement in any alleged misleading or harmful aspects of these FASPs – at most she has pleaded that he was a part of a group who created them.  These conclusory allegations are insufficient to state a claim against these Defendants.  *See, e.g.*, *Delee*, 729 Fed. App'x at 31 (plaintiff failed to state a claim where he merely pleaded three defendants' job titles and that a fourth defendant forwarded correspondence); *Polardo v. Adelberg*, 2023 U.S. Dist. LEXIS 53219, at *21 (S.D.N.Y. Mar. 28, 2023) (plaintiff failed to adequately allege personal involvement where he relied on "group pleading," pleading that actions were taken by a group of people); *Martinez v. Browne*, 2023 U.S. Dist. LEXIS 53350, at *26–27 (E.D.N.Y. Mar. 28, 2023) (dismissing claims against defendant where plaintiff merely pleaded that defendant was present at the signing of waiver documents, not that he was personally involved in the hearing waiver).

### B.    Frankel and Smith are entitled to Qualified Immunity

Even if Plaintiff has pleaded sufficient factual allegations to state claims that are plausible on their face, the Court should still dismiss the claims against Frankel and Smith because they are entitled to qualified immunity as a matter of law.

"Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity applies where a government officer's "action was objectively legally reasonable in light of the legal rules that were clearly established at the time it

was taken." *Taravella v. Town of Walcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quotation omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Doniger v. Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011) (quotation omitted).  In other words, "if 'officials of reasonable competence could disagree on the legality of the action at issue in its particular factual context,' then the defendant is entitled to qualified immunity. . .." *Id.* (quoting *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007)).  Indeed, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity may be found as a matter of law where the "evidence is such that, even when it is viewed in the light most favorable to [Plaintiff] and with all permissible inferences drawn in [her] favor, no rational jury could fail to conclude that it was objectively reasonable for [defendants] to believe that [they were] acting in a fashion that did not violate such a right." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted).  A motion to dismiss is the proper stage at which to raise qualified immunity, since "assertions of qualified immunity should be addressed as early as possible in the judicial process." *Savino*, 331 F.3d at 71 (citations omitted).  This is because "qualified immunity is an immunity from suit – not merely an immunity from judgment. . . ." *Id.* (citations omitted).

Assuming the above is met, ACS caseworkers are entitled to qualified immunity. *See V.S. v. Muhammad*, 595 F.3d 426, 430–31 (2d Cir. 2010) (citations omitted).

Nothing in the SAC would cause a reasonable caseworker to disagree with any of Frankel or Smith's actions here. *See Tyson v. City of N.Y.*, 2019 U.S. Dist. LEXIS 195386, at *19– 20 (S.D.N.Y. Nov. 8, 2019) (holding ACS caseworker entitled to qualified immunity where she

followed ACS procedures and nothing in the Complaint would cause a reasonable caseworker to disagree with her actions). Nor could they – as Frankel and Smith are barely mentioned, as stated above. Even taking Plaintiff's minimal allegations at face value, Frankel and Smith are still entitled to qualified immunity. Plaintiff's allegations in the SAC relating to Frankel and Smith concern Frankel's alleged role in approving FASPs (again, there are no allegations regarding Smith whatsoever). *See* SAC ¶¶ 364, 375, 390. However, Plaintiff has not pleaded any specifics that would indicate that Frankel was unreasonable to approve the FASPs, especially where he relied on information provided to him by the Foster Care Agency Defendants. *See, e.g.*, *Estate of Keenan v. Hoffman-Rosenfeld*, 2019 U.S. Dist. LEXIS 126330, at *60 (E.D.N.Y. July 29, 2019) (not unreasonable for a child services worker to rely on the report of a doctor and supposed child abuse specialist). The Court should grant qualified immunity to these Defendants where Plaintiff has alleged only minimal, conclusory allegations that do not establish that they acted unreasonably. *See, e.g.*, *Fouche v. Schneiderman*, 2015 U.S. Dist. LEXIS 32909, at *11–12 (E.D.N.Y. Feb. 2, 2015) (plaintiff's conclusory allegation failed to properly plead that defendant violated her clearly established rights).

## POINT II

### COUNT VI OF THE SAC SHOULD BE DISMISSED AS PLAINTIFF DID NOT FILE A NOTICE OF CLAIM AND THE ALLEGATIONS ARE MERELY CONCLUSORY IN CONTRAVENTION OF THE FRCP

### A.    Plaintiff failed to file a Notice of Claim

New York's General Municipal Law requires a plaintiff to file a notice of claim prior to commencing an action in tort against the City of New York or an employee. N.Y. Gen. Mun. Law, § 50-i(1); *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358 (1981); *Zito v. New York*

*City Off. of Payroll Admin.*, 130 A.D.3d 1326, 1327 (3d Dep't 2015).  That notice of claim must be served "within ninety days after the claim arises."  N.Y. Gen. Mun. Law § 50-e(1)(a).  Failure to comply with this mandatory condition precedent is fatal and requires dismissal of the action. *Zito*, 130 A.D.3d 1326, 1327 (and cases cited therein). A Plaintiff must do so within ninety (90) days of the incident giving rise to the claim.  N.Y. Gen. Mun. Law §§ 50-e(1)(a) and 50-i(1).  *See O'Brien* at 358 (dismissing trespass claim for failure to file notice of claim within 90 days of incident).   "Notice of claim requirements 'are construed strictly by New York state courts[,] . . . [and] [f]ailure to comply with th[o]se requirements ordinarily requires a dismissal for failure to state a cause of action."  *Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir. N.Y. 1999).

Plaintiff alleges that she need not file a Notice of Claim under N.Y. C.P.L.R. § 214-g and N.Y. Gen. Mun. L. § 50-e (8). Compl. ¶ 802. N.Y. C.P.L.R. § 214-g provides that

> [E]very civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in section 263.05 of the penal law, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against a child less than eighteen years of age, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim….is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

As the statue shows, some claims now have exceptions to the general rule. However, Plaintiff's Complaint does not demonstrate that any of the claims constitute a sexual offense as defined in the named statutes. *Id*. The allegations under this Count do involve acts or omissions related to a sexual offense, but the statute requires the act to be "conduct which would constitute a sexual offense." *Id*. Since the allegations here are for fraud, a notice of claim is still required.

New York's General Municipal Law § 50-e(8) provides:

> This section shall not apply to any claim made for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in section 263.05 of the penal law committed against a child less than eighteen years of age.

As explained above, while Plaintiff's claims are related to a "sexual offense" - they are not against the City Defendants for "conduct which would constitute a sexual offense." *Id*. Thus, to the extent that the fraud-in-inducement claims apply to the City Defendants, a notice of Claim is required under N.Y. Gen. Mun. Law § 50-e(1)(a).

**B.    Plaintiff's allegations are not sufficiently specific to sustain a claim of fraud as they apply to City Defendants**

"Under New York law, for a plaintiff to prevail on a claim of fraud, [s]he must prove five elements by clear and convincing evidence: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). Further, Fed. R. Civ. P. 9(b) and CPLR 3016(b) require a higher standard for pleading fraud claims. Plaintiff must describe with

particularity the circumstances constituting the fraud, including (1) specifying statements that the plaintiff contends were fraudulent, (2) identifying the speaker, (3) stating where and when the statements were made, and (4) explaining why the statements were fraudulent. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127–28 (2d Cir. 1994); *see also* Fed. R. Civ. P. 9(b) (plaintiff pleading fraud claim "must specify the circumstances constituting fraud "with particularity."). In addition, the pleading must allege facts that give rise to a strong inference of fraudulent intent, by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996).

Here, Plaintiff fails to meet these standards as they apply to the City Defendants. Plaintiff's discussion of the alleged fraud begins in paragraph 598 with her description of adopting D.S. Plaintiff alleges that she indicated that she did not want to adopt a child with a history of sexual trauma or a disability. SAC ¶¶600–01. The SAC then describes a conversation Plaintiff had with an Assistant Director of HSVS, stating that the director "identified D.S. as a potential foster child for K.S. In their initial conversation, HSVS Assistant Director King told K.S. the three things she knew about D.S. were that he had a big smile, liked bow ties, and played drums in the church band." *Id.* ¶ 604. The SAC details the various people that K.S. communicated with at HSVS, including Assistant Director King, the Vice President, a Senior Director, a Supervisor, and a Case Planner. *Id.* ¶ 605. Plaintiff simply adds in her allegations that "K.S. also met with representatives of ACS." *Id.* ¶ 605. Plaintiff then claims that because of her previous communications, Defendants 1) must have been on notice and 2) must have "intentionally and deliberately mislead and intentionally omitted material information from K.S." *Id.* ¶¶ 606–07.

K.S. alleges that she met with various representatives from the Foster Care Agency and names them yet does not name any City employees. *Id.* ¶ 608.

None of these various allegations state a claim for fraud in the inducement by the City Defendants. Plaintiff describes numerous conversations with HSVS staff and K.S., naming specific people with whom she is alleged to have communicated. However, Plaintiff does not identify any City employees who spoke with K.S. and whom she claims intentionally omitted facts related to D.S.'s special education needs or alleged history of sexual abuse. By contrast, the SAC is specific as to who allegedly omitted material facts - alleging that it was "Defendant King in particular" who remained silent and made material omissions (*id.* ¶ 868) - it does not describe conversations where K.S. indicated to the City Defendants that her adoption of D.S. was conditional on D.S. not having a history of abuse.

Indeed, City Defendants could not have known the substance of what Plaintiff discussed with the Assistant Director, the Vice President, a Senior Director, a Supervisor, and a Case Planner at HSVS—thus, the City could not have been on notice as to what Plaintiff knew at the time D.S. went to live with her. This undercuts any notion that the City was conspiring to deceive Plaintiff to induce her to adopt D.S.

Further, the SAC lacks the required specificity regarding the City Defendants. For one, Plaintiff does not describe any alleged fraudulent statements made by any City actor. Plaintiff's allegations essentially amount to fraud by omission, but this does not obviate the requirement for specificity. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127–28 (2d Cir. 1994) (requiring the Plaintiff to identify the speaker). Where the allegations amount to fraud by omission and a plaintiff cannot specify a time and place, the pleading must still allege "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the

omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Sharbat v. Iovance Biotherapeutics, Inc.*, 2022 U.S. Dist. LEXIS 2328, at *24–25 (S.D.N.Y. Jan. 5, 2022). While Plaintiff alleges what the omissions were, the SAC does not identify the City employee responsible for the alleged omission(s). Nor does the Complaint allege that a conversation took place where K.S. expected the City to communicate these facts, but intentionally withheld them to induce her to adopt D.S. Since Plaintiff did not allege the fraud with particularity – crucially, failing to identify the City employee who allegedly committed the fraud – her claim fails. *See e.g., Schlenger v. Fid. Emplr. Servs. Co., LLC*, 785 F. Supp. 2d 317, 352 (S.D.N.Y. 2011) (case dismissed due to Plaintiff's fraudulent inducement claim where Plaintiff accepted employment failed as the Plaintiff did not "name individuals, identify detailed statements, or identify particular dates makes clear that as pleaded this claim lacks the specificity required by Rule 9.").

Next, Plaintiff must plausibly allege fraudulent intent, motive and opportunity. As it applies to the City, the SAC does not do so because it does not identify which City actor allegedly committed the fraud. It is impossible to determine from the face of the SAC whether any unspecified actor had the motive and opportunity to allegedly commit fraud. *See Acito v. IMCERA Grp.*, 47 F.3d 47, 49 (2d Cir. 1995) ("Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.").

The motive and opportunity are similarly absent. Even presuming that a City actor actually had the motive to induce Plaintiff to adopt a child, Plaintiff has not pleaded any benefit that would give this hypothetical actor. Given that Plaintiff alleges that she had numerous conversations with HSVS employees, even if a City actor intended to commit fraud by omission,

it is not clear that they could have done so unless there were a coordinated conspiracy between HSVS and the City - which is not alleged in the SAC.

## POINT III

### COUNT VII OF THE SAC SHOULD BE DISMISSED AGAINST CITY DEFENDANTS AS IT DOES NOT SPECIFICALLY CLAIM A <u>BREACH BY CITY DEFENDANTS</u>

To the extent that Plaintiff's breach of contract claims apply to City Defendants, the Court should dismiss them. Plaintiff argues that the City and the Foster Care Agency Defendants were parties to a contract for which Plaintiff was a third-party beneficiary. SAC ¶ 879. Plaintiff then alleges that due to Defendants' actions, "D.S. suffered extraordinary physical and mental injuries, loss of funds, pain and suffering, anguish, terror, confusion, and helplessness." *Id.* ¶ 881. However, the specific allegations only describe a breach by the Foster Care Agencies, not by the City Defendants.

To prevail on a third-party beneficiary contract claim, Plaintiff must demonstrate both a breach of contract and that she was a third-party beneficiary. To state a breach of contract claim under New York law, Plaintiff must allege "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Communs., Inc.*, 660 F.3d 131, 134 (2d Cir. 2011). To plead a third-party beneficiary claim, Plaintiff must allege "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for the plaintiff's benefit, and (3) that the benefit to the plaintiff is sufficiently immediate to indicate the assumption by the contracting parties of a duty to compensate the plaintiff if the benefit is lost." *Veleron Holding, B.V. v. Morgan Stanley*, 694 Fed. App'x 858, 859 (2d Cir. 2017).

Plaintiff's allegations against the City Defendants fail because the SAC does not allege a failure of the City Defendants to perform according to the alleged contract. Plaintiff first alleges the existence of an agreement between the City and the Foster Care Agency: "At all times applicable, Foster Care Agency Defendants were a party to contracts with defendant City, pursuant to which Foster Care Agency Defendants agreed to provide foster care to children who were placed with defendant City." SAC ¶ 872. The SAC alleges that the City's responsibility under the contract is compensation. *Id*. ¶ 873. Thus, for the City to breach the contract, there must be an allegation that the City did not properly pay the Foster Care Agencies. Then, Plaintiff would need to show that this lack of compensation caused the Plaintiffs damages. Yet, the SAC does not do so.

By contrast, the SAC explains the Foster Care Agency's alleged breach. The SAC alleges that under the contract, the Foster Care Agencies were to "provide safe, competent, and professional supervision of children in foster care and to protect children in their care from abuse and maltreatment." *Id*. ¶ 874. This supposedly included specific duties: (1) facilitating visitation, (2) providing medical services, (3) conducting background checks on foster parents, and (4) ensuring compliance with the Interstate Compact on the Placement of Children. *Id.* ¶¶ 875–879. The SAC asserts that the Foster Care Agencies did not perform these duties, and thus "breached [their] contract with defendant City, including but not limited to breaching the above-cited provisions of said contract." *Id.* ¶ 880.

As stated, the alleged breach is on the part of the ***non-City Defendants only***. The SAC alleges duty, breach, causation, and damages as against the Foster Care Agency Defendants, but does not do so as against the City Defendants. The SAC also alleges that the City's duty under the contract is to compensate the Foster Care Agencies for their work supervising foster care

15

children, but at no point alleges that the City failed to make these payments. Thus, the Court should dismiss this claim as it applies to the City Defendants.

## POINT IV

### COUNT IX OF THE SAC SHOULD BE DISMISSED BECAUSE IT DOES NOT DEMONSTRATE THAT D.S. WAS DISCRIMINATED AGAINST SOLELY BASED ON HIS DISABILITY

Plaintiff's claim under Section 504 of the Rehabilitation Act should also be dismissed, as the SAC does not demonstrate that City Defendants denied D.S. benefits due solely to his disability. Further, for the claims that fall under the IDEA, Plaintiff has not shown bad faith on the part of City actors.

To prevail under the Rehabilitation Act, Plaintiff must demonstrate (1) that he has a disability under the Rehabilitation Act; (2) that he is "otherwise qualified" for the benefit that has been denied; (3) that he has been denied the benefits "solely by reason of" his disability; and (4) that the benefit is part of a program or activity receiving federal financial assistance. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009). Indeed, Plaintiff must show an intentional violation to receive monetary damages instead of education relief. *See id.* ("monetary damages under the Rehabilitation Act are recoverable upon a showing of an intentional violation"). Plaintiff must further demonstrate that defendant's actions were driven by discriminatory animus or ill-will based on the plaintiff's disability. *See L.V. v. N.Y.C. Dep't of Educ.*, 2020 U.S. Dist. LEXIS 128723, at *33 (S.D.N.Y. July 17, 2020) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001)). Lastly, to the extent that Plaintiff claims emotional damages under Section 504, those claims should be dismissed. *See Vasquez v. N.Y.C. Dep't of Educ.*, 2023 U.S. Dist. LEXIS 26873, at *20 (S.D.N.Y. Feb. 15, 2023) (citing

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562, 1576 (2022)) ("emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes.").

Additionally, the Second Circuit requires a heightened standard for § 504 claims that are educational in nature. As the Second Circuit explained:

> Courts in the Second Circuit have recognized that a Section 504 claim may be predicated on the claim that a disabled student was denied access to a free appropriate education, as compared to the free appropriate education non-disabled students receive. Such a claim, however, requires proof of bad faith or gross misjudgment. Something more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities, for example, a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment.

*C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 841 (2d Cir. 2014). Thus, for Plaintiff to prevail on her claim under § 504 as it applies to allegations regarding education, she must demonstrate both disability discrimination and bad faith or gross misjudgment of the City Defendants.

However, Plaintiff's § 504 claim does not demonstrate that the alleged injuries were solely due to disability discrimination. Rather, the SAC describes various other factors, such as D.S.'s aggressive behavior and systemic issues with communications between agencies. *See e.g.*, SAC ¶¶ 166, 579, 715, 901–903. For example, the SAC alleges that the Defendants failed to ensure that D.S. could "participate in extracurricular and community activities" and also claims that the limitations put on D.S. were the "result of his behavior." *Id.* ¶¶ 901, 903. The SAC further alleges that at various points, City agencies could not provide D.S. with the programs that had been in place because D.S.'s behavior made it unsafe for the other students or participants. *See e.g. id.* ¶¶ 579, 715. Plaintiff argues that these behaviors are the "manifestation of [D.S.'s] disability." *Id.* ¶ 901. Even if this were true (and City Defendants are not conceding that it is), a school could still

17

either discipline a student or remove that student from programming. *See Tylicki v. St. Onge*, 297 Fed. App'x 65, 67 (2d Cir. 2008) ("In other words, the ADA and the Rehabilitation Act permit [a school] to discipline a student even if the student's misconduct is the result of disability."). Under § 504, "inappropriate behavior is indisputably a legitimate non-discriminatory reason for [discipline] even if the behavior resulted from [a] disability." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 637 (2d Cir. 2012). Thus, to the extent that D.S. was denied participation in programming and expelled from various non-public schools, this is not a demonstration of disability discrimination by ACS, DOE, or the City.

Next, Plaintiff alleges that the City Defendants violated § 504 because they failed "to protect D.S. from abuse," and this "contributed to his behavioral issues." SAC ¶ 902. Such an allegation does not demonstrate disability discrimination. Insofar as City Defendants (or the Co-Defendants) could not find an appropriate home and/or school for D.S., there is no basis for claiming that this resulted from animus for disabled people. *See Vasquez v. N.Y.C. Dep't of Educ.*, 2023 U.S. Dist. LEXIS 26873, at *16 (S.D.N.Y. Feb. 15, 2023) ("even concluding that "the District had violated the IDEA, such a violation, without more would be insufficient to support a claim of disability-based discrimination under . . . Section 504 of the Rehabilitation Act.").

The SAC also claims that the Individuals with Disability Education Act ("IDEA") violations alleged against DOE rise to § 504 violations. Plaintiff alleges that when K.S. and D.S. began living together, D.S. attended the New York City Children's Center ("NYCCC"). SAC ¶¶ 597, 631. The SAC also alleges that this placement was inappropriate and did not facilitate D.S.'s progress over the 2017-18 school year because employees at the school had expectations that were too low for him. *Id.* ¶¶ 631–708. While Plaintiff may argue that this placement was insufficient, it is undisputed that DOE supplied a program and placement for D.S., for the 2017-18 school year,

and the SAC does not allege that NYCCC or DOE acted in bad faith. Furthermore, these claims were adjudicated by the Independent Hearing Officer ("IHO") in Case No. 173308. SAC ¶ 700.

Similarly, the allegations regarding the next school year (2018-19) do not demonstrate that DOE acted in bad faith. These allegations were also previously adjudicated in IHO Case No. 173308. *Id.* For that year, it is alleged that K.S. unilaterally placed D.S. in a neighborhood private school. *Id.* ¶ 708. The SAC then claims that "in spring 2019, [D.S.] had a behavioral incident. As a result, D.S. was not offered a seat for the 2019-2020 school year." *Id.* ¶ 710. The SAC then alleges that the DOE failed to offer a new placement or IEP, so K.S. enrolled D.S. in another private school program – for which Plaintiff alleges that DOE has not made necessary payments as required under an administrative order issued in Impartial Hearing Case No. 173308. *Id.* ¶ 713. The SAC claims that after another incident, D.S. was again told he could not return to that program. *Id.* ¶ 715. Then, it is alleged that when COVID-19 hit, D.S. experienced significant regression and had to be hospitalized. *Id.* ¶¶ 716–737. While a school district's inability to provide a program and timely payments, if accurate, could potentially be considered a violation of the IDEA, it neither demonstrates bad faith nor gross misjudgment. *See Vasquez*, 2023 U.S. Dist. LEXIS 26873, at *16. As this Court has previously held, "merely alleging that the Defendant acted 'deliberately' in denying services does not mean, without more, that the Defendant violated Section 504." *Id.*

During the COVID-19 pandemic, Plaintiff alleges that DOE struggled to find an appropriate placement for D.S. (*see* SAC ¶¶ 739–46); yet, this does not demonstrate that DOE's difficulty in placing D.S. was due to bad faith. *See Vasquez*, 2023 U.S. Dist. LEXIS 26873, at *16. Furthermore, to the extent that DOE could not find a placement, these claims were addressed by IHO Case No. 197100. SAC ¶¶ 758. Plaintiff alleges that based on DOE's inability to find a

placement, K.S. received funding at a unilateral placement in Utah for the 2020-21 school year. *Id.* SAC¶¶ 755–58.  However, Plaintiff admits that D.S. had another episode and was not allowed back to the Utah program.  *Id.* ¶¶ 759–61.  Plaintiff acknowledges that DOE offered what it could given the situation, *i.e.*, a public-school placement, but Plaintiff viewed the program as inappropriate and instead chose to use a behavioral therapist paid by DOE.  *Id.* ¶¶ 763–64.  Plaintiff alleges that in December 2021, D.S. was accepted to a new program.  *Id.* ¶¶ 766–67.  The SAC states that there, D.S. had repeated issues, ended up in juvenile pretrial detention, and ultimately was told he could not return to the program.  *Id.* ¶¶ 774–80.

Regarding the current school year, it is evident that any delays in timely finding a placement for D.S. were not due to DOE acting in "bad faith" and were not a result of any "gross negligence" on DOE's part, but were instead due to limited options being available given D.S.'s extensive psychiatric and unique needs.  From the face of the SAC, it is not clear whether it would have even been possible for DOE to find a residential school for D.S.  Indeed, DOE paid for the programs in Utah and Massachusetts, which illustrates that while DOE struggled to find a school, it was not due to bad faith.  Without such a showing, Plaintiff cannot maintain a claim under the Rehabilitation Act for IDEA violations.  *See C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 841 (2d Cir. 2014) ("Courts in the Second Circuit have recognized that a Section 504 claim may be predicated on the claim that a disabled student was denied access to a free appropriate education…. Such a claim, however, requires proof of bad faith or gross misjudgment.").  Clearly, DOE's inability to provide a program for D.S. was not because of disability discrimination, but because few placements in the country are equipped to handle D.S.'s needs.

Next, K.S. found a program to accept D.S. that DOE believed was not sufficiently educational to constitute a school placement under the IDEA.  Plaintiff contends that "it is only

due to the severity of [D.S.'s] disability and the lack of appropriate residential settings available

on the approved list that his seat [at Flowers was] at risk due to non-payment." SAC ¶ 796. Yet,

when DOE was ordered to pay for the program, it paid the $250,000 tuition, thus undercutting the

idea that it was acting in bad faith, and D.S. was subsequently admitted to J. Flowers Health

Institute in Texas ("Flowers"). *See* ECF No. 76, 77. Further, as explained above, Plaintiff's

contention ignores the main reason for the difficulty in finding a placement for D.S., *i.e.*, D.S.'s

behavior.

These allegations do not support a § 504 claim. As alleged, DOE continued to

search for schools appropriate for D.S. and continued to pay for placements. *Id.* ¶¶ 755–58, 769–

73. Given the extensive efforts by DOE and K.S. to find an appropriate placement, it is apparent

that few places in the country have the tools to supply D.S. with a safe space to attend school, and

at the time of this filing, none have accepted him. Thus, it can hardly be asserted that DOE acted

in bad faith or committed gross negligence in not finding a school, especially when it has timely

paid for the programs in which D.S. was enrolled.

In sum, while Plaintiff argues that the City should be better equipped to handle

D.S.'s needs, this alone does not make out a claim under the Rehabilitation Act. The allegations

in the SAC do not demonstrate that Plaintiff's damages are solely the result of disability

discrimination, and the educational claims do not establish bad faith or gross misjudgment, as

required.

### POINT V

**COUNT X OF THE SAC SHOULD BE DISMISSED AS AGAINST DOE BECAUSE PLAINTIFF FAILED TO FILE A NOTICE OF CLAIM AS REQUIRED PURSUANT TO EDUCATION LAW § 3813**

Plaintiff alleges that she is "not required to file Notice of Claim, pursuant to N.Y. C.P.L.R. § 214-g and N.Y. Gen. Mun. L. § 50-e (8)." These laws apply only to claims relating to sexual assault. *See* N.Y. C.P.L.R. § 214-g and N.Y. Gen. Mun. L. § 50-e (8). However, the claims under Count X do not appear to include claims related to sexual assault - Count X only includes claims under the New York State Constitution and State Educational Law (N.Y.S. Educ. Law §§ 3202, 3203, 4401, 4404 and 4410, and 8 N.Y.C.R.R. §§ 200, *et seq.*). Without claims relating to sexual assault, all extant claims against DOE require a notice of claim under N.Y. Educ. Law § 3813. The statute provides:

> No action or special proceeding, for any cause whatever… involving the rights or interests of any district or any such school shall be prosecuted or maintained against any school district, board of education… unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

Plaintiff has not alleged that she filed a notice of claim for the allegations that do not relate to sexual assault. Thus, K.S.'s state law claims that do not relate to sexual assault should be dismissed. *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778 (KMK), 2019 U.S. Dist. LEXIS 55971, at *131 (S.D.N.Y. Mar. 29, 2019) (dismissing all state law claims, including those under N.Y. Educ. Law §§ 3202, 3203, and 4401, because Plaintiff failed to file a Notice of Claim).

## **CONCLUSION**

For the reasons stated herein, City Defendants respectfully request that this Court grant its motion to partially dismiss Plaintiff's Second Amended Complaint and dismiss the claims asserted against Paul Frankel and Tyanda Smith, as well as Counts VI, VII, IX, and X, in their entirety and with prejudice, together with such other and further relief as the Court deems just and proper.

Dated:     New York, New York
           June 22, 2023


                                   **HON. SYLVIA O. HINDS-RADIX**
                                   Corporation Counsel of the City of New York
                                   *Attorney for City Defendants*
                                   100 Church Street
                                   New York, New York 10007
                                   (212) 356-2079; (212) 356-0896


                                   By:     /s/
                                           _____
                                           Jay Cullen and Jacquelyn Dainow
                                           Assistant Corporation Counsels