UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

K.S., *et al.*,

                                        Plaintiffs,

               -vs-

                                                              Civ. No. 21-cv- 4649 (PAC)

City of New York, *et al.*,

                                        Defendants.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CITY DEFENDANTS' PARTIAL
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................... 1

APPLICABLE LEGAL STANDARDS ................................................................ 4

ARGUMENT ......................................................................................................... 5

I.    K.S. SUFFICIENTLY ALLEGED CLAIMS AGAINST FRANKEL AND SMITH AND THEY ARE NOT ENTITLED TO QUALIFIED IMMUNITY ................................. 5

II.   PLAINTIFFS SUFFICIENTLY ALLEGED FRAUD in the INDUCEMENT ............ 8

III.  PLAINTIFFS' BREACH OF CONTRACT CLAIM. ............................................... 9

IV.   SECTION 504 DISCRIMINATION CLAIM ......................................................... 9

    A. Plaintiffs Alleged Multiple, Repeated IDEA Violations and FAPE Deprivations Sufficient to State a Claim under Section 504 ............................................... 11

    B. Plaintiffs Alleged Defendants Adopted and Implemented Illegal Policies Sufficient to State a Claim under Section 504 ............................................................. 15

    C. K.S. is in the Zone of Interest and Has Stated a Claim under Section 504 ........... 18

V. PLAINTIFFS' NEW YORK STATE and CONSTITUTIONAL CLAIMS ................. 19

    A. Claims Under the New York State Constitution ..................................... 19

    B. Claims Under the New York State Education Law That Are Incorporated by Reference into the IDEA ............................................................................ 20

    C. N.Y. Educ. Law Section 3813 Does Not Apply to Claims Grounded in Equity and/or that Relate to the Public Interest ....................................................... 23

    D. Claims Concerning D.S.'s Property Right in Education Under Section 3202 ....... 24

    E. Claims Under the New York State Special Education Law That Are Not Incorporated by Reference into the IDEA .................................................... 24

CONCLUSION .......................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 4

*B.D. v. DeBuono*, 130 F.Supp.2d 401 (S.D.N.Y. 2000) ............................................................. 15

*Bay Shore Union Free School Dist. v. Kain*, 485 F.3d 730 (2d Cir. 2007) ................................. 21

*Bd. of Educ. of Hendrick Hudson Centr. School Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176 (1982) ....................................................................................................................................... 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 4

*Berrie v. Bd. of Educ. of Port Chester-Rye Union Free School Dist.*, 2017 WL 2374363 (S.D.N.Y. 2017) ......................................................................................................................... 24

*Braxton/Obed-Edom v. City of New York*, No. 17-CV-199 (GBD) (SDA), 2018 WL 11316020 (S.D.N.Y. Dec. 20, 2018), report and recommendation adopted *sub nom. B. Braxton/Obed-Edom v. City of New York*, 368 F. Supp. 3d 729 (S.D.N.Y. 2019) ............................................... 6

*Bucalo v. E. Hampton Union Free Sch. Dist.*, 351 F. Supp. 2d 33 (E.D.N.Y. 2005) ................... 8

*Butler v. S. Glens Falls Cent. Sch. Dist.*, 106 F.Supp.2d 414 (N.D.N.Y. 2000) ......................... 12

*C.D. v. New York City Dept. of Educ.*, 2009 WL 400382 (S.D.N.Y. Feb. 11, 2009) .............. 10, 15

*Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240 (2d. Cir.  2008) .......................... 23

*Caviezel v. Great Neck Public Schools*, 701 F.Supp.2d 414 (E.D.N.Y. 2010) ............................ 22

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .................................................... 4

*Christopher S. ex rel. Rita S. v. Stanislaus Cty. Office of Educ.*, 384 F.3d 1205 (9th Cir. 2004) .. 15

*Cianciotto on behalf of D.S. v. New York City Dep't of Educ.*, 600 F. Supp. 3d 434 (S.D.N.Y. 2022) ......................................................................................................................................... 12

*Conway v. Bd. of Educ. of Northport-E. Northport Sch. Dist.*, 2014 WL 3828383 (E.D.N.Y. Aug. 1, 2014) ...................................................................................................................................... 12

*D.C. ex rel. E.B. v. New York City Dep't of Educ.*, 950 F. Supp. 2d 494 (S.D.N.Y. 2013) .......... 10

*Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840 (6th Cir. 2004) ............................................ 15

*Deylii v. Novartis Pharms. Corp.*, No. 13-cv-6669 (NSR), 2014 WL 2757470 (S.D.N.Y. June 16, 2014) ........................................................................................................................................... 4

*Doe v. Westport Bd. of Educ.*, 2020 WL 6382639 (D. Conn. Oct. 30, 2020) ...................... 18, 19

*F.C. v. New York City Dep't of Educ.*, No. 15 CIV. 6045 (PAE), 2016 WL 8716232 (S.D.N.Y. Aug. 5, 2016) .................................................................................................................... passim

*Frith v. Hill*, No. 07-cv-5899 (JSR), 2009 WL 3073716 (S.D.N.Y. Sept. 23, 2009) ................... 4

*Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313 (S.D.N.Y. 2005) ................................................................................................................................ 10, 11, 13

*Gleave v. Graham*, 954 F. Supp. 599 (W.D.N.Y.1997) .............................................................. 4

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ................................................................................. 8

*Johnson v. Rockland Cnty. BOCES*, No. 21-CV-3375, 2022 WL 4538452 (S.D.N.Y. Sept. 28, 2022) ......................................................................................................................................... 20

*Kalliope R. ex rel. Irene D. v. New York State Dep't of Educ.*, 827 F. Supp. 2d 130 (E.D.N.Y. 2010) ......................................................................................................................................... 15

*L.M.P. v. School Bd. of Broward Cty.*, 49 IDELR 14 (S.D. FL 2007) ........................................ 15

*LIH ex rel. LH v. New York City Bd. of Educ.*, 103 F. Supp. 2d 658 (E.D.N.Y. 2000) ............... 21

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009) ......................................... 18

*Luna Perez v. Sturgis Public Schools*, 598 U.S. 142 (U.S. 2023) .............................................. 23

*M.H. ex rel. K.H. v. Mt. Vernon City Sch. Dist.*, No. 13-cv-3596 (VB), 2014 WL 901578 (S.D.N.Y. Mar. 3, 2014) ............................................................................................................ 13

*Martinez v. Browne,* No. 20-CV-111 (AMD) (ST), 2023 WL 2667075 (E.D.N.Y. Mar. 28, 2023) ............................................................................................................................................... 6

*Matson v. Board of Educ. of City School Dist. of New York*, 631 F.3d 57 (2d Cir. 2011) .......... 19

*Matter of Sheil v Melucci, No. 2011-05990,* 20552/10, 941 N.Y.S.2d 265, 2012 N.Y. Slip Op. 02505, 2012 WL 1109314 (N.Y.A.D. 2 Dept., Apr. 03, 2012) ................................................ 23

*Moskowitz v. Great Neck Union Free School Dist.*, 2021 WL 4268138 (E.D.N.Y. Aug. 4, 2021) ............................................................................................................................................. 24

*Mrs. C. v. Wheaton*, 916 F.2d 69 (2d Cir. 1990) ....................................................................... 21

*Polardo v. Adelberg*, 2023 WL 2664612 (S.D.N.Y. Mar. 28, 2023) .......................................... 23

*R.B. ex rel. L.B. v. Bd. of Educ. of City of New York*, 99 F. Supp. 2d 411 (S.D.N.Y. 2000).. 10, 13

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ............................................................................. 4

*Rutherford v. Fla. Union Free Sch. Dist.*, 2019 WL 1437823 (S.D.N.Y. Mar. 29, 2019) .......... 13

*S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282 (S.D.N.Y. 2007) ........................................... 10, 15

*Scaggs v. N.Y. Dep't of Educ.*, No. 06–CV–0799, 2007 WL 1456221 (E.D.N.Y. May 16, 2007) 12

*T.P. ex rel. Patterson v. Elmsford Union Free School Dist.,* 2012 WL 860367 (S.D.N.Y. Feb. 27, 2012) ......................................................................................................................................... 4

*Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773 (1st Cir. 1984), aff'd 471 U.S. 359 (1985) ......................................................................................................................... 21

*Tylena M. v. Heartshare Children's Services,* 390 F.Supp.2d 296 (S.D.N.Y. 2005) ................. 19

*Tyson v. City of N.Y.*, 2019 U.S. Dist. LEXIS 195386 (S.D.N.Y. Nov. 8, 2019) ........................... 7

*U.S. v. New York City Dep't of Educ.*, 2017 WL 1169653 (S.D.N.Y. 2017) ................................. 8

*V.S. v. Muhammad*, 595 F.3d 426 (2d Cir. 2010) ....................................................................... 7

*Wolson v. Reed Elsevier Inc.*, No. 09-CV-4040, 2010 WL 334919 (S.D.N.Y. Jan. 29, 2010) ...... 4

*Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232 (2d Cir. 2006) ................20

**Statutes**

20 U.S.C. § 1401(9) ............................................................................................................... 14, 20

20 U.S.C. § 1412 ......................................................................................................................... 14

20 U.S.C. § 1415 .......................................................................................................... 7, 14, 21, 22

20 U.S.C. § 1415(b)(2) ........................................................................................................... 7, 14

20 U.S.C. § 1415(j) ...................................................................................................................... 14

20 U.S.C. §§ 1400 ....................................................................................................................... 14

20 U.S.C. §§ 1401 .................................................................................................................. 7, 14

20 U.S.C. §§ 1412 ....................................................................................................................... 14

20 U.S.C. §1412(10)(B)(ii) ........................................................................................................ 15

29 C.F.R. § 1630.2(i)(1)(i) .......................................................................................................... 10

29 U.S.C. § 794 ............................................................................................................................. 9

34 C.F.R. § §300.34 ..................................................................................................................... 16

34 C.F.R. § §300.34(a), (b)(5) ..................................................................................................... 16

34 C.F.R. § 104 ........................................................................................................................... 10

34 C.F.R. § 104(3)(j)(2) .............................................................................................................. 10

34 C.F.R. § 104.33(b) .................................................................................................................. 10

34 C.F.R. § 300.101 .................................................................................................................... 14

34 C.F.R. § 300.30 ...................................................................................................................... 14

34 C.F.R. § 300.519 ...................................................................................................................... 7

34 C.F.R. §§ 104.33–104.37 ........................................................................................................ 9

34 C.F.R. §§ 104.4(b)(1)(i) -(vi), 104(b)(3) ............................................................................... 10

34 C.F.R. §§ 300.30 ................................................................................................. 7
34 C.F.R. §§ 300.9 ................................................................................................. 22
34 C.F.R. §§300.146, 300.325(c) ......................................................................... 15
34 C.F.R. §104 (3)(j)(1) ........................................................................................ 10
8 N.Y.C.R.R. § 200.1(ii) .......................................................................... 7, 14, 22
8 N.Y.C.R.R. § 200.4 ............................................................................................ 22
8 N.Y.C.R.R. § 200.5 ............................................................................................ 22
8 N.Y.C.R.R. § 200.6 ............................................................................................ 22
Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1
Fed. R. Civ. P. 9(b) ................................................................................................. 8
N.Y. Const. art. X, § 5 .......................................................................................... 20
N.Y. Educ. Law § 1701 ........................................................................................ 20
N.Y. Educ. Law § 2554 ........................................................................................ 20
N.Y. Educ. Law § 3202 ........................................................................................ 23
N.Y. Educ. Law § 4404 ................................................................................... 20, 22
N.Y. Gen. Mun. L. § 50-e ............................................................................... 19, 24

## PRELIMINARY STATEMENT

K.S., on behalf of herself and D.S., ("Plaintiffs") submit this opposition to the partial motion to dismiss some of the claims in Plaintiffs' Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. Pro. Rule 12(b) filed by Defendants City of New York, the New York City Administration for Children's Services ("ACS"), ACS Commissioner David Hansell, the New York City Department of Education ("DOE"), the New York City Board of Education ("BOE"), DOE Chancellor Meisha Porter, Paul Frankel, and Tyanda Smith ("Defendants") (Dkt. No. 108).[1] *See* Memorandum of Law in Support of Defendants' Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("MTD"). For the reasons set forth herein, and upon the allegations in the SAC, the Court should deny the Defendants' MTD, except to the extent indicated herein.

## STATEMENT OF FACTS

D.S. is fifteen years old; he entered foster care in 2009 at the age of two and remained in foster care until he was adopted by K.S. at the age of eleven, in May of 2018. SAC. ¶¶ 1-2. In 2017, when D.S. was ten years old, he was placed with K.S. as a pre-adoptive foster care placement. SAC. ¶ 611.

D.S. has been diagnosed with several disabilities including periventricular leukomalacia, seizures, pervasive developmental delay, gross and fine motor delays, speech and language impairments, disruptive behavior disorder, bipolar disorder, conduct disorder, disruptive mood dysregulation disorder, attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), enuresis encopresis, myopia and a strabismus. SAC ¶ 165.

---

[1] While Defendants here are generally referred to as "City Defendants" in other communications, since this motion only involves those parties, Plaintiffs will refer to them as "Defendants" here. "Defendants" here refers to the City of New York, Administration for Children's Services, the Department of Education, the Board of Education and the Chancellor and the individual employees of these governmental agencies named in the SAC. "Foster Care Defendants" refers to St. Vincent's Services, Inc., Heartshare Human Services of New York, Heartshare St. Vincent's Services, and the individual employees of these foster care agencies named in the SAC.

When D.S. becomes stressed and/or dysregulated, D.S. engages in severely maladaptive behaviors, including aggression, property destruction, suicidal threats, ideations, and actions, throwing and smearing his feces, urinating on the floor, drinking his urine, disrobing, sexually inappropriate behavior, as well as aggressive verbal, anger, and school refusal. *See, e.g.*, SAC ¶¶ 165, 166, 265, 281, 195, 308, 320, 330, 354, 355, 361, 363, 376, 396, 398, 428, 432, 433, 445, 456, 478-479, 481, 486, 487, 496, 510, 521, 524, 525, 531, 549, 555, 723-24, 728, 748, 768, 774, 778.

In 2009, and up until 2015, D.S. had been placed in a "kinship" foster care family with L.M., a woman who was not his relative; L.M.'s husband had multiple criminal convictions. SAC ¶¶ 7, 218, 217, 226, 224, 352, 368. Defendants permitted L.M. to remove D.S. out of state for over one year, without the proper documentation. SAC ¶¶ 323-325, 339-40, 345. He was removed from L.M.'s home in April 2015. SAC ¶ 216.  Before living with K.S., D.S. was moved between homes, switched schools and special education programs multiple times and had several hospitalizations. SAC ¶¶ 18, 584, 612, 723, 759, 765-766. D.S. had very little contact with most of his siblings while in kinship foster care. SAC ¶¶ 16, 280, 306, 322, 337-338, 346, 362, 389, 425, 475, 801, 819-821, 875, 923. Plaintiffs allege that while D.S. was in foster care, he was physically and sexually abused, neglected, and his medical, psychological, educational and emotional needs were grossly and negligently neglected. *See generally*, SAC ¶¶ 368, 387, 403, 401, 407, 410, 418, 864.

K.S. alleges, *inter alia,* that Defendants knew D.S. needed both a residential setting and a therapeutic foster home but took no steps to secure either. SAC ¶¶ 22-23, 148-149, 155, 169, 464, 739. Further, until K.S. had D.S. in care, Defendants failed to arrange for D.S. to have a legal decision-maker in place for purposes of special education, and he had made no educational progress until he came to live with K.S. SAC ¶ 531. At the time, he could not read or write beyond

the low elementary school level. SAC ¶¶ 569-571. Since D.S. came to live with K.S. she has had to engage in administrative litigation under the special education laws to try to remedy the yearly deprivations in that regard. SAC ¶¶ 671, 700, 703-704, 757-758, 771, 789-793.

Although Defendants knew that D.S. had an extremely challenging and complex history, including dangerous maladaptive behaviors, a history of significant trauma and abuse, as well as medical and psychiatric conditions, Defendants concealed this history from K.S. before placing him in her care for pre-adoption. SAC ¶¶ 13, 18, 21, 25, 27, 30, 171, 706, 749, 800. Even after a Queens Family Court judge ordered all Defendants to provide all of D.S.'s education and foster-care related records to K.S. in February 2018, they failed to do so. SAC ¶¶ 672-675. Defendants continue to cause damage to Plaintiffs, by continuing to withhold critical records from K.S. well after this case was filed. SAC ¶¶ 32, 174, 808, 856-865. As the Court is aware, Defendants concealed evidence that D.S. was raped in foster care, and that D.S. suffered physical and sexual abuse while living with L.M. SAC ¶¶ 20, 290, 468, 856-865. Further, Defendants only recently disclosed that D.S. had a history of seizures, periventricular leukomalacia and a possible genetic disorder. SAC ¶¶ 13, 165, 184-187, 268.  As a result of Defendants' failure to provide records to K.S., D.S. lost five years wherein he could have received critical assistance after he was placed with K.S. Moreover, Plaintiffs believe there are still important documents in Defendants' custody they have yet to provide. SAC ¶ 25, 856-865. As the Court is aware, D.S. severely decompensated in spring of 2020, reverting to his earlier behaviors; he has been hospitalized multiple times for suicidal and aggressive behavior, attended multiple residential programs, and ended up in secure juvenile detention in Massachusetts for disability-related conduct. SAC ¶¶ 716-781. *See also*, ECF Nos. 75-77, 95-98.

3

## APPLICABLE LEGAL STANDARDS

In addressing a Rule 12(b)(6) motion, the Court must "accept the complaint's factual allegations, and all reasonable inferences that can be drawn from those allegations in the plaintiff's favor, as true." *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007). The notice pleading standard under Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the … claim is and the ground upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 556).  The Second Amended Complaint ("SAC") contains non-conclusory, "well-pleaded" and detailed factual allegations sufficient to survive a motion to dismiss under Rule 12(b)(6); these detailed allegations certainly are not "naked assertions" that are "devoid of factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  In addition, without converting the Motion to one of summary judgment, the Court can rely upon documents incorporated by reference into the FAC, as well as matters in the public record, concerning which the Court can take judicial notice, including earlier proceedings in this case.[2]

---

[2] *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *T.P. ex rel. Patterson v. Elmsford Union Free School Dist.,* 2012 WL 860367, at *3-4, n.1 (S.D.N.Y. Feb. 27, 2012) (citing *Christman v. Skinner*, 468 F.2d 723 (2d Cir. 1972)); *Gleave v. Graham*, 954 F. Supp. 599 (W.D.N.Y.1997) (noting a court can "take judicial notice of [government] policies and guidelines on a motion to dismiss"); *Frith v. Hill*, No. 07-cv-5899 (JSR), 2009 WL 3073716, at *16 (S.D.N.Y. Sept. 23, 2009) (same). The Court can also take judicial notice of pending or settled lawsuits.  *Deylii v. Novartis Pharms. Corp.*, No. 13-cv-6669 (NSR), 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014)*; Wolson v. Reed Elsevier Inc.*, No. 09-CV-4040, 2010 WL 334919, at *1 (S.D.N.Y. Jan. 29, 2010).

## ARGUMENT

### I.    K.S. SUFFICIENTLY ALLEGED CLAIMS AGAINST FRANKEL AND SMITH AND THEY ARE NOT ENTITLED TO QUALIFIED IMMUNITY

#### A.  Personal Involvement of Frankel and Smith

Plaintiffs sufficiently plead personal involvement by Defendants Frankel and Smith in violating Plaintiffs' constitutional rights for individual liability under Section 1983. Defendants' assertion that Frankel and Smith are only expressly mentioned in four paragraphs in the SAC (*see* MTD at 13 [citing SAC ¶¶ 68, 364, 375, 390]),[3] misses the mark.  These four paragraphs must be read in conjunction with the preceding paragraphs describing the factual allegations and constitutional violations. Furthermore, it is not simply that Frankel and Smith "approved" the FASP forms (MTD at 6); it is the knowledge they had about D.S. and his circumstances, which is delineated in the FASPs, their active participation in D.S.'s case planning, and their failure to act based on the information reported in the FASPs, which violated Plaintiffs' rights.

For example, the October 2013 FASP details the evaluation results of Dr. Plotnick, SAC ¶¶ 354-61, recommending therapy to address D.S.'s mental health and behavioral issues and special education to address his learning disability; the FASP also notes the continued plan for L.M. and O.M. to adopt D.S. despite multiple concerns and red flags raised by various individuals, including the fact that Defendants discovered that L.M. was not an actual relative of D.S. SAC ¶¶ 354-64.

Critically, Smith was the ACS caseworker at the time of D.S.'s removal from his biological mother and placement into foster care because of an allegation of sexual abuse of D.S.'s sibling. SAC ¶¶ 198, 201. Upon information and belief, she was also the ACS employee who spoke with

---

[3] Frankel and Smith are also referred to as "ACS Employees," SAC ¶¶ 68-69, and "ACS Employees" are specifically cited in two additional paragraphs, SAC ¶¶ 201, 234.

the initial "kinship" foster care parent (and failed to identify that L.M. was not an actual relative) and approved the placement. SAC ¶¶ 215, 217. Upon information and belief, Smith was the ACS caseworker who created multiple reports in 2009 through 2012 concerning D.S.'s foster care status, after conducting both interviews with various individuals, including school representatives, and home visits.  SAC ¶¶ 198-313.

Defendants' citations, MTD at 13, are inapposite; here, Plaintiffs alleged more than mere job titles and receipt of correspondence: drawing all reasonable inferences in favor of Plaintiffs, the SAC sufficiently alleged personal involvement by Frankel and Smith, who were overseeing D.S.'s care while in ACS's custody as ACS employees, and their failure to act denied Plaintiffs' their constitutional rights – in failing to protect D.S. from harm, failing to address his mental health and educational needs. SAC ¶¶ 164-66, 168-69, 198-313, 354-75, 389-90, 425-27, 476-77, 522. *See also* SAC ¶¶ 391-408, 512-13, 601, 801.[4] *See Martinez v. Browne,* No. 20-CV-111 (AMD) (ST), 2023 WL 2667075, at *9 (E.D.N.Y. Mar. 28, 2023) (denying a motion to dismiss where there was a dispute of fact as to that officer's involvement); *Braxton/Obed-Edom v. City of New York*, No. 17-CV-199 (GBD) (SDA), 2018 WL 11316020, at *8 (S.D.N.Y. Dec. 20, 2018), report and recommendation adopted *sub nom. B. Braxton/Obed-Edom v. City of New York*, 368 F. Supp. 3d 729 (S.D.N.Y. 2019) (denying dismissal against individual defendants who were aware of the issues giving rise to constitutional violations).

## B. Frankel and Smith are not Entitled to Qualified Immunity

Frankel and Smith are not entitled to qualified immunity as Plaintiffs allege that they violated clearly established constitutional rights of Plaintiffs while performing their duties, and

---

[4] Although different ACS caseworkers investigated allegations of abuse and neglect and the L.M./O.M. home, Frankel, as D.S.'s ACS case manager at the relevant times, should be imputed with the agency knowledge. CITE? Also, there is a typographical error in paragraph 601 as K.S. completed the ACS foster care application in 2017, 2007. SAC ¶ 601.

their actions (and inactions) were objectively unreasonable. Unlike the ACS caseworkers in *Tyson v. City of N.Y.*, 2019 U.S. Dist. LEXIS 195386, at *19–20 (S.D.N.Y. Nov. 8, 2019) (removing child from mother's custody after she was hospitalized for a suicide attempt) and *V.S. v. Muhammad*, 595 F.3d 426, 430–31 (2d Cir. 2010) (removing child after doctor diagnosed shaken baby syndrome) (MTD at 7), no reasonable caseworker here would not be aware that their actions and inactions violated well known statutory and/or constitutional laws protecting D.S.'s rights.

Here, Plaintiffs allege violation of D.S.'s rights when Frankel and Smith (1) placed D.S. with L.M. and O.M., who were not relatives and who had a known history of substance use and criminal history; (2) permitted continued placement with L.M. and O.M., and an adoption plan for years, even after it was discovered that they were not relatives, had been arrested and continued to use illegal drugs; (3) failed to follow up on the possibility that D.S. was sexually abused by his uncle or was exposed to abuse which gave rise to troubling behaviors as a child; (4) failed to investigate and follow up on D.S.'s education and failed to ensure a surrogate parent was appointed for D.S. as mandated by the IDEA (20 U.S.C. §§ 1401(23), 1415(b)(2); 34 C.F.R. §§ 300.30(a), 300.519; 8 N.Y.C.R.R. § 200.1(ii)) to represent his interests in special education; (5) failed to investigate and ensure D.S. received treatment for the anal rape and sexual abuse in the second foster home; (6) failed to ensure his physical, medical, psychological and mental health needs were met; (7) failed to disclose D.S.'s records to K.S. even after the Family Court issued an order; (8) approved the placement with K.S. even though she was not a therapeutic foster placement (as needed); and (9) failed to ensure that a request was made for residential placement for D.S. years earlier. No reasonable caseworker could believe that these actions and inactions were conclusively reasonable and/or did not violate D.S.'s rights. At a minimum, the determination of whether Frankel and Smith are entitled to qualified immunity are questions of fact that cannot be resolved

the motion to dismiss, *i.e.,* without allowing discovery. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald,* 457 U.S. 800, 818-819 (1982) .

## II.    PLAINTIFFS SUFFICIENTLY ALLEGED FRAUD in the INDUCEMENT

Here, the Court should find equitable estoppel bars Defendants from a defense based on the lack of a notice of claim, when as here, as Defendants have acted "wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice." *U.S. v. New York City Dep't of Educ.*, 2017 WL 1169653 (S.D.N.Y. 2017) (collecting cases). K.S. alleges sufficient facts to bring herself under the umbrella of this defense, as information about D.S.'s medical conditions, physical and sexual abuse was concealed by Defendants after the Family Court ordered production and not disclosed until well after this action was filed. SAC at ¶¶ 162-63, 172-74, 633-34, 672-75, 702-07, 800, 855-65. After withholding the information from K.S. well past the time that she would have had to file her notice, the Court should not dismiss her claims. This is particularly true since Defendants have clearly been on notice of these issues for many years. Nevertheless, if the Court determines that this claim is one for which a notice of claim is required, Plaintiffs ask that the Court allow K.S. time to seek leave to file a late notice. *Accord, Bucalo v. E. Hampton Union Free Sch. Dist.*, 351 F. Supp. 2d 33, 36-37 (E.D.N.Y. 2005).

Plaintiffs have otherwise plead the elements of Fraud in the Inducement and meet the heightened pleading standards of Fed. R. Civ. P. 9(b). SAC at ¶¶ 598-675, 699-702, 866-70. Plaintiffs sufficiently alleged "with particularity the circumstances constituting fraud" – Defendants' knowledge of D.S.'s sexual abuse and extensive psychiatric and psychological history, as well as his behavioral and medical issues, and their failure to disclose the information

to K.S., who indicated on Defendants' form application, that she did not want to adopt a special needs child. SAC ¶¶ 600-01, 598-675, 699-702, 866-70. Defendants were aware of K.S.'s adoptive conditions, were aware of D.S.'s extensive and serious history and withheld information and remained silent in order to induce K.S. to adopt D.S. *Id.*

### III. PLAINTIFFS' BREACH OF CONTRACT CLAIM.

Plaintiffs do not dispute that the SAC only raises claims concerning breach of contract against the Foster Care Defendants (MTD at 14-16) and request that, to the extent the SAC includes those claims against City Defendants, that they be dismissed without prejudice, since Plaintiffs have not had the benefit of discovery of those types of documents.

### IV. SECTION 504 DISCRIMINATION CLAIM

Contrary to Defendants' claims (MTD at 16-21), Plaintiffs have more than adequately pleaded facts to survive a motion to dismiss under Rule 12(b) with respect to Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. Defendants have misstated the standards applied by courts in ruling upon motions to dismiss claims under Section 504. MTD at 16-17.

Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance." 29 U.S.C. § 794; *see also* 34 C.F.R. §§ 104.33–104.37.

To establish a "*prima facie*" violation of Section 504, Plaintiffs only had to allege that (1) D.S. is an "otherwise qualified" disabled individual; (2) he was excluded from benefits because of his [disabilities]; and (3) Defendants receive federal funding. *F.C. v. New York City Dep't of Educ.*, No. 15 CIV. 6045 (PAE), 2016 WL 8716232 (S.D.N.Y. Aug. 5, 2016); *S.W. by J.W. v. Warren*,

528 F. Supp. 2d 282, 289, 290 (S.D.N.Y. 2007); *Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 333-34 (S.D.N.Y. 2005).  Plaintiffs credibly alleged all required elements of this claim.[5] SAC ¶¶ 2, 40, 85, 86, 147, 150-52, 156-57, 161-800, 896-905.

First, the DOE is a recipient of federal funds (SAC an ¶¶ 85, 86) and, as such, is obligated to comply with Section 504.  *F.C.*, 2016 WL 8716232. Second, D.S. "has a physical or mental impairment which substantially limits one or more major life activities." 34 C.F.R. §104 (3)(j)(1). "Major life activities" are defined to include, but not be limited to "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working (34 C.F.R. § 104(3)(j)(2)), as well as "eating, sleeping, standing, sitting, reaching, lifting, bending, reading, concentrating, thinking, communicating, and interacting with others" (29 C.F.R. § 1630.2(i)(1)(i)). D.S.'s multiple disabilities individually and collectively substantially limit several major life functions, including learning, speaking, caring for himself, thinking, reading, communicating and interacting with others. SAC ¶¶ 2, 40.

Under Section 504, the DOE was (and is) prohibited from, *inter alia:* (a) affording D.S. an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded students who do not have disabilities; (b) providing D.S. with an aid, benefit, or service that is not as effective as that provided to students without disabilities; and (c) otherwise limiting D.S.'s enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service. S*ee* 34 C.F.R. §§ 104.4(b)(1)(i) -(vi), 104(b)(3).  Section 504 also requires the DOE to provide a FAPE to eligible students.  *See* 34 C.F.R. § 104.33(b).

Claims of discrimination under Section 504 and the ADA and claims of deprivation of a

---

[5]Defendants are required to comply with Section 504 in relation to children with IEPs.  *D.C. ex rel. E.B. v. New York City Dep't of Educ.*, 950 F. Supp. 2d 494 (S.D.N.Y. 2013); *C.D.*, 2009 WL 400382; *R.B. ex rel. L.B. v. Bd. of Educ. of City of New York*, 99 F. Supp. 2d 411 (S.D.N.Y. 2000).

FAPE, although "complementary," "address different injuries and thus require different proof." *Gabel*, 368 F. Supp. 2d at 333. Courts have held that "'[s]omething more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities.'" *F.C.*, 2016 WL 8716232 (quoting *Butler v. S. Glens Falls Cent. Sch. Dist.*, 106 F. Supp. 2d 414, 420 (N.D.N.Y. 2000) (quoting *Wenger v. Canastota Cent. Sch. Dist.*, 979 F. Supp. 147, 152 (N.D.N.Y. 1997), *aff'd*, 181 F.3d 84 (2d Cir. 1999))), and 208 F.3d 204 (2d Cir. 2000) (summary order)) (internal citation omitted)).

In general, a plaintiff must demonstrate that the DOE acted with bad faith or gross misjudgment. *Gabel,* 368 F. Supp. 2d at 334 (citing *Butler v. S. Glens Falls Cent. Sch. Dist.*, 106 F. Supp. 2d 414, 420 (N.D.N.Y. 2000)). "However, a 'plaintiff is not required to show 'personal animosity or ill will. Rather, intentional discrimination may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom.'" *F.C.*, 2016 WL 8716232, at *13 (citations omitted).

There are two distinct sets of circumstances where courts have found that Plaintiffs have plead requisite facts sufficient to raise a Section 504 claim: (a) allegations of multiple, repeated violations of the IDEA; and (b) allegations that actions were taken pursuant to policies, procedures or practices (or due to the absence of required policies and/or procedures). Plaintiffs satisfied the standard for pleading Section 504 violations under both categories of cases.

### A. Plaintiffs Alleged Multiple, Repeated IDEA Violations and FAPE Deprivations Sufficient to State a Claim under Section 504

It is well-settled that "discrimination sufficient to support a Section 504 claim 'may be inferred when there is 'evidence that a school district acted with deliberate or reckless indifference to the student's federally protected rights or with bad faith or gross misjudgment.'" *Cianciotto on*

*behalf of D.S. v. New York City Dep't of Educ.*, 600 F. Supp. 3d 434, 459 (S.D.N.Y. 2022) (citations omitted). Further, a plaintiff need not show that they were denied solely due to their disabilities, only that a school acted with "gross indifference and/or gross negligence in so denying" a FAPE. *Id.* at 459. A Section 504 violation "'may be predicated on the claim that a disabled student was denied access to a free appropriate education, as compared to the free appropriate education non-disabled students received.'" *Id.*

Numerous courts in this Circuit have upheld Section 504 claims when, as here, a plaintiff alleges that the Defendants committed numerous, repeated violations of the IDEA and/or the student suffered a prolonged deprivation of FAPE. *Cianciotto*, 600 F.Supp.3d at 459 (504 claims not dismissed where an IHO found FAPE was denied that the DOE did not appeal, bullying was not addressed in an IEP, DOE failed to amend an IEP to address bullying); *F.C.*, 2016 WL 8716232, at *16 (FAPE was denied for two years and DOE decertified plaintiff without a reevaluation); *see also Conway v. Bd. of Educ. of Northport-E. Northport Sch. Dist.*, 2014 WL 3828383, at *18 (E.D.N.Y. Aug. 1, 2014)(claims not dismissed where the student was denied a FAPE for one year due to district's conduct, including, failing to meet with parent prior to school year, failing to issue an IEP, failing to evaluate him, and failing to provide appropriate educational services, which included home instruction for that one year)*; Butler v. S. Glens Falls Cent. Sch. Dist.*, 106 F. Supp. 2d 414, 420-21 (N.D.N.Y. 2000) (denying summary judgment on 504 claims where defendants created multiple inappropriate IEPs and failed to provide special education services over two years); *Scaggs v. N.Y. Dep't of Educ.*, No. 06–CV–0799, 2007 WL 1456221, at *16 (E.D.N.Y. May 16, 2007) (denying dismissal of ADA and 504 claims where plaintiffs alleged an "extensive list" of defendants' failures and omissions and their refusal to remedy the problems); *Rutherford v. Fla. Union Free Sch. Dist.*, 2019 WL 1437823 (S.D.N.Y.

Mar. 29, 2019) (denying dismissal of 504 and ADA claims where plaintiffs alleged multiple violations of IDEA over three years); *M.H. ex rel. K.H. v. Mt. Vernon City Sch. Dist.*, No. 13-cv-3596 (VB), 2014 WL 901578, at *7 (S.D.N.Y. Mar. 3, 2014) (finding that "Plaintiffs' allegations of the District's numerous and systemic failures to identify those students in need of special education services and timely to create and implement appropriate IEPs – together with their assertions that both the City and State Defendants were aware but failed to remedy these failures" was sufficient to state a claim); *Gabel,* 368 F. Supp. 2d at 333-35 (denying dismissal where the DOE denied FAPE for two years and did not rebut the errors); *R.B. ex rel. L.B. v. Bd. of Educ. of City of New York*, 99 F. Supp. 2d 411 (S.D.N.Y. 2000) (finding 504 violations when DOE failed to implement an IEP from May to September of one year, did not develop an interim plan when a child was suspended and failed to implement the untimely interim plan, all over one year).

Here, Plaintiffs alleged that there are undisputed FAPE deprivations for *a minimum of ten years*: seven of which (2014-2015 through 2018-2019 and 2020-2021), were already conclusively decided by impartial hearing officers in two cases, and three of which were conceded in the pending hearing. SAC at ¶¶ 556, 567, 586, 700, 709-11, 883. In 2019-2020, prior to COVID, the DOE offered no IEP, no placement and no program for D.S., leaving him out of school for an entire year. SAC ¶¶ 710-12. Further, D.S.'s severe behavioral regression only occurred in March 2020 and the DOE did not recommend a residential setting until August 2020. SAC at ¶¶ 715-39. Moreover, even after the DOE recommended a residential setting in 2020, the DOE located no approved placement until July 2023. SAC at ¶¶ 739, 744-46, 754-56, 761-63, 766, 789, 793, 797.

Moreover, K.S. alleges that the DOE (a) failed to implement D.S.'s pendency pursuant

to 20 U.S.C. § 1415(j) (SAC ¶¶ 789-794, 893) (which the Court is aware of having now twice issued emergency orders relating to pendency); (b) failed to implement final, unappealed orders issued under the IDEA (SAC ¶ 892); (c) failed to adequately evaluate and reevaluate D.S. (SAC ¶¶ 345, 553-59, 561, 565-66, 737, 830); (d) failed to assign a surrogate parent to act on D.S.'s behalf while he was in foster care, before and after his biological parent's rights were terminated, as mandated by IDEA, 20 U.S.C. §§ 1401(23), 1415(b)(2); 34 C.F.R. §§ 300.30(a), 300.519; 8 N.Y.C.R.R. § 200.1(ii) (SAC ¶¶ 31, 366, 538, 539, 566, 585, 633, 671, 672, 851, 860, 886, 887); (e) denied K.S. access to D.S.'s records, even after being ordered to provide them to her by the Family Court in 2018 (SAC ¶¶ 673, 675); (f) failed to implement D.S.'s IEPs (SAC ¶¶ 642, 648).

Moreover, Defendants assert – without any proof – concerning the time following the residential recommendation in August 2020, that it is not their responsibility to ensure a FAPE to D.S., and they tried but simply could not find a placement. First, the facts argued by DOE are not before the Court and Plaintiffs do not agree that those facts are accurate or relevant to the MTD. This is particularly true since Plaintiffs alleged that the process the Defendants used to find a placement was infirm and that they failed to ensure sufficient services and residential programs and services are available for D.S. and students him. SAC ¶¶ 739-46, 761-67, 769-72, 779, 783-85, 795-99. In fact, the parties are about to conclude a hearing for 2019-20, 2021-22 and 2022-23 SYs, in which DOE's staff's testimony shows that the DOE did not adequately "try" to find a placement. While the DOE had an option of using a private program to place D.S., the DOE was ultimately responsible for a FAPE. 20 U.S.C. §§ 1400(d) 1401(9); 34 C.F.R. § 300.101. The DOE's choice not to deliver certain services and/or operate residential placements, and use only private entities, does not afford them a defense to FAPE (20 U.S.C. § 1412(a)(1) or to the DOE's obligation to ensure the least restrictive environment. 20 U.S.C. § 1412(a)(5)(A). In fact, even if

the DOE found a private program, the DOE remains responsible for a FAPE while D.S. is there. 20 U.S.C. §1412(10)(B)(ii); 34 C.F.R. §§ 300.146, 300.325(c). Given the detailed allegations of the SAC, the Court should not grant Defendants' motion to dismiss Section 504 claims based on the extent of FAPE and other violations.   The issue of DOE's conduct in not locating a placement for three years has not been subject to discovery and the parties are completing the underlying hearing for 2019-2020, 2021-22 and 2022-23; if the Court were to dismiss this claim (which it should not), it should do so without prejudice for leave to amend following the IHO's decision in the pending hearing, as that records has closed today with the filing of the parties' closing briefs.

**B.    Plaintiffs Alleged Defendants Adopted and Implemented Illegal Policies Sufficient to State a Claim under Section 504**

In addition to allegations of extensive FAPE and IDEA violations, Section 504 "gross misconduct" requirement may be established where there is evidence that a district employs blanket policies that set service delivery by rules or other administrative criteria: "intentional discrimination may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom." *S.W.*, 528 F.Supp.2d 282 (citing *Butler v. S. Glens Falls Cent. Sch. Dist.,* 106 F.Supp.2d 414, 420 (N.D.N.Y. 2000)). *See also F.C.*, 2016 WL 8716232 (same); *Kalliope R. ex rel. Irene D. v. New York State Dep't of Educ.*, 827 F. Supp. 2d 130, 143-144 (E.D.N.Y. 2010); *B.D. v. DeBuono*, 130 F.Supp.2d 401 (S.D.N.Y. 2000); *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840 (6th Cir. 2004); *Christopher S. ex rel. Rita S. v. Stanislaus Cty. Office of Educ.*, 384 F.3d 1205 (9th Cir. 2004); *L.M.P. v. School Bd. of Broward Cty.*, 49 IDELR 14 (S.D. FL 2007).  Finally, Section 504 liability may lie when a Defendants' policies have a "disparate impact" on individuals with disabilities. *See F.C.*, 2016 WL 8716232; *C.D. v. New York City Dept. of Educ.*, 2009 WL 400382 (S.D.N.Y. Feb. 11, 2009) (finding that children whose

disabilities are so severe that they cannot attend public schools are entitled to free lunch even if the private school in which they are placed does not participate in the free lunch program).

Plaintiffs have adequately alleged policies and practices sufficient to satisfy the pleading standards at this time. City Defendants "systemically deny foster children with severe, chronic psychological and psychiatric conditions access to a FAPE." SAC ¶ 147. Further, despite the mental health needs of children in foster care who are abused/neglected and experience trauma, "Defendants do not generally offer the evidence-based and appropriate therapeutic and academic services that are required under the IDEA, such as evidence-based interventions, access to tutoring, and/or appropriate day and residential settings." SAC ¶ 148.  Further, Plaintiffs allege that City Defendants "do not have adequate policies, procedures, resources and/or services to develop legally sufficient IEPs and placements for foster children who have severe psychological and/or psychiatric disorders, including PTSD, who require intensive behavioral and psychological interventions." Further, Plaintiffs allege that while the IDEA mandates that the DOE affords children with IEPs IEP-based and individualized FAPE in the home, "the DOE "does not have programs or services for children like D.S., with psychiatric and/or psychological conditions and exposure to abuse and trauma that prevent them from engaging in educational activities and/or cooperating with education." Plaintiffs also allege that Defendants "do not operate programs for children like D.S. who were sexually abused and/or exposed to sexual abuse." SAC ¶ 152. Further, DOE Defendants "do not conduct medical evaluations" required by the IDEA. *Accor*d, 34 C.F.R. § 300.34(a), (b)(5); SAC ¶ 153.  K.S. also alleged that the "City, ACS, and DOE Defendants do not effectively collaborate and/or coordinate to ensure a FAPE for children in foster care" (as mandated by, *inter*

*alia*, 20 U.S.C. 1412(a)(12))[6] and, as a result, "students like D.S., with severe psychiatric disabilities, school refusal, and PTSD are simply left to languish." SAC at ¶¶ 156-57.  K.S. also alleged systemic violation of the surrogate parent policies and procedures. SAC at ¶¶ 366, 538-39, 566, 585, 633, 851.

K.S. also alleged that Defendants lack*, inter alia*, policies, procedures and practices to facilitate the "appropriate placement of a child, like D.S., in the intensive treatment that he required at an early age to address the impact of his abuse and neglect and trauma." SAC at ¶ 154. Moreover, once Defendants determined that D.S. required a residential placement, but lacked a placement for D.S., the DOE had no services and/or supports to for children with severe behavioral and psychiatric needs who are waiting for placement. SAC at ¶¶ 148-52, 739-47, 761-63, 766.

Plaintiffs have adequately plead Section 504 violations relative to the following category of Defendants do not offer any of the following services on an IEP: cognitive behavioral therapy ("CBT"), dialectical behavior therapy ("DBT"), evidence-based trauma interventions, behavior therapy, family counseling, social work services, or tutoring. SAC at ¶ 158.  In addition, Plaintiffs allege that all Defendants fail to ensure that their staff, and agents are sufficiently familiar with special education laws and rights to ensure the provision of a FAPE for foster children SAC at ¶ 159.  Plaintiffs also alleged that while D.S. attended the New York City Children's Center ("NYCCC"), the program did not offer comparable services and resources that typically developing students receive, does not employ and/or assign adequately trained staff, did not ensure an appropriate, violence-free environment, and grouped children inappropriately, allowing children who were younger and exposed to trauma access to older

---

[6] *See also Non-Regulatory Guidance: Ensuring Educational Stability for Children in Foster Care*, U.S. Department of Education and U.S. Department of Health and Human Services, (June 23, 2016), published at https://www2.ed.gov/policy/elsec/leg/essa/edhhsfostercarenonregulatorguide.pdf (last visited August 14, 2023).

children with emotional, behavioral, and psychiatric issues. SAC at ¶ 160.

**C. K.S. is in the Zone of Interest and Has Stated a Claim under Section 504**

K.S., as D.S.'s parent, who has and continues to suffer financial harm due to the Defendants' conduct in the form of expenses for services, tuition, transportation and hospital stays (due to the absence of placements offered by the DOE), as well as legal fees and expenses, counseling and therapy, has "associational standing" to raise Section 504 claims. *Accord Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009). In *Loeffler*, the Second Circuit held that "non-disabled parties bringing associational discrimination claims need only prove [that they suffered] an independent injury causally related to the denial of federally required services to the disabled persons with whom the non-disabled plaintiffs are associated." *Id.* at 279-80. The Court held that a hospital's failure to afford a deaf father with a sign language interpreter harmed the father's children, as it caused them to become interpreters for their father, which, among other things, caused them to miss school. *Id.* The Second Circuit confirmed that the injury suffered by the "'person aggrieved" by conduct did not need to be "'exclu[sion] from the participation in, ... deni[al of] the benefits of, or ... subject[ion] to discrimination under any program or activity receiving Federal financial assistance.'" *Id.* (*quoting* 29 U.S.C. § 794(a).)

The Second Circuit also ruled that the "person aggrieved" has to establish "an injury causally related to, but separate and distinct from, a disabled person's injury under the statute." *Id.* at 280. In *Doe v. Westport Bd. of Educ.*, 2020 WL 6382639, at *1-2 (D. Conn. Oct. 30, 2020), the Court applied *Loeffler* in a similar situation at bar, where the parent incurred expenses (tuition and other) based on alleged discrimination by a district against a disabled child with respect to a deprivation of FAPE. Here, K.S. alleges the adequate independent injury that is plainly causally related to the injury to D.S.: K.S. has incurred significant unreimbursed expenses

due to the deprivation of FAPE, even after she won relief that mandated the DOE to pay her. SAC ¶¶ at 811, 892. As in *Westport*, K.S.'s allegation of "a pecuniary injury arising out of the Defendant's alleged violation of Section 504 with respect to [her disabled child]" is sufficient "[u]nder *Loeffler* . . . [for] standing to pursue these claims." 2020 WL 6382639, at *2.

## V.    PLAINTIFFS' NEW YORK STATE and CONSTITUTIONAL CLAIMS

The Motion seeks to dismiss Count X claims with respect to the DOE only, and thus the Court should not consider dismissal of any Count X claims with respect to any other City Defendants.[7] Further, if the Court does dismiss the Count X claims against the DOE, the Court should dismiss them without prejudice, as D.S. is a minor and K.S. and D.S. still have time to seek to file an application seeking a late notice of claim.

### A.    Claims Under the New York State Constitution

The Court should reject the DOE's argument that the exemption for K.S. and D.S. to file a notice of claim about the events that transpired while D.S. was in foster care is limited only to cases involving sexual assault.  MTD at 22.  N.Y. Gen. Mun. L. § 50-e (8) is a general exemption that applies to the entire section of Gen. Mun. L. § 50-e.  In addition to an exemption for sexual assault claims in subsection (b), Subsection 8 also states: "Inapplicability of section. (a) This section shall not apply to claims . . . *against public corporations by their own infant wards." (emphasis added).*  The exemption applies to all claims filed by a foster child for "any case founded upon tort." *Tylena M. v. Heartshare Children's Services,* 390 F.Supp.2d 296 (S.D.N.Y. 2005)(*citing* to N.Y. Gen. Mun. L. § 50-e (8)).

DOE is an agency of Defendant New York City. *Accord Matson v. Board of Educ. of City School Dist. of New York*, 631 F.3d 57 (2d Cir. 2011). A school district is considered to be a public

---

[7] Defendants again refer to "Plaintiff K.S." but without clarification, we have to presume that Defendants are seeking to dismiss claims brought by K.S. individually, as well as on behalf of D.S. MTD at 21-22.

corporation. *See* N.Y. Const. art. X, § 5 (identifying school districts as "public corporation[s]"); N.Y. Educ. Law § 1701 (identifying boards of education as "bod[ies] corporate"). Further, while the City Defendants have lumped both the Board of Education and the Department of Education under the general Defendant "DOE" they are distinct entities. See N.Y. Educ. Law §§ 2554, 2590-h, 2590-g, N.Y. Educ. Law § 4404.[8] *Cf., Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232 (2d Cir. 2006) (school districts and boards of education are distinct entities in New York). To the extent there is a conflict here, given that the DOE is a City agency, the exemption created for foster children in Section 50-e (8) should govern. Further, even if K.S.'s individual claims and/or D.S.'s claim claims are dismissed for failure to state a claim, they should not be dismissed against the Chancellor as he is not one of the enumerated individuals set forth in Education Law § 3818.

### B.    Claims Under the New York State Education Law That Are Incorporated by Reference into the IDEA

It is blackletter law that there is no notice of claim requirement for federal claims. *Johnson v. Rockland Cnty. BOCES*, No. 21-CV-3375, 2022 WL 4538452 (S.D.N.Y. Sept. 28, 2022).

Thus, to the extent Plaintiffs have raised claims under New York State Education law relating to special education for D.S. that either implement or exceed the federal standard required by the IDEA, those statutes are deemed to be incorporated by reference into the IDEA and enforceable as federal rights, and thus not subject to any notice of claim requirement. The IDEA specifies that a "free appropriate public education" must "meet the standards of the State educational agency, 20 U.S.C. § 1401(9). *See also Bd. of Educ. of Hendrick Hudson Centr. School Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176 (1982). The IDEA incorporates by reference

---

[8] *See* Board By-Laws published at https://www.schools.nyc.gov/about-us/leadership/panel-for-education-policy/pep-bylaws, which reflect the Panel for Educational Policy (i.e. the Board), created the DOE.

state standards, be they substantive or procedural, that exceed the federal basic floor of meaningful, beneficial educational opportunity." *Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773 (1st Cir. 1984), *aff'd* 471 U.S. 359 (1985). "Thus, a district court's inquiry must include a determination whether the state substantive standard exceeds the protection and services required by the federal Act. If it does, the state standard will operate to determine what an appropriate education requires for a particular child in a given state." *Id. See Mrs. C. v. Wheaton*, 916 F.2d 69 (2d Cir. 1990) (stating that the IDEA "incorporates state substantive standards as the governing federal rule only if they are consistent with, and at least as exacting as," the IDEA's provisions). *See also LIH ex rel. LH v. New York City Bd. of Educ.*, 103 F. Supp. 2d 658, 666-67 (E.D.N.Y. 2000) (holding that because state regulations incorporated into the DOE's suspension regulation were "more protective of students with disabilities than IDEA," the IDEA required the district to "meet these heightened procedural protections"); *Bay Shore Union Free School Dist. v. Kain*, 485 F.3d 730 (2d Cir. 2007) ("assuming that IDEA incorporates" Section 3602-c, making it enforceable as a federal right under the IDEA).

New York State has enacted educational statutes and the New York State Commissioner of Education has promulgated regulations which are designed to implement the IDEA as required by the act. 20 U.S.C. § 1415(a). *See* N.Y. Educ. Law §§ 4401, 4404, 4410, 8 N.Y.C.R.R. §§200, 200-1, 200.22. These laws and regulations mostly mirror the IDEA; as such, the Court need not address these duplicative provisions as federal law governs. However, some of the statutes and regulations adopted by New York exceed the federal floor or are adopted for the purpose of implementing the Act; to the extent these provisions are substantive and do not conflict with the IDEA, they are enforceable as federal rights. See *LIH ex rel. LH v. New York City Bd. of Educ.*, 103 F. Supp. 2d 658, 666-67 (*citations omitted*). Those include, among other things: (a) the

requirement for the DOE to have conducted a functional behavior assessment and developed a behavior intervention plan for D.S. as part of the evaluation process (8 N.Y.C.R.R. §§ 200.1(r), 200.1(mmm), 200.22(a)-(b), 200.4(b)(1), 201.2(a), 201.3); and (b) an articulation of specific minimum evaluations and reevaluations that should have been conducted in New York (8 N.Y.C.R.R. § 200.4(b)(1). Thus, claims raised by Plaintiff under Sections 4401, 4404 and 4410 of New York State Education law, as well as the Commissioner's Regulations concerning special education, published at 8 N.Y.C.R.R. §§ 200 *et seq*. are enforceable as federal rights under the IDEA and no notice of claim is required.

Further, applying a notice of claim requirement to any special education claim is contrary to the IDEA's requirements and conflicts with the federal and state sudatory scheme. Woven throughout the IDEA is a set of mandated due process rights, notices, and procedural safeguards that are designed to facilitate parental participation and protect the rights of students and parents.[9] The IDEA and New York State law also contain due process procedures for redressing disputes between that include mediation, due process impartial hearings and appeals and eventually the right to seek relief in court.[10] The IDEA requires that the DOE Defendants implement due process procedures "in accordance with" the IDEA (20 U.S.C § 1415(a)) and notify parents of the procedures regularly. 20 U.S.C § 1415(d). Plaintiffs are not aware of a single case requiring a notice of claim for a special education claim, likely because, as discussed below, those claims are grounded in equity.

---

[9] *See, e.g.,* 20 U.S.C. §§ 1415(b)(1), (b)(3)(B), (d)(2)(E); 34 C.F.R. §§ 300.9(a), 300.322(e); 8 N.Y.C.R.R. § 200.5(d)).
[10] *See* 20 U.S.C. § 1415(d)(2)(E); N.Y. Educ. Law § 4404, 8 N.Y.C.R.R. § 200.6.

**C.     N.Y. Educ. Law Section 3813 Does Not Apply to Claims Grounded in Equity and/or that Relate to the Public Interest**

A notice of claim is not required when, as here, a plaintiff seeks equitable relief.  *Caviezel v. Great Neck Public Schools*, 701 F.Supp.2d 414 (E.D.N.Y. 2010); *Matter of Sheil v Melucci, No. 2011-05990*, 20552/10, 941 N.Y.S.2d 265, 2012 N.Y. Slip Op. 02505, 2012 WL 1109314 (N.Y.A.D. 2 Dept., Apr. 03, 2012).  While plaintiffs seek damages relating to other claims in the SAC, they do not seek damages with respect to violation of and/or enforcement of D.S.'s rights under Article 89 of the Education Law, which governs the provision of special education services; damages are not available for violations of New York State Education Law, Article 89.  The relief that Plaintiffs seek relative to the IDEA (and any state law incorporated therein) is equitable in nature, as damages are not available under the IDEA (except insofar as a plaintiff asserts those rights under Section 1983); *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142 (U.S. 2023); *Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240 (2d. Cir.  2008).  That equitable relief is outlined in the SAC's prayer for relief.  Plaintiffs seek an order directing the DOE to adopt and promulgate appropriate policies and procedures, assume their legal responsibility for D.S.'s education going forward (without requiring K.S. to constantly pay for services and seek delayed reimbursement), to continue to fund residential placements (under their legal obligations to provide a FAPE) and create appropriate residential programs in accordance with the LRE mandate (in or close to New York City) and ensure services for children who have experienced trauma and abuse.  *See* SAC, Prayer for Relief at ii-vii, ix and xi; see also SAC at ¶¶ 23, 148, 151, 154, 155, 158, 795, 796, 798.  Similarly, as here, a notice of claim is not required when a plaintiff seeks to vindicate a public interest rather than a private right. *Polardo v. Adelberg*, 2023 WL 2664612 (S.D.N.Y. Mar. 28, 2023).

**D.     Claims Concerning D.S.'s Property Right in Education Under Section 3202**

N.Y. Educ. Law § 3202 provides, *inter alia*, that "[a] person over five and under twenty-one years of age who has not received a high school diploma is entitled to attend the public schools maintained in the district in which such person resides without the payment of tuition."  Courts have held that Section 3202 establishes a property interest protected by the Fourteenth Amendment of the U.S. Constitution.  *See e.g., Moskowitz v. Great Neck Union Free School Dist.*, 2021 WL 4268138 (E.D.N.Y. Aug. 4, 2021) (citing *Handberry v. Thompson*, 446 F.3d 335, 353 (2d Cir. 2006) and *Saggio v. Sprady*, 475 F.Supp.2d 203, 210 (E.D.N.Y. 2007)).  To the extent Plaintiff asserts claims under Section 3202 of the Education law, those claims are limited to the claim that D.S. had a property interest in education as created by Section 3202 that was protected by the Due Process Clause of the U.S. Constitution (a federal claim) and should not be dismissed for failure to file a notice of claim, especially during the time he was a ward of the state. N.Y. Gen. Mun. L. § 50-e (8). He alleges, *inter alia,* deprivation of his rights and access to due process because, as set forth above, while he was in foster care, Defendants (City, ACS and DOE Defendants), never arranged for a surrogate parent to participate in decision making, receive records and file for due process. SAC ¶¶ 31, 366, 538, 539, 566, 585, 633, 671, 672, 851, 860, 886, 887.  The lack of an assigned IDEA decision-maker utterly deprived D.S. of his access to due process under the IDEA until he entered foster care with K.S.

**E.     Claims Under the New York State Special Education Law That Are Not Incorporated by Reference into the IDEA**

Many courts have held that certain filings on behalf of plaintiffs are sufficient to satisfy the notice of claim statute or justify an excusal of the strict notice of claim requirement. For example, many courts have found that a plaintiffs' filing of an EEOC charge or a complaint with the New York State Division of Human Rights is sufficient to satisfy a notice of claim requirement. *Berrie*

*v. Bd. of Educ. of Port Chester-Rye Union Free School Dist.*, 2017 WL 2374363 (S.D.N.Y. 2017). The Court should find that the DOE was on notice at the earliest point it could have been once D.S. entered care with K.S. and she started to litigate administrative hearings and Family Court cases to obtain records and that the five hearings that were held concerning D.S.'s special education services were more than sufficient to place the DOE on notice of the claims. SAC ¶¶ 671, 679 700, 704, 709, 757, 758.

To the extent that the Court finds that any of the claims of either Plaintiff K.S. or K.S. on behalf of D.S. should be dismissed for failure to file a notice of claim, those claims should not be dismissed with prejudice. Rather, since D.S. is a minor, the Court should afford him the opportunity to seek permission for a late notice of claim (to the extent such notice is required given that the relief he seeks is equitable in nature).

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court issue an Order denying Defendants' motion to dismiss the SAC.

Date: August 14, 2023

Respectfully submitted,
THE LAW OFFICE OF ELISA
HYMAN, P.C.

/s/

By_____
Elisa Hyman, Esq.
Erin O'Connor, Esq. Of Counsel
Nicolas Apter-Vidler, Esq.
1115 Broadway, 12th Floor
New York, NY 10010
646-572-9064
elisahyman@gmail.com
*Attorneys for the Plaintiffs*