# THE LAW OFFICE OF ELISA HYMAN, P.C.

January 17, 2023

*By ECF*
The Honorable Paul A. Crotty
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *K.S. o.b.o. D.S. v. City of New York, et al./21-cv-4649 (PAC)*

Dear Judge Crotty:

  I represent the Plaintiffs in the above-referenced case. I write to respectfully advise the Court of Plaintiffs' intention to file an application for a temporary restraining order ("TRO") and preliminary injunction ("PI") to implement a recent and extremely time-sensitive Impartial Hearing Officer ("IHO") Interim Order concerning D.S.'s educational placement. A copy of the IHO's Interim Order, with identifying information for K.S. and D.S. redacted, is attached to this letter for reference.

  While a pre-motion letter and conference is not required under Your Honor's Individual Practices prior to the filing of an application for a TRO or PI, and, given the timing, Plaintiffs may not be able to wait until a conference before filing the full application, Plaintiffs are hopeful that this letter and request for an emergency conference with Your Honor might potentially eliminate the need for formal motion practice or at least narrow the focus of such a motion.

  Plaintiffs have previously provided to the Court significant background information about D.S. and thus only summarize it here. Plaintiff K.S. is the adoptive parent of D.S., a 15-year-old boy with a range of disabilities, including Post Traumatic Stress Disorder. D.S. was in the care of Defendant New York City Administration for Children's Services ("ACS") and foster care agencies overseen by ACS (Defendants St. Vincent's Services, Inc., Heartshare Human Services of New York, Heartshare St. Vincent's Service) from April 2009 through April 2018. In 2017, D.S. was placed in foster care with K.S., and she adopted him in 2018. D.S. was also receiving special education services through Defendant New York City Department of Education ("DOE") during most of the years in question. Plaintiffs raise various claims against Defendants, including, *inter alia*, that while in foster care D.S. suffered various injuries, including neglect of his physical, educational, and psychological needs, sexual and physical abuse, that Defendants failed to place him in appropriate foster homes and/or failed to supervise D.S.'s care, that his medical and other relevant history was kept from his caregivers, that procedures for appropriate special education decision-making were not put into place, and that he was denied appropriate special education services, as well as other claims. *See generally* Second Amended Complaint ("SAC"), ECF No. 64.

As Plaintiffs had advised the Court, since spring of 2020, D.S. had a significant regression, resulting in displays of severely maladaptive behaviors, aggression, suicidal ideations, and sexual acting out. As a result, he had multiple psychiatric hospitalizations, and was placed in three different residential settings, the most recent being a residential school in Massachusetts. Through administrative litigation, the DOE was funding this residential school, as they agreed he needed such a placement but were unable to find one for him.

In the residential school settings, D.S. had severe acting out behavior, including throwing his feces, playing with his feces, engaging in sexually inappropriate behavior, as well as aggressive behavior and suicidal ideations. Although the Massachusetts residential school had accepted D.S. with knowledge of these behaviors and alleged that they could assist him in reducing the behaviors, that was not the case. The week of September 12, 2022, one of the staff persons at the program filed a police report and had D.S. arrested for allegedly throwing his feces. As a result, D.S. was placed in the Department of Youth Services ("DYS") in Massachusetts. He was then released under the condition that he refrain from interacting with the complainant staff person in a negative manner. He was unable to manage this and was returned to DYS pre-trial detention. In the meantime, the residential school advised K.S. that D.S.'s seat could not be held while he was in DYS unless the DOE continued to pay. The DOE has not paid the school since June 2022, although it is not clear why, since D.S. was there until he was arrested. D.S. was again released to the residential placement, but was returned to DYS due to his behavior.

The family court judge has advised that he will not return D.S. to the program in Massachusetts, but will agree to release D.S. to a different program if one is found, provided the funding is in place and information is presented that will satisfy the Court. However, unless an alternative program is found, the family court judge will hold a trial and remand D.S. after sentencing to juvenile placement in Massachusetts until he turns 18 years old.

In November 2022, D.S. made suicidal and homicidal statements, and was placed in the hospital for four days. K.S. notified the DOE of the situation, but she was not contacted by the DOE, and the DOE did not offer D.S. a placement.

K.S., with the help of an educational consultant, located the J. Flowers Health Institute in Texas ("Flowers"), an intensive, muti-disciplinary residential stabilization program that will offer a 2:1 ratio initially. Flowers provided a letter of acceptance for K.S., but requires payment up front for one month's stay, continuing with up-front payments for each additional month that D.S. remains placed there. The program is not a long-term placement but has the goal of stabilizing and developing plans for children like D.S., with the idea that he could transition to a less restrictive setting. Before being admitted to Flowers, D.S. was rejected from approximately 100 other programs, including all programs on the New York State approved list.

On December 20, 2022, in D.S.'s pending administrative impartial hearing ("IH") for the 2022-2023 school year, IH Case No. 210063, undersigned counsel moved the impartial hearing officer ("IHO") for an emergency interim order granting funding for D.S.'s immediate placement at Flowers, as well as funding for D.S.'s transportation to Flowers or any other placement and home visits and visitation by K.S.

2

At the hearing, the National Director of Clinical Outreach at Flowers testified that it is a one-on-one care facility, but due to the acuity of D.S.'s condition, he would be placed in two-on-one care for evaluation, stabilization, and intensive trauma treatment and receive one-on-one academics with specialists who work as a team.

Counsel for the DOE represented in the hearing that the DOE did not object to the emergency request to place D.S. at Flowers or to an IHO order placing D.S. there.  Further, the DOE did not dispute the following factual allegations: (a) D.S. requires a residential placement but the DOE has not been able to locate one; (b) D.S. has been rejected from approximately 100 residential settings; (c) D.S. cannot return to the Massachusetts residential school, is currently in juvenile detention, and is at risk of incarceration until the age of 18 if a residential setting is not located; (d) K.S. cannot afford to pay Flowers and subsequently seek reimbursement; (e) D.S.'s pendency placement included the residential program in Massachusetts or a different residential program if that one was no longer available.

In the IHO Interim Order, dated January 5, 2023, (Ex. A), among other things, the IHO directed the DOE to immediately fund D.S.'s transfer to and attendance at Flowers, with the initial advance payment made no later than January 12, 2023, and ongoing payments for D.S.'s placement at Flowers made at least 15 business days prior to the last day on which the prior period's payment will expire.*Id.* The IHO also directed the DOE to reimburse the cost of transporting D.S. to Flowers.  The IHO ordered the DOE to continue to fund Flowers or another appropriate private residential placement until all issues raised in the pending due process complaint before the IHO are resolved by final order.

The DOE was unable to implement the IHO Interim Order on time. Very late in the evening on January 12, 2023, after the order had not been implemented, undersigned counsel wrote to Corporation Counsel, attorneys for the DOE in this action and requested that the DOE issue a check to Flowers for the first month by early this week.  Plaintiffs' counsel indicated that we would otherwise be filing a motion for a TRO and PI.

Late afternoon on Friday, Corporation Counsel contacted Plaintiffs' counsel and advised that she would not be likely to respond until Tuesday afternoon due to the long weekend. Plaintiffs' counsel learned that the DOE was allegedly working on the matter over the weekend after being alerted to it from a senior DOE official.  This morning, Plaintiffs' counsel had advised that we would write to the Court by noon today if we did not receive any word; Defendants requested the end of the day to respond. At the end of the day, however, Plaintiffs received an email from Defendants' counsel indicating that the DOE did not have any further information about the status. Given the timing, Plaintiffs determined that we should alert the Court as soon as possible that it appears that a TRO/PI is imminent.

The Court should order the DOE to immediately fund Flowers as Plaintiffs have no other avenue of relief and without the Court's intervention, D.S. will suffer irreparable harm.

IHOs lack enforcement power over their own orders. *See A.R. ex rel. R.V. v. New York City Dep't. of Educ.*, 407 F.3d 65, 76 (2d Cir. 2005).  Orders are enforceable under 42 U.S.C. § 1983 and are not subject to further administrative exhaustion.  *See, e.g., M.H. v. New York City Dep't of Educ.*, No. 20-cv-1923 (LJL), 2021 WL 4804031, at *31 (S.D.N.Y. Oct. 13, 2021) (noting the

3

enforceability of IHO decisions under § 1983); *R.B. ex rel. L.B. v. Bd. of Educ. of City of New York*, 99 F. Supp. 2d 411, 415-16 (S.D.N.Y. 2000) (holding that the parent was not required to further exhaust administrative proceedings after prevailing at the hearing). Further, K.S. is not required to exhaust claims concerning D.S.'s stay-put placement pursuant to 20 U.S.C. § 1415(j). *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199-200 (2d Cir. 2002); *see also Ventura De Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020); *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 455 (2d Cir. 2015); *M.G. v. New York City Dep't of Educ.*, 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013). Interim orders that the DOE does not object to can change pendency. *See* 20 U.S.C. § 1415(j) (providing that the school district and parent may "otherwise agree" to a pendency placement different than the student's "then-current educational placement"); *M.G.*, 982 F. Supp. 2d at 247-49 (finding that the student's pendency placement included services implemented by the DOE pursuant to an IHO interim order). To the extent that K.S. is seeking to enforce the agreed-upon change in stay-put placement, she is entitled to an automatic injunction without regard to the traditional factors." *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982).

However, even if the Court does not view this as a pendency case and determines that the factors for a TRO and injunctive relief must be met, Plaintiffs can satisfy the factors and even meets the standard for a mandatory injunction.

Plaintiffs will be able to make a strong showing of irreparable harm. Deprivation of special education services constitutes irreparable harm for any child, but more so for D.S.[1] Further, he faces irreparable harm based on his current and risk of future deprivation of liberty due to unnecessary incarceration. *Sajous v. Decker*, 2018 WL 2357266 (S.D.N.Y. May 23, 2018) (citation omitted). Flowers will only hold D.S.'s seat until March 30, 2023 and the program needs a few days to prepare for D.S.'s arrival. If this seat at Flowers is lost, D.S. faces incarceration until he is eighteen years old. Plaintiffs will be able to either establish (a) a likelihood of success on the merits and/or serious questions for litigation; and (b) a clear of substantial likelihood of success on the merits. *Accord New York ex rel. Schneiderman v. Actavis PLC,* 787 F.3d 638 (2d Cir. 2015) (setting out the standard for a mandatory injunction); *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348–49 (2d Cir. 2003) (describing the standard for a prescriptive preliminary injunction). The DOE (a) agrees that D.S. requires residential placement; (b) has been unable to find a placement for two years; (c) does not object to Flowers being funded; (d) has not yet paid the prior school tuition (despite that being owed), a prior tutoring program or reimbursed K.S. for more than one year. Finally, there can be little question that an order is in the public interest. A similar order has recently been granted in *A.H. v. New York City Department of Education*, 22-cv-9861 (LGS) (S.D.N.Y. November 23, 2023) (granting funding for an alternative residential placement when the original residential program under pendency became unavailable).

In light of the above, Plaintiffs are entitled to an order from the Court directing immediate implementation of the Interim Order. Although given the time frame at this point, Plaintiffs have no choice but to continue to prepare formal motion papers, we hope that the Court may have time

---

[1] *See e.g. Honig v. Doe, 484 U.S. 305, 323-324, (1988)*; *M.G.,* 982 F.Supp.2d at 240; *L.I.H. v. Bd. of Educ.*, 103 F. Supp. 2d 658 (E.D.N.Y. 2000); *A.T. v. New York State Educ. Dep't*, No. 98–CV–4166 (JG), 1998 WL 765371, at *10 (E.D.N.Y. Aug.4, 1998).

4

for an emergency settlement/pre-motion conference which might obviate the need for formal motion practice to conserve the Court's resources, as well as those of the parties. At this point, even if the Court does not have time to hold a conference with the parties prior to the filing of any formal TRO/PI, this letter provides background for that upcoming application.

                                              Respectfully submitted,

                                              /s/

                                              _____
                                              Elisa Hyman, Esq.
                                              Counsel for Plaintiffs

cc: Attorneys of Record (via ECF)