

10/15/24

To Whom It May Concern:

I am writing to express my professional opinion regarding the potential cross-examination of D▇▇, a 17-year-old male client with whom my team and I worked with from February 2, 2023, to April 25, 2023 at J.Flowers Health Institute. During this period, I met with D▇▇ on average three times per week, often exceeding the allotted time as needed. Da▇▇ presents with a complex clinical picture rooted in intergenerational trauma. D▇▇'s history reveals significant adverse experiences that have profoundly influenced his psychological development. These early life stressors have likely contributed to the formation of maladaptive coping mechanisms and potentially altered neurobiological responses. As a psychotherapist with experience in treating adolescents, young adults, and adults with attachment trauma, complex trauma, and Post Traumatic Stress Disorder, I strongly advise against placing this young individual in a position where he would be subject to multiple hours or days of uninterrupted questions from strangers about his traumatic past without any safeguards. My professional assessment indicates that such an experience would be severely detrimental to D▇▇'s mental health and overall well-being.

My concerns are as follows:

1.Re-traumatization: Cross-examination could trigger severe emotional distress, potentially re-activating traumatic memories and exacerbating existing psychological symptoms. This could undo months of therapeutic progress and cause significant psychological harm.

2. Developmental vulnerability: At 17, Da▇▇'s brain is still developing, particularly in areas responsible for emotional regulation and decision-making. Exposure to a high-stress courtroom environment could have lasting negative impacts on his psychological development, potentially altering the course of his mental health trajectory.

3. Long-term psychological consequences: The experience of being cross-examined could lead to increased anxiety, depression, and post-traumatic stress symptoms. This could not only derail ongoing therapeutic progress but also significantly impair his overall well-being and future functioning.

4. Ethical considerations: Subjecting a vulnerable youth to a potentially harmful situation raises significant ethical concerns regarding the duty of care owed to youth involved in legal proceedings. As healthcare professionals, we are bound to prioritize the well-being of our patients/clients.

5. Risk of decompensation: Given D▇▇▇▇'s profound trauma history, there is a substantial risk that cross-examination could lead to a decompensation of his mental and emotional health. This could result in acute psychological distress, potentially requiring intensive intervention.

Given these factors, I strongly urge consideration for safe-guards or alternative methods to obtain the information needed that do not jeopardize D███'s psychological well-being. I strongly urge the consideration of alternative methods for obtaining necessary information that do not jeopardize D███ psychological well-being. Protecting his mental health should be of paramount importance in this situation.

Sincerely,
Arti Patel, LCSW
Clinical Director/Primary Therapist
J.Flowers Health Institute
arti@jflowershealth.com

