STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――― x
:
K.S. on Behalf of Herself and Her Minor :
Child, D.S., :  DECLARATION OF GABRIELA
: DEAMBROSIO, MA.ED
Plaintiffs, :
:
vs. :
:
:
: Civ. No. 21-cv-4649 (JSR)
:
THE CITY OF NEW YORK, *et al.,* :
:
Defendants. :
:
:
:
:
―――――――――――――――――――――――― x
:
:
K.S., individually and on behalf of her minor :
child D.S., :
:
Plaintiff :
: Civ. No. 24-cv-03390 (JSR)
-against- :
:
:
:
:
:
NEW YORK CITY DEPARTMENT OF :
EDUCATION, , *et al.,* :
:
Defendants. :
―――――――――――――――――――――――― x

GABRIELA DEAMBROSIO, MA.ED. DECLARES UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746 THAT THE FOLLOWING IS TRUE AND CORRECT:

1. I am the principal and owner of EduSphere Consulting, an educational consulting firm that assists families to find residential educational placements and private schools for children with disabilities.

2. I have a master's degree in education and numerous years of experience working on finding educational placements for families whose children require residential settings.

3. I am summarizing the process I undertook to secure a therapeutic residential placement for D.S. in 2022 and part of 2023, when the New York City Department of Education finally secured a placement for D.S. in the Judge Rotenberg Center in Massachusetts in or around July 2023 (https://judgerc.org/).

4. D.S.'s mother, K.S., hired me to find a therapeutic program for his acute mental health needs in 2022.

5. It was my understanding that D.S. had been recommended for a residential placement by the New York City Department of Education ("DOE") since August of 2020, but the DOE could not locate a placement, leaving K.S. on her own to do so, following D.S.'s decompensation in or around spring of 2020.

6. K.S. had previously hired an Educational Consulting group who had located two placements for him and traveled to over 30 programs specifically for him without finding successful, stable admission.

7. In 2020, K.S. was attending the Kidspeace residential center through K.S.'s insurance.

8. In or around March of 2021, D.S. moved to the Kaizen residential program in Utah, specializing in sexual disorders.

9. He was expelled from Kaizen, then he returned home briefly, and entered the hospital in New York City.

10. As of December 2021, D.S. he been moved to the Stetson School (a residential placement) in Massachusetts.

11. In August 2022, D.S. had been attending the Stetson School (a residential placement) in Massachusetts where, following a dysregulating incident, he was sent to Juvenile Detention.

12. The detention center was adamant that D.S. required therapeutic residential placement which is where I began my search with three other Educational Consultants.

13. Over the course of the year that I worked with K.S. and her husband, my colleagues and I applied to over 100 programs for D.S.

14. Of the 100 programs that I applied to, he was only admitted into four:

   a. J. Flowers Health Institute in TX where D.S. was expelled after 2 months. (https://jflowershealth.com/).

   b. D.S. was accepted and attended Family First Adolescent Services in FL where he was expelled after 4 days following a serious incident of dysregulation. (https://familyfirstas.com/).

   c. Coral Reef Academy in Western Samoa, an inappropriate placement as the island does not have a behavioral health hospital (https://coralreefacademy.com/).

   d. Judge Rotenberg Center in MA (https://judgerc.org/).

15. Therapeutic Programs were unwilling to admit him due to his history of enuresis and throwing feces as a trauma response.

16. Programs that did accept him, such as J. Flowers, required two to one staffing to keep him safe and regulated.

17. The cost of having two trained professionals with one student is unaffordable to the average family, on top of the costs of keeping him regulated and educated in a residential setting since he couldn't maintain safety at home.

18. Unfortunately, D.S.' unsuccessful history at therapeutic programs made it even more difficult to convince new programs that he would be successful there. He had already attended two residential programs in one year before enrolling in Stetson: Kidpeace in Pennsylvania and Kaizen, in Utah.

19. Moving around derailed D.S. thus creating school-based trauma and maladaptive coping skills within a classroom setting.

20. Since D.S. was unable to regulate and maintain safety at any given school or program, his progress was significantly stymied.

21. D.S.'s academic needs combined with his acute therapeutic needs made him a rule-out for even the top hospital-like treatment centers in the country such as Huntsman CAT Program in Utah and Rogers in Wisconsin, renowned for taking the most acute mental health disorders.

22. Searching for appropriate placement with a safe milieu and trained staff that could support D.S.'s needs took a team of consultants and still fell short.

23. We spent countless hours applying and then reapplying when the hospital censuses changed, advocating for a place for D.S.

24. I cannot overemphasize how limited his options are and should his current placement be put at risk, K.S. would be in the same position as last year.

25. I have traveled to over 250 programs and inquired into at least an additional 300 over the last four years, always with an ear to the ground for D.S., and unfortunately his options remain the same.

Executed in New York, New York on October 15, 2024

*[signature]*

Gabriela Deambrosio, MA.Ed.