# FREQUENTLY ASKED QUESTIONS AND ANSWERS
### for Family Court Legal Services Attorneys

Special Needs Advocacy for Parents and Professionals (SNAPP)©

## Children's Services Education Unit



**NYC Administration for Children's Services**

---

## Overview of CSEU

- CSEU is comprised of education advocates and attorneys.

- CSEU Services: we provide information and consultation services to Children's Services (ACS) staff, foster care agency staff, families and other individuals from the child welfare community who are having trouble accessing EI, pre-school or school-age special education services. We can also assist if the child is not in an appropriate program, be it special education or general education, and requires additional services or a change in educational placement.

## What is the CPSE and CSE?

- <u>CPSE</u> = Committee on Pre-School Special Education, provides services to pre-schoolers with developmental delays and disabilities ages 3 to 5

- <u>CSE</u> = Committee on Special Education, provides services to school-age children with developmental delays and disabilities ages 5 to 21

- Both the CPSE and the CSE are overseen by the NYS Education Department, within NYC it's the NYC Department of Education. Governed by Part B of IDEA.



7

## Consent

- Consent required for evaluations and again for implementation of services for EI, CPSE and CSE
- Appropriate party to consent must be identified
- Is a surrogate parent needed to provide informed consent?
- You can look the regulations up:
  **Part 69 Regulations of the NYS Dept of Health for EI can be found at:**
  http://www.health.state.ny.us/community/infants_children/early_intervention/finregs.pdf
  **Part 200 Regulations of the NYS Education Dept for CPSE and CSE can be found at:**
  http://www.vesid.nysed.gov/specialed/publications/lawsandregs/200contents.htm

 

4

## Consent for EI

- Who may consent for services and evaluations?
  - Parent
    - EI official must make "every effort to protect rights of parents" to make decisions about a child's receipt of EI services. If the parent's availability is limited by "life circumstances" (including commitment to an institution or child's placement in foster care), the EI system must "facilitate" participation if appropriate.
  - "Person in parental relationship"
    - Includes the child's legal guardian, custodian, person acting in place of the parent with whom the child lives & who is responsible for child's care; e.g. grandparent, step-parent (excludes foster parent)

9

## Consent for EI, cont.

- Who may consent for services and evaluations?
  - Surrogate Parent
    - Appointed by EI after "reasonable efforts" to discover whereabouts of parent.
    - EI shall determine the available of the parent & appt a surrogate in consultation with ACS.
    - <u>May not be an employee of Children's Services (ACS) or foster care agency</u>
    - May be the foster parent
    - Must have adequate skills & knowledge to represent the child
    - Should have an ongoing relationship with the child

10

5

NYC_010425

## Consent for CPSE and CSE

Who may consent to CPSE or CSE evaluations and services?
- A birth or adoptive parent
- A legal guardian
- A person acting in place of a birth or adoptive parent with whom the child resides (i.e. grandparent, stepparent, or other relative)
- A person in parental relationship (i.e. stepparent, legally appointed guardian, or custodian)
- The birth parent has the right to designate a specific person
- A surrogate parent appointed by the school district or a judge

11

## Consent for CPSE and CSE, cont.

**Who can not consent for CPSE or CSE?**
An employee of Children's Services (ACS) or a foster care agency can not sign consent for CPSE or CSE.

**When can a foster parent sign consent for CPSE or CSE?**
- Parental rights have been terminated (TPR) or surrendered
- Birth or adoptive parents are deceased
- May be appointed as surrogate by DOE if birth or adoptive parents whereabouts are unknown after reasonable efforts to locate
- A judge has appointed the foster parent to make educational decisions for the child



12

## Can a parent appoint someone to act on her/his behalf?

**EI:** The regulations specifically provide for parental appointment of a surrogate parent, and the parent is given a form for that purpose after the child is referred to EI.

**CPSE and CSE:** Under the General Obligations Law (Article 5, Title 15A), a parent may designate a specific "person in parental relation" to make educational decisions
- Must be in writing and must meet very specific requirements – see new SOPM
- Designation is temporary and can be revoked by parent
- May be useful for parents in residential programs, incarcerated parents



13



→ Don't FORGET!

There is **no** automatic change in a parent's right to make educational decisions when a child enters foster care **unless**:

1) termination of parental rights was completed; OR

2) parent surrendered his/her rights; OR

3) A judge has issued a specific order giving someone else the right to make educational decisions.



14

7

NYC_010427

# EARLY INTERVENTION AND SPECIAL EDUCATION CONSENT & SURROGACY REGULATIONS

## Early Intervention – Birth to 3

### EARLY INTERVENTION (EI) PROGRAM, BIRTH - 3 YEARS OLD

Who can consent for EI evaluations & services?
- Birth or adoptive parent
- Persons in "parental relationship" (i.e. legal guardian, custodian, grandparent, stepparent, excludes foster parent)
- Surrogate Parent, see below (in most cases, this will be the foster parent)

PLEASE NOTE: Neither ACS nor a foster care agency, nor any employee thereof, may consent.

When should a surrogate parent be appointed?
- When parental rights are terminated or surrendered
- When, after "reasonable efforts" by the EI official/ ACS designee/ foster care agency caseplanner, cannot discover the parents whereabouts
- For children in foster care, EI official/ ACS designee/ foster care agency caseplanner shall determine availability of parent & appoint a qualified surrogate parent when his/her parents are unavailable
- The surrogate parent may not be an employee of EI service provider, ACS or foster care agency (i.e. the surrogate may not be the foster care agency director, supervisor, or caseplanner)

Where are the state regulations governing consent and appointment of a surrogate parent in the EI program?
10 NYCRR §69-4.1(ag),(ah),(am), §69-4.16

## Special Education – 3 to 21

### COMMITTEE ON PRE-SCHOOL SPECIAL EDUCATION (CPSE), 3 – 5 YEARS OLD
### COMMITTEE ON SPECIAL EDUCATION (CSE), 5-21 YEARS OLD

Who can consent for CPSE/ CSE evaluations & services?
- Birth or adoptive parent
- Legally appointed guardian
- Person in parental relationship (i.e. stepparent, legally appointed guardian, custodian)
- Individual designated as a person in parental relation
- Person appointed to act as parent or make educational decisions by judicial decree/ order
- Surrogate parent appointed by the school district or a judge

When would a foster parent meet the definition of "parent" and be able to sign consent for CPSE/ CSE evaluations & services?
- **Parental rights have been terminated or surrendered**
- Both birth or adoptive parents are deceased
- Rights of parent/guardian to make educational decisions have been subrogated by a Judge (see last resort below)

When should a surrogate parent be appointed by the school district to sign consent for CPSE/ CSE evaluations & services?
- **Whereabouts of parent/ guardian unknown after reasonable efforts to locate**
- **No parent/guardian can be identified**
- Student is unaccompanied homeless youth
- Student is ward of state (i.e. group home) & has no parent or person in parental relationship who meets the definition of parent

Who can serve as a surrogate parent?
- **Foster parent may be appointed by the school district or a Judge**
- If there is no foster parent available, appointment may be from a list maintained by the school district

Exceptions to the above consent requirements:
1) **Initial Evaluation**: Consent is not required for initial evaluation if child is ward of state &, despite reasonable efforts, whereabouts are unknown, parental rights have been terminated, or right to make educational decisions has been subrogated
2) **Re-Evaluations**: Consent for reevaluation is not required if district can demonstrate record of reasonable measures to obtain consent & lack of response by parent

Last Resort - What to do when a parent is available but *unreasonably* withholds consent to CPSE/CSE evaluations & services?
1) **Due Process**: For school-aged students only, if parent refuses consent for initial evaluation or reevaluation, school district (in NYC, this is the CSE) may pursue due process, including Impartial Hearing, to get the evaluations completed. School district may not pursue due process if consent for services is refused after evaluation.
2) **Subrogate**: The rights of the parent to make educational decisions on behalf of the student may be subrogated by a judge in accordance with state law
3) **Outside Evaluations**: Evaluation and some therapies may be available through outside clinical providers. Please note that these are not equivalent to special education instructional and related services, but may meet the needs of some children and youth.

---

EI and special education regulations have been summarized and condensed.
Original EI regulations can be found at 10 NYCRR, Part 69, and are promulgated by the New York State Department of Health with authority from Article 25 of the Public Health Law.
Original special education regulations can be found at 8 NYCRR, Part 200, and are promulgated by the NYS Education Department with authority from Article 89 of the Education Law.

---

PREPARED FOR FCLS ATTORNEYS BY THE CHILDREN'S SERVICES EDUCATION UNIT
FOR MORE INFORMATION GO TO WWW.NYC.GOV/HTML/ACS/EDUCATION/INDEX.HTML

5/10/10

## Introduction

The attached OSC, Affirmation, Affidavit and Order are intended to provide sample papers for a motion to suspend a parent's right to make educational decisions and designate the foster parent to act as surrogate parent for the purposes of giving informed consent for special education evaluations and services. The issue arises when 1) a respondent parent retains parental rights; 2) there is reason to believe the child may have a disability making him/her eligible for special education services; and 3) the parent either refuses to engage in the process or unreasonably withholds consent for evaluation/services. The authority of the Family Court to provide this relief has not been explicitly established by statute or controlling case law. There are differing positions on whether this authority exists. We believe that it does, and that it should only be exercised in extraordinary cases. The attached Affirmation describes the legal basis for the motion, and, along with the attached case worker Affidavit, provides an example of the appropriate level of information on developmental issues and possible disability of the child, as well as on attempts to engage the birth parent in the process prior to making the motion.

This is a significant abridgement of a parent's rights, and the motion should not be made unless there is clear evidence that the evaluation for special education is in the child's best interest, and that the parent's refusal to provide consent is clearly unreasonable under the circumstances. It should also not be made unless it is clear that further attempts to engage the parent in the process will be futile, and will subject the child to harmful delay in receiving services. Obviously, the factual assertions will be different in each case, but a comparable level of detail should be provided.

## Preliminary Factual Considerations

The following are factual questions that should be resolved in determining whether a court-imposed substituted decision-maker should be considered:

- What is the reason for suspecting the child may have a disability? Is there a diagnosed condition? Are there assessments or evaluations indicating delay in academic, cognitive or social/emotional development?
- Has the agency obtained independent evaluations through Medicaid or the use of in-house evaluators? Is there any reason for not doing so before considering this motion?
- What has been the substance of conversations between agency staff and the parent regarding the recommendation that the child be evaluated? Did the parent state a reason for refusing consent? Was there an explanation of the rights the parent would continue to enjoy after evaluation? What if any efforts have been made to ensure that the parent understands the range of different program options in the event the child is found eligible for special education, including options that would allow the child to remain in the general education environment?
- Have there been attempts to address the parent's concerns by, for example, offering to arrange a meeting for the parent at the school, and/or linking the parent to independent sources of information and advice?
- If the child is in school, what is the involvement of school personnel in the referral? Is the school supporting the referral? What "pre-referral intervention" strategies (e.g., Academic Intervention Services, behavior plan, etc.) have been attempted in school, and what have the results been?

1

NYC_010438

- Are there factors indicating that the parent is incapable of understanding and processing information about the child's development? Does the parent have any identified psychiatric or developmental disability[*]? Has a *guardian ad litem* been appointed for the parent in Family Court?
- If the parent has a psychiatric or developmental disability, has treatment/support been offered? What has been the response?

**Legal Basis for the Motion**
- Under the federal Individuals with Disabilities Education Act (IDEA 20 U.S.C. §1400 et seq.) and the corresponding provisions of New York State law, Article 89 (§4401 et seq.) of the Education Law, a child with a disability is entitled to appropriate, specialized services. In New York State, a child's right to an "adequate education" is "a right of constitutional dimension," and the process designed to ensure that children with disabilities receive an equal opportunity to benefit from educational services is set forth in Article 89. Matter of Kevin M., 187 Misc.2d 820, 827-8 (Fam. Ct. Erie Co. 2001).
- IDEA/Article 89 is based on an "informed consent" model, and there is a presumption that a person in the role of a parent is sharing information and concerns with professionals representing a variety of disciplines, and then participating in making decisions as part of a team. See, for example, Special Education in New York State for Children 3-21: A Parent's Guide, pp. 13, 18 Application of a Child with a Disability, Appeal No. 02-028 (NYS Education Department, State Review Officer [SRO] 2003), Application of a Child with a Disability, Appeal No. 96-18 (SRO 1996).
- The role of "Surrogate Parent" exists to ensure that children who do not have a parent fulfilling the role envisioned for them in the special education system can nevertheless benefit from properly planned services and goals. 34 C.F.R. §300.519.
- New York State regulations define the circumstances under which a surrogate parent is required.
  > The board of education or other appropriate body shall select a surrogate parent from a list of individuals who are eligible and willing to serve as surrogate parents in order to ensure that the rights of a student are protected if:
  > (i) no parent, as defined in section 200.1(ii) of this Part, can be identified;
  > (ii) the school district, after reasonable efforts, cannot discover the whereabouts of a parent, or the student is an unaccompanied homeless youth, as such term is defined in section 100.2(x)(1)(vi) of this Title; or
  > (iii) the student is a ward of the State and does not have a parent as defined in section 200.1(ii) of this Part or the rights of the parent to make educational decisions on behalf of the student have been subrogated by a judge in accordance with State law.
  > 8 N.Y.C.R.R. §200.5(n)(1).
- While IDEA/Article 89 prioritize parent participation, the entity to whom Congress delegated responsibility for promulgating regulations under IDEA, has emphasized that nothing in the law or regulations is intended to circumscribe the inherent authority of a court with jurisdiction over a child to designate an educational decision-maker when a

---

[*] The fact that a parent has a disability, taken alone, does not justify judicial intervention into EI decision-making.

2

NYC_010439

child's best interests require it. "It would be inappropriate and beyond the authority of the [U.S. Department of Education] to regulate on the termination of parental rights to make educational decisions. **It is the responsibility of a court to decide whether or not to appoint another person or persons to act as parent of a child or to make educational decisions on behalf of a child.**" *Comments to Final Regulations on 2004 IDEA Reauthorization*, Federal Register, Vol.71, No. 156, p. 46568 (Office of Special Education Programs, U.S. Department of Education, 8/14/06) [Emphasis added.]

- New York State regulations specifically provide for appointment of a surrogate parent by a judge.
  > The surrogate parent alternatively may be appointed by the judge overseeing the child's case, provided that the surrogate parent meets the requirements in paragraph (2) of this subdivision. The individual appointed by the judge need not be appointed from a list approved by the board of education.
  > 8 N.Y.C.R.R. §200.5(n)(3)(vi).
- The qualifications set forth in the regulations are that a surrogate parent may not be an officer, employee or agent of any agency or entity involved in a student's education or care, may not have any conflicting interest, and must have the knowledge and skills to participate in the role of the parent. The regulations state that a foster parent may serve as a surrogate parent. 8 N.Y.C.R.R. §200.5(n)(2),(3)(v).
- Implicit in the provisions of Article 10-A of the Family Court Act relating to oversight of a child's educational plan is the authority to address barriers to equal educational opportunity. See, for example, N.Y. Fam. Ct. Act §1089(c)(2)(iii),(5)(iv), 1089(d)(v).
- The court should not usurp the educational planning functions of the multi-disciplinary team, as defined by Article 89/IDEA, by making determinations of eligibility, disability classification and services. These determinations involve consideration of educational and clinical data and the exercise of professional judgment that should properly occur in the context of the multi-disciplinary Committee on Special Education.
- Rather, the court should act to ensure that the subject child has the benefit of that process, designed to yield recommendations for appropriate services, with the engagement of an individual in the role of a parent to provide – or withhold – informed consent. It is the inability or unwillingness of the parent to engage in the process, receive information provided through the evaluation process, and make considered decisions in the best interest of the subject child, that makes the exercise of the court's authority appropriate.
- As noted above, the system designed to determine whether a child has a disability and, if so, to deliver appropriate services, requires the active participation of someone in the role of a parent. If a parent can't or won't fulfill that role despite having had the opportunity to do so, the child is deprived of the informed decision-making that Congress established as the basis of the system. Under these circumstances, a court with jurisdiction over the child is justified in providing the assistance needed by assigning the role of parent – for purposes of special education planning – to someone else, in the manner prescribed in the State Education Department regulations.

Please contact the Children's Services Education Unit for additional assistance at:
www.nyc.gov/html/acs/education/home.html

NYC_010440