

| | | |
|---|---|---|
| **MURIEL GOODE-TRUFANT**<br>*Acting Corporation Counsel* | **THE CITY OF NEW YORK**<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | **MARTIN BOWE**<br>*Assistant Corporation Counsel*<br>Tel: (212) 356-0894<br>email:mbowe@law.nyc.gov |

November 19, 2024

**VIA ECF**
Hon. Sarah L. Cave
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re: *K.S., et al., v. City of New York, et al.*, 21-cv-4649 (JSR)/24-cv-3390(JSR)(SLC)

Dear Judge Cave:

    I am an Assistant Corporation Counsel in the Office of the Corporation Counsel, attorney for Defendants City of New York, The Administration for Children's Services, David Hansell, New York City Department of Education ("DOE"), The Board of Education of the City School District of the City of New York, and David C. Banks (collectively "City Defendants") in the above-referenced matter.

    I write to set forth City Defendants' opposition to most of the limitations on the deposition of D.S. as requested by Plaintiff as set forth in K.S.'s declaration (ECF No. 171-4). We note that the City proposed waiving D.S.'s deposition if Plaintiff agreed not to call him as a witness (direct, rebuttal or as a declarant); Plaintiff declined the City's proposal.

    Preliminarily, City Defendants do not object to Plaintiff's proposals that (a) questioning be limited to no more than 45 minutes between breaks, and (b) that one support staff person from D.S.'s current placement ("DS-CP") be permitted to be present during the deposition.

    As for Plaintiff's other limiting requests, it would be prejudicial to the defendants for the Court to impose the sought after limitations on the D.S. deposition when trial testimony by D.S. will be presented in person as an emancipated adult. Notably, D.S. will turn eighteen years old on February 27, 2025, and will thus be an emancipated adult if this case goes to trial.[1] There is no

---

[1] While K.S. declares that "the City remains responsible for D.S.'s residential care until at least the end of the school year in which he turns twenty-one…" *see* Decl. at p. 8, there is nothing in the records suggesting that D.S. will either choose or be required to remain at DS-CP beyond his 18th birthday. In fact, the record indicates just the opposite: D.S.'s latest Social History Update finalized 10/22/24 states: "As per parent, [D.S.] wants to leave the program when he graduates or ages out …" (ECF 170-1, p. 30-1)

indication in the record that there will be any limitation on D.S.'s freedom of movement through a court-ordered guardianship. Further, nothing in the record indicates he will be incarcerated. *See* ECF No. 171-4 *passim*. The City Defendants are entitled to evaluate D.S.'s credibility as witness in person. This in-person testimonial evaluation is critical for every aspect of the case: it is important for our trial strategy and also important for possible settlement considerations. For the same reason, we object to Plaintiff's request that the deposition be conducted at DS-CP: as Plaintiff concedes, D.S. would need to testify in person at trial yet argues that travel and housing for a deposition will be traumatic. City Defendants are entitled to depose D.S. under the same circumstances as any trial appearance.

Next, Plaintiff's assertion that it would be financially burdensome[2] for D.S. to be brought to and housed in the Southern District lacks support in the record. Plaintiff asserts safety fears based on D.S.'s behaviors from two to four years ago when D.S. was between 13 and 15 years old. Plaintiff provides no clear, up-to-date explanation as to why D.S. is able to live in an offsite residential home with other teenagers, but is otherwise incapable of travelling to the Southern District for deposition. Notably, as per Plaintiff's counsel, D.S. was informed in early October that he would not be permitted to return home. It is our understanding, on information and belief, that it is not typical for DS-CP students to be notified of a parent's refusal of a home visit over a holiday weekend so far in advance of a given holiday.

In any event, the DS-CP records do not indicate a fragile and emotionally disturbed nearly-18 year old person. For example, DS-CP records appear to indicate that by January 2024, D.S. was in fact *discontinued* from psychiatric care, and his psychiatric medications were *discontinued*. *See* Phase Lines at p.1 annexed hereto as Ex. A. Next, while Plaintiff asserts that D.S. has a 24 hour/day paraprofessional (ECF No. 171-5 at p.4), this does not appear to be an accurate statement: the DS-CP Clinician Notes, *see* attached hereto as Exhibit B, indicate that as early as Sept. 2023, his 1:1 was reduced to 16 hours per day, *id.* at p.4, and the DS-CP Program Description, sec. IX (Exhibit C hereto) clearly indicates that 1:1 staffing will only be implemented "In the event [D.S.] begins to exhibit dangerous behaviors such as aggression, destroy or self-injury…".

Section IX (Ex. C) also indicates that D.S. has been employed continuously since May 2024 (as per Ex. B, pp.1-2) and that employment was only possible because D.S. was not in need of a 1:1 staff presence at all times. The Clinician Notes further indicate a well-adapted young adult who (a) lives off-site in a private home, (b) has attended his high school prom (*see* Ex. B at June 25, 2024), (c) regularly plays basketball on the DS-CP basketball team including traveling with the team to "away" games against other schools' basketball teams (*id*. at April 29, 2024), and (d) has been able to join "many" off site outings, e.g., going to the movies, to the mall, and bowling. *See* DS-CP Quarterly Reports (ECF 170-1) annexed here to as Exhibit D. Moreover, D.S. is a member of the Glee Club, and, an "adept 'debater' [who] is able to identify facts from article to 'back-up' his stance." *See* Ex. D at p. 4.

With respect to Plaintiff's request that questions be compassionate and phrased clearly, City Defendants object to any limitations regarding the scope of the questioning, including the

---

[2] Google Maps on November 12 at about 10:00 a.m. reflects a 3 hour and 50 minute drive from DS-CP to 500 Pearl Street, with some moderate mid-day traffic.

preclusion of any questions regarding alleged history of sexual abuse and/or neglect. We note that the City has retained an expert and intends to work with our expert to craft questions that take into account the sensitivity of some of the factual allegations in the case. Further, The Office of Corporation Counsel already strives in every deposition to phrase questions as clearly and simply as possible, and allowing a witness needed time to process a question is also an important part of every deposition. Complex and multi-part questions are already objectionable and there is no need for an order that simply reiterates elementary rules of evidence and that will result in superfluous additional arguments between counsel.

Finally, City Defendants are entitled to a seven hour deposition (not 2.5 hours as Plaintiff proposes)—especially in a case where Plaintiff alleges many claims under many statutes, against two distinct City entities, and which span 15 calendar years.

City Defendants therefore respectfully request that Your Honor order D.S. to be required to travel to New York City to be deposed in person by the City Defendants for a full seven hours.

Thank you for considering this request.

Respectfully submitted,
/s/
Martin Bowe
Senior Counsel

Cc:    All parties *via* ECF