UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

K.S., et al.,

                          Plaintiffs,

          -v-

City of New York, et al.,

                          Defendants.

CIVIL ACTION NOS. 21 Civ. 4649 (JSR) (SLC)
24 Civ. 3390 (JSR) (SLC)

**ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

On October 17, 2024, the Honorable Jed S. Rakoff referred these consolidated actions to the undersigned to resolve numerous discovery disputes between the parties.  (See Case No. 21 Civ. 4649, ECF No. 154; Case No. 24 Civ. 3390, ECF No. 37).  One such dispute relates to the deposition of Plaintiff D.S.—the minor son of Plaintiff K.S.—whom the City Defendants wish to summon to New York City to depose in person.  (ECF No. 188).  Plaintiffs oppose the City Defendants' request and have asked the Court to impose a protective order requiring, among other things, that D.S.'s deposition occur remotely, i.e., by video, and other limits on the length and nature of questioning.  (See ECF No. 171-4 (the "Application")).[1]  At the Court's direction (see ECF Nos. 168, 177), the parties have filed documents regarding D.S.'s treatment and history (see ECF Nos. 170, 171) and letters briefing the appropriateness of the Application (see ECF Nos. 188, 195 (the "Letters")).  Having reviewed the Letters and heard argument at a telephonic discovery

---

[1] For simplicity, the Court will from here forward cite only to the docket entries in Case No. 21 Civ. 4649 unless otherwise indicated.  The terms of the Court's Order will nevertheless apply in each of the above-captioned cases.

conference held today, November 26, 2024 (the "Conference"), the Application is now ripe.  For

the reasons set forth below, the Application is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

### A. Plaintiffs' Claims

On May 24, 2021, K.S. filed Case No. 21 Civ. 4649 ("K.S. I") on behalf of herself and her

adopted son, D.S., who was in foster care between April 2009 and May 2018.  (ECF No. 1).

Plaintiffs' claims in K.S. I relate to D.S.'s time in the foster care system—where D.S. allegedly

endured physical and sexual abuse—and his initial placement with K.S. in 2018.  (ECF No. 64).

Broadly, Plaintiffs assert that Defendants violated D.S.'s constitutional rights, denied him legally

sufficient foster care, and neglected his mental health and educational needs.  (Id.)  These claims

arise under, inter alia, 42 U.S.C. § 1983; the Adoption Assistance and Child Welfare Act of 1980,

42 U.S.C. § 670; Section 504 of the Rehabilitation Act; the Individuals with Disabilities Education

Act, 20 U.S.C. § 1400 et seq. (the "IDEA"); and state law.  (Id.)

On May 2, 2024, Plaintiffs filed Case No. 24 Civ. 3390 ("K.S. II") against overlapping

defendants as in K.S. I, alleging that D.S. was denied a Free Appropriate Public Education and that

Defendants repeatedly failed to implement orders from state administrative proceedings at

which Plaintiffs prevailed as to their IDEA claims.  (Case No. 24 Civ. 3390, ECF Nos. 1, 16).

### B. D.S.'s Background

#### 1. D.S.'s Conditions

The parties have submitted records compiled and kept by officials at the Judge

Rotenburg Center ("JRC" or the "School") in Massachusetts, where D.S. has resided and been

enrolled as a student since July 2023.  (See ECF Nos. 170, 171).  These records document what

the pleadings allege: that D.S. endured a host of traumatic events—"including sexual abuse, witnessing prostitution, and multiple transfers while in foster care"—before being adopted by K.S. and her husband in May 2018. (See ECF No. 171-1 at 5). The records also confirm that the effects of D.S.'s trauma persist. In particular, D.S. has been diagnosed with post-traumatic stress disorder, attention deficit hyperactivity disorder, and an "unspecified mood disorder." (See ECF Nos. 170-1 at 25; 171-1 at 5).

### 2. Manifestations of, and Efforts to Treat, D.S.'s Conditions

D.S.'s psychological and emotional conditions have manifested themselves in destructive ways. From the age of about six, D.S. "performed sex acts on peers, urinated in cups and smeared feces on the walls of his home, and stole[] food." (ECF No. 171-1 at 3). In 2022, D.S. was hospitalized after expressing suicidal ideations, "disrobing[,] and eating a pen cap" while enrolled at the "Stetson residential program in Utah." (ECF No. 171-1 at 3; see ECF No. 171 at 2). Plaintiffs describe these behaviors—only a sampling of which the Court has listed here—as "episodic" and correlate their occurrence with efforts to address the traumatic experiences D.S. suffered during his upbringing. (See ECF No. 171-4 ¶¶ 22–25, 30–31) (stating that D.S. "broke down in tears and had to discontinue" discussing his traumatic experiences with an expert and that, following the discussion, D.S. "started to have nightmares again, which had abated").

In connection with the destructive manifestations of his conditions, since May 2020, D.S. has been hospitalized at least six times, enrolled in the same number of residential treatment programs, and was held in juvenile detention for several months. (See ECF No. 171-4 at 2). Most recently, in July 2023, D.S. was placed at JRC (see id. at 3), where his behavior has stabilized and he reports being "happy[.]" (ECF No. 171-1 at 2 ("[D.S.] stated that he is happy to be at JRC[.]");

see id. at 1 ("[D.S.'s] mother is very happy with his progress at JRC, as this is the first time that he

has demonstrated stability for this length of time.")).  At JRC, D.S. "has the support[] of a 24 hour

behavioral support para professional along with a behavior intervention plan that addresses . . .

aggression, health injurious behavior, destruction, major disruption, noncompliance,

educationally/socially interfering behaviors and inappropriate verbal behaviors."  (ECF No. 171-

5 at 4).  He attends educational classes, works part-time in the cafeteria, and has gone on field

trips.  (ECF No. 188-2 at 1).  According to JRC records submitted by the City Defendants, D.S.

"remained completely free from the emission of aggressive and health dangerous behaviors for

the [most recent] quarter."  (ECF No. 170-1 at 3).

### C.  The Application

#### 1.    Harms Plaintiffs Face if D.S. is Removed from JRC

Plaintiffs have submitted three declarations—from (1) Ari Patel, LCSW (ECF No. 171-3; (2)

K.S. (ECF No. 171-4); and (3) Gabriela Deambrosio, M.A. Ed. (ECF No. 171-7) (together, the

"Declarations")—in support of the Application.  In the Declarations, the declarants assert that

D.S. would suffer serious harm were he to be required to travel to New York City and be deposed

in person.  Specifically, according to the Declarations, D.S. faces "[r]e-traumatization" if

questioned about distressing moments in his past.  (See ECF No. 171-3 at 1).  D.S.'s mother fears

that any such re-traumatization could result in D.S.'s "dysregulat[ion]" and resulting "re-arrest []

or [] expulsion from [JRC.]"  (ECF No. 171-4 at 5).  This fear is apparently predicated on the fact

that D.S. has not been home in several years and that, during "all [previous] visits[,]" his parents

were forced to call 911 because D.S. could not "manag[e] his emotions and is 6ft. 5in."  (ECF

No. 170-1 at 26).  K.S.'s Declaration also addresses the logistics and cost of transporting D.S. to

New York City for a deposition, noting that a company called "Assisted Interventions" would pick up, transport, and accompany D.S. overnight, but that this service would cost approximately $9,400.00. (See ECF No. 171-4 at 7–8).

### 2.    Proposed Accommodations

Given the risks, logistical difficulties, and costs associated with having D.S. deposed in New York City, Plaintiffs request that D.S. be deposed by video or in person at JRC. (Id. at 8–9). Plaintiffs also request that: (1) the deposition be limited to "one five-hour [or shorter] day"; (2) D.S. be given breaks as needed, or at least every 45 minutes; (3) a licensed therapist or D.S.'s case manager be present and empowered to pause or reschedule the deposition based on D.S.'s emotional state; and (4) any questions posed to D.S. be "phrased clearly and simply" and "compassionate[ly]"—that is, in a "steady, straightforward, and mild mannered" way. (Id. at 9–10).

### 3.    The Parties' Positions

The City Defendants do not oppose Plaintiffs' requests that D.S. be provided breaks every 45 minutes or that a member of D.S.'s support team be present at the deposition (ECF No. 188 at 1), but argue that D.S.'s deposition should otherwise proceed subject only to the requirements and limitations set forth in the Federal Rules of Evidence and the Federal Rules of Civil Procedure. (See id. at 1–3). They assert, for example, that they "already strive[] in every deposition to phrase questions as clearly and simply as possible" (id. at 2–3) and submit that they have retained an expert to assist them in crafting questions "that take into account the sensitivity of some of the factual allegations in the case." (Id. at 3). They further object to any restrictions as to the topics

about which they may inquire and insist that they are entitled to depose D.S. for a full seven hours in New York City. (Id. at 3).

In support of their position, the City Defendants highlight the importance of "evaluat[ing] D.S.'s credibility as a witness in person[,]" noting that this evaluation will inform both their trial strategy and position taken in any future settlement discussions. (Id. at 2). They also question Plaintiffs' beliefs that transporting D.S. to New York for a deposition will be financially and logistically burdensome or create an unacceptable risk of harm. They suggest that Plaintiffs have failed to provide any "clear, up-to-date explanation as to why D.S. cannot travel to New York[,]" observing that Plaintiffs' concerns about hosting D.S. in his family's home are based on incidents "from two to four years ago[,] when D.S. was between 13 and 15 years old." (Id.) The City Defendants contend that Plaintiffs' fears are overblown, as evidenced by D.S.'s JRC records, which they assert "do not indicate a fragile and emotionally disturbed nearly 18 year old person." (Id.) Rather, the City Defendants aver, the records show that D.S. "has been employed continuously since May 2024[,]" lives in a private home, attended his high school prom, participates in clubs, and plays on his school's basketball team, which regularly travels to play against teams from other schools. (Id.)

In reply, Plaintiffs acknowledge that D.S. has made significant progress since enrolling at JRC and credit his success to the resources available to him in the School's highly controlled setting. (See ECF No. 195 at 3) ("The fact that D.S. has been comparatively stable since enrolling in JRC in July 2023, and has been able to control his behaviors in a small, intensive, 1:1 setting for the most severely disabled children in the country, is exactly K.S.'s point[.]"). To transport D.S. from JRC to New York, however, would be to return D.S. to a place he experienced trauma and

stress and where "he [previously] engaged in highly dangerous, risky and maladaptive behaviors[.]"  (Id.)

### III. DISCUSSION

**A.  Legal Standard**

"There is a general presumption that a plaintiff who chooses a particular forum should be prepared to be deposed in that forum."  Connell v. City of New York, 230 F. Supp. 2d 432, 436 (S.D.N.Y. 2002) ("[T]his Court has long enunciated the policy of requiring a non-resident plaintiff who chooses this district as his forum to appear for deposition in this forum absent compelling circumstances."); see Restis v. Am. Coal. Against Nuclear Iran, Inc., No. 13 Civ. 5032 (ER) (KNF), 2014 WL 1870368, at *3 (S.D.N.Y. Apr. 25, 2014) ("Since plaintiff has selected the forum, he or she will not be heard to complain about having to appear there for [a] deposition.") (citing 8A Wright, Miller & Marcus Fed. Practice & Procedure Section 2112 (3d ed. 2010)).

Under Federal Rule of Civil Procedure 26(c)(1), however, "[a] party or any person from whom discovery is sought may move for a protective order," which a district court may issue "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  The party seeking a protective order must show that good cause exists for issuance of that order.  Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004) (citation omitted).  "[G]ood cause exists when a party shows that [a particular condition or the disclosure of certain information] will result in a clearly defined, specific and serious injury."  Flores v. Stanford, No. 18 Civ. 2468 (VB) (JCM), 2021 WL 4441614, at *4 (S.D.N.Y. Sept. 28, 2021) (cleaned up).  Consequently, "[b]road allegations of harm, unsubstantiated by specific examples

or articulated reasoning, do not satisfy the Rule 26(c) test." Duling v. Gristede's Operating Corp., 266 F.R.D. 66, 71 (S.D.N.Y. 2010) (citation omitted).

When a district court determines issuance of a protective order is appropriate, it has wide latitude to tailor the terms of the order to the circumstances of the case. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984) (stating that district courts have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required"); Galella v. Onassis, 487 F.2d 986, 997 (2d Cir. 1973) ("The grant and nature of protection is singularly within the discretion of the district court."). A protective order may, for instance, dictate: (1) the "time and place" a deposition may occur, Fed. R. Civ. P. 26(c)(1)(B); see Buzzeo v. Bd. of Educ., Hempstead, 178 F.R.D. 390, 392 (E.D.N.Y. 1998) (observing that courts "retain substantial discretion to designate the site of a deposition"); (2) "the persons who may be present" at a deposition, Fed. R. Civ. P. 26(c)(1)(E); see Austin v. Fordham Univ., 23 Civ. 4694 (JLR) (GS), 2024 WL 3161854, at *4 (S.D.N.Y. June 25, 2024) (granting protective order blocking individual from attending deposition); and (3) the topics or scope of questioning permitted at a deposition, Fed. R. Civ. P. 26(c)(1)(D). Even where a deponent shows that he faces only "potential harm" by being deposed and is therefore not entitled to a protective order, a district court may nevertheless "fashion accommodations to limit the potential harm[.]" Qube Films Ltd. v. Padell, No. 13 Civ. 8405 (AJN), 2015 WL 109628, at *2 (S.D.N.Y. Jan. 2, 2015).

## B. Application

On the record before it, the Court concludes that Plaintiffs have shown good cause for imposition of a protective order containing accommodations for D.S.'s deposition, albeit not as broadly as they seek. Although the Court cannot predict how D.S. will react if he is removed from

JRC to be deposed in New York, it is certain of the broader result: D.S.'s re-traumatization and the resulting risk of destabilizing him—thereby retracting the progress he has made at the School. Far from being "conclusory or speculative in nature[,]" see Qube Films, 2015 WL 109628, at *2, this finding is supported by the "specific examples [and] articulated reasoning" set forth in the Declarations and medical and educational records, such as K.S.'s statement that "[she] or [her] husband had to call 911 each time D.S. returned home – even for a short stay – to take him to the hospital because his behaviors were very dangerous – both to himself and others." (ECF No. 171-4 ¶ 12 (emphasis added); see also ECF Nos. 171-3 at 1–2 (declaring that a standard deposition could "result in acute psychological distress [to D.S.], potentially requiring intensive intervention" and could "undo months of therapeutic progress"); 171-4 at 4–5 (listing past expulsions from therapeutic programs in Texas and Florida and stating that "expulsion from [JRC] . . . would be catastrophic for [D.S and his family]"); 171-7 at 3–5 (in which the declarant states, "I cannot overemphasize how limited [D.S.'s] options are [ ] should his current placement be put at risk[.]"). While the Court acknowledges the evidence that D.S. has left the School for short trips—such as for basketball games or social events (see ECF No. 188-2 at 1)—those trips have been in the educational context, with fellow students and with personnel from JRC present to support and intervene should D.S. begin to act out or need professional attention. That D.S. has been able to handle those situations does not alleviate the Court's concerns about forcing him to travel to New York City for his deposition.

Moreover, the logistical and financial costs associated with transporting D.S. to New York are significant (see ECF No. 171-4 ¶¶ 37–39), and the City Defendants do not offer to share or mitigate these expenses in any way. The Rules empower the Court to craft a protective order to

prevent any "undue burden or expense" on Plaintiffs arising from D.S.'s deposition.  Fed. R. Civ. P. 26(c)(1).  Finally, the City Defendants cannot dispute that D.S.'s deposition should take place in a setting and under circumstances where he will be best able to hear, understand, and answer their questions under oath.

For these reasons, the Court concludes that, to the extent the City Defendants seek to depose D.S., they must do so either at JRC in Massachusetts or remotely, by video.  The Court makes this conclusion cognizant of the fact that it increases the City Defendants' burden.  Any such burden, however, is outweighed by the mitigation of the serious harm D.S. would face if removed from JRC and forced to travel to New York City.  Should traveling to Massachusetts prove too burdensome, the City Defendants may depose D.S. remotely.  See In re Terrorist Attacks on Sept. 11, 2001, 337 F.R.D. 575, 578 (S.D.N.Y. 2020) ("Since the beginning of the pandemic, courts have considered the serious health risk posed by the coronavirus and concluded that remote depositions do not cause undue hardship and can be conducted with relative ease given current technology.").

In addition, because the City Defendants do not object to Plaintiffs' requests regarding the frequency of breaks or the presence of a member of D.S.'s support staff during questioning (see ECF No. 188 at 1), these conditions will also apply to D.S.'s deposition.

The Court denies as unnecessary, however, Plaintiffs' request for a limitation on the length of D.S.'s deposition.  Thus, the City Defendants may conduct a seven-hour deposition, limited only by their agreement to provide D.S. routine breaks and to pause the deposition when it is deemed necessary by D.S.'s support professional.  The Court also denies Plaintiffs' request to impose restrictions on the manner in which the City Defendants may question D.S. in light of

the City Defendants' representation that they have "retained an expert" with whom they will work "to craft questions that take into account the sensitivity of some of the factual allegations in the case."  (ECF No. 188 at 3).

In sum, the Court finds that these narrow accommodations are necessary, but no greater than necessary, to mitigate the risk of potential harm to D.S. arising from his deposition and that it is empowered to impose such conditions whether through issuance of a protective order or otherwise.  See T.B. by & through Bursch v. Ind. Sch. Dist. 112, No. 19 Civ. 2414 (MJD) (BRT), 2021 WL 7367136, at *5–6 (D. Minn. Jan. 8 2021) (denying motion for protective order but nevertheless requiring that deposition of a child occur virtually in a place of the parents' choosing); J.A. by & through Wolf v. SCO Fam. of Servs., No. 17 Civ. 306 (SJF) (AYS), 2018 WL 501570, at *4 (E.D.N.Y. Jan. 22, 2018) ("[T]he Court must deny the motion for a protective order at this time.  However, if the documents referred to in Plaintiffs' letter do, in fact, support the representations made therein, this Court would order that the deposition of J.A. take place in an appropriate area of his foster home (or if Plaintiffs agree, at the office of his counsel or treating professional).  This Court would further order that J.A.'s deposition shall be limited to three one-hour sessions to take place over a three day period to be agreed upon by counsel."); Qube Films, 2015 WL 109628, at *2 (denying protective order as to deposition of individual with "Parkinson's dementia complex" but nevertheless requiring "breaks at least every one to two hours" and the presence of the deponent's guardian ad litem).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' request for a protective order for D.S.'s deposition (ECF No. 171-4) is GRANTED IN PART and DENIED IN PART.  D.S.'s deposition shall proceed under the following conditions:

(1)     D.S. will sit for his deposition at JRC and the City Defendants may question him in person at JRC or remotely by video.

(2)     One support staff professional from JRC may be present in the room during D.S.'s deposition.

(3)     Questioning will be limited to no more than 45 minutes between breaks.

(4)     D.S.'s deposition shall last no longer than seven hours of on-the-record time.

Dated:     New York, New York
           November 26, 2024

SO ORDERED.

_____

**SARAH L. CAVE**
**United States Magistrate Judge**